## Exhibit A

**Black Line Modified Plan, including Exhibit N**

**(Changed Pages Only)**

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| MAREMONT CORPORATION, et al.,[1] | Case No. 19-10118 (KJC) |
| Debtors. | (Jointly Administered) |

### MODIFIED JOINT PREPACKAGED PLAN OF REORGANIZATION OF MAREMONT CORPORATION
### AND ITS DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE

**SIDLEY AUSTIN LLP**
James F. Conlan
Andrew F. O'Neill
Allison Ross Stromberg
Blair M. Warner
One South Dearborn Street
Chicago, Illinois 60603
Telephone: (312) 853-7000
Facsimile: (312) 853-7036

*Co-Counsel to the Debtors*

**COLE SCHOTZ P.C.**
Norman L. Pernick (No. 2290)
J. Kate Stickles (No. 2917)
500 Delaware Avenue, Suite 1410
Wilmington, Delaware 19801
Telephone: (302) 652-3131
Facsimile: (302) 652-3117

*Co-Counsel to the Debtors*

**Dated: March ~~12~~17, 2019**

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal taxpayer identification number, are: Maremont Corporation (6138); Maremont Exhaust Products, Inc. (9284); AVM, Inc. (9285); and Former Ride Control Operating Company, Inc. (f/k/a ArvinMeritor, Inc., a Delaware corporation) (9286). The mailing address for each Debtor for purposes of these chapter 11 cases is 2135 West Maple Road, Troy, MI 48084.

**TABLE OF CONTENTS**

Page

ARTICLE I. DEFINITIONS AND RULES OF INTERPRETATION ................................................. 1

        A.     Definitions ................................................................................................ 1
        B.     Rules of Interpretation .............................................................................. 16
        C.     Computation of Time ................................................................................ 16
        D.     Reference to Monetary Figures ................................................................. 16

ARTICLE II. ADMINISTRATIVE EXPENSE CLAIMS, PROFESSIONAL FEE CLAIMS, AND
            PRIORITY TAX CLAIMS ......................................................................... 16

        A.     Administrative Expense Claims Other Than Professional Fee Claims .... 16
        B.     Professional Fee Claims ............................................................................ 17
        C.     Priority Tax Claims ................................................................................... 18

ARTICLE III. CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS ............. 18

        A.     Classification of Claims and Interests ...................................................... 18
        B.     Summary of Classification ........................................................................ 18
        C.     Treatment of Claims and Interests ........................................................... ~~19~~18
        D.     Special Provision Governing Claims ....................................................... 21
        E.     Elimination of Vacant Classes ................................................................. 21
        F.     Acceptance or Rejection of the Plan ........................................................ ~~22~~21

ARTICLE IV. MEANS FOR IMPLEMENTATION OF THE PLAN ............................................... 22

        A.     Settlement of Claims and Interests ........................................................... 22
        B.     Plan Contributions .................................................................................... ~~23~~22
        C.     Restructuring ............................................................................................. 23
        D.     Insurance Agreements ............................................................................... 23
        E.     Asbestos Personal Injury Trust ................................................................ ~~25~~24
        F.     Environmental Claims .............................................................................. ~~27~~26
        G.     Payment of Other Claims ......................................................................... ~~28~~27
        H.     Timing of Effective Date Transactions .................................................... ~~28~~27
        I.     The Reorganized Debtors' Corporate Existence ..................................... ~~29~~28
        J.     Asbestos Creditors Committee and Future Claimants' Representative Professional
            Fees .......................................................................................................... ~~29~~28
        K.     Effectuating Documents; Further Transactions ....................................... ~~29~~28
        L.     Reorganized Maremont's Bylaws and Reorganized Maremont's Certificate of
            Incorporation ............................................................................................ 29
        M.     Director and Officer of the Reorganized Debtors .................................... ~~30~~29
        N.     Corporate Action ...................................................................................... ~~30~~29
        O.     Exemption from Certain Taxes and Fees .................................................. ~~30~~29
        P.     Preservation of Causes of Action ............................................................. ~~30~~29

ARTICLE V. TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES ....... ~~31~~30

        A.     General Treatment ..................................................................................... ~~31~~30
        B.     Cure of Defaults ....................................................................................... ~~31~~30
        C.     Rejection Damages Claims ....................................................................... ~~31~~30

ARTICLE VI. PROVISIONS GOVERNING DISTRIBUTIONS ................................................... ~~32~~31

        A.     Distributions Generally ............................................................................ ~~32~~31

-

**TABLE OF CONTENTS**
(Continued)

| | | | |
|---|---|---|---|
| B. | Record Date for Holders of Claims | | ~~32~~31 |
| C. | Timing of Distributions | | ~~32~~31 |
| D. | Postpetition Interest on Claims | | ~~32~~31 |
| E. | Delivery of Distributions | | ~~32~~31 |

ARTICLE VII. PROCEDURES FOR RESOLVING DISPUTED CLAIMS OTHER THAN ASBESTOS PERSONAL INJURY CLAIMS AND PROFESSIONAL FEE CLAIMS ... ~~33~~32

| | | | |
|---|---|---|---|
| A. | Objection to and Estimation of Claims Other than Asbestos Personal Injury Claims and Professional Fee Claims | | ~~33~~32 |
| B. | Payments and Distributions with Respect to Disputed Claims | | ~~34~~33 |
| C. | Resolution of Asbestos Personal Injury Claims | | ~~34~~33 |
| D. | Resolution of Professional Fee Claims | | ~~34~~33 |

ARTICLE VIII. SETTLEMENT, RELEASE, INJUNCTION, AND RELATED PROVISIONS ... ~~34~~33

| | | | |
|---|---|---|---|
| A. | Discharge of Debtors and Reorganized Debtors | | ~~34~~33 |
| B. | Maremont Discharge Injunction | | ~~34~~33 |
| C. | Asbestos Personal Injury Channeling Injunction | | ~~35~~34 |
| D. | Exculpation and Section 1125(e) Protection | | ~~36~~35 |
| E. | Releases by Debtors and Estate and Related Injunction | | ~~36~~35 |
| F. | Release by Holders of Claims and Interests | | ~~37~~36 |
| G. | Certain Waivers | | 37 |
| H. | Disallowed Claims | | ~~38~~37 |
| I. | Indemnification Obligations | | ~~38~~37 |

ARTICLE IX. CONDITIONS PRECEDENT TO CONFIRMATION AND CONSUMMATION OF THE PLAN ... ~~39~~38

| | | | |
|---|---|---|---|
| A. | Conditions Precedent to the Confirmation of the Plan | | ~~39~~38 |
| B. | Conditions Precedent to the Effective Date | | ~~42~~41 |
| C. | Waiver of Conditions | | ~~43~~42 |
| D. | Failure to Achieve the Effective Date | | ~~43~~42 |

ARTICLE X. MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN ... 43

| | | | |
|---|---|---|---|
| A. | Modification and Amendments | | 43 |
| B. | Effect of Confirmation on Modifications | | ~~44~~43 |
| C. | Revocation or Withdrawal of Plan | | ~~44~~43 |

ARTICLE XI. RETENTION OF JURISDICTION ... ~~44~~43

| | | | |
|---|---|---|---|
| A. | Retention of Jurisdiction | | ~~44~~43 |
| B. | Post-Confirmation Modification of Plan | | 46 |
| C. | Consent to Jurisdiction | | ~~47~~46 |

ARTICLE XII. MISCELLANEOUS PROVISIONS ... ~~47~~46

| | | | |
|---|---|---|---|
| A. | Immediate Binding Effect | | ~~47~~46 |
| B. | Additional Documents | | ~~47~~46 |
| C. | FFIC Settlement Agreement and FFIC Amendment | | 47 |
| D. | Payment of Statutory Fees | | 47 |
| E. | Tax Reporting and Compliance | | ~~48~~47 |
| F. | Reservation of Rights | | ~~48~~47 |
| G. | Successors and Assigns | | ~~48~~47 |

**TABLE OF CONTENTS**
(Continued)

| | | |
|---|---|---|
| H. | Notices | 4847 |
| I. | Entire Agreement | 5049 |
| J. | Governing Law | 5049 |
| K. | Exhibits | 5049 |
| L. | Nonseverability of Plan Provisions | 5049 |
| M. | Closing of Chapter 11 Cases | 50 |
| N. | Conflicts | 50 |
| O. | Further Assurances | 5150 |

**EXHIBITS**

| | |
|---|---|
| Exhibit A | Asbestos Claims Indemnification Agreement |
| Exhibit B | Asbestos Personal Injury Claimant Release |
| Exhibit C | Asbestos Personal Injury Trust Agreement |
| Exhibit D | Asbestos Personal Injury Trust Distribution Procedures |
| Exhibit E | Asbestos Records Cooperation Agreement |
| Exhibit F | List of Debtor Product Lines |
| Exhibit G | Environmental Assumption and Indemnification Agreement |
| Exhibit H | List of Non-Debtor Affiliates |
| Exhibit I | Names and Affiliations of Future Claimants' Representative, Asbestos Personal Injury Trustee, and Members of the Asbestos Personal Injury Trust Advisory Committee |
| Exhibit J | Assumed Executory Contract and Unexpired Lease List |
| Exhibit K | Reorganized Maremont's Bylaws |
| Exhibit L | Reorganized Maremont's Certificate of Incorporation |
| Exhibit M | List of Members of Reorganized Maremont Board and Reorganized Subsidiary Board, and List of Officers of Reorganized Maremont and Reorganized Subsidiaries |
| Exhibit N | FFIC Settlement Agreement |

60.     "*Environmental Assumption and Indemnification Agreement*" means the Environmental Assumption and Indemnification Agreement by and among the Reorganized Debtors, on the one hand, and Meritor HVS and one or more additional Responsible Meritor Affiliates, on the other hand, and effective automatically as of the Effective Date, pursuant to which (a) one or more Responsible Meritor Affiliates agrees to assume Environmental Claims against the Debtors and (b) Meritor HVS agrees to indemnify, defend, pay the defense costs for, and hold harmless the Reorganized Debtors and their affiliates from and against Environmental Claims and associated costs, expenses, actions, Causes of Action, suits, controversies, damages, demands, debts, liabilities or obligations of any nature, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, liquidated or unliquidated, matured or not matured, contingent or direct, whether arising at common law, in equity or under any statute, all as more specifically and to the extent set forth in such Environmental Assumption and Indemnification Agreement, which shall be substantially in the form attached as Exhibit G hereto and, with respect to any departures from Exhibit G, acceptable to the Debtors, Meritor HVS and the other applicable Responsible Meritor Affiliate(s), the Asbestos Claimants Committee and the Future Claimants' Representative, and consistent with the terms of this Plan.

61.     "*Environmental Sites*" means real property locations historically used or owned by the Debtors, including those located in (a) Easley, South Carolina; (b) Paulding, Ohio; (c) Capetown, South Africa; (d) Marion/Zion, South Carolina; (e) Chickasha, Oklahoma; and (f) the third party disposal site known as the Hardage-Criner site, in Hardage, Oklahoma.

62.     "*Estate*" means, with respect to each Debtor, the estate created as to such Debtor in its Chapter 11 Case pursuant to section 541 of the Bankruptcy Code.

63.     "*Everest*" means Everest Reinsurance Company.

64.     "*Everest Agreement*" means that certain Confidential Settlement Agreement and Release, dated as of September 1, 2005, by and between Maremont Corporation and Mt. McKinley Insurance Company and Everest Reinsurance Company.

65.     "*Exculpated Fiduciaries*" means each of: (a) the Debtors; (b) the Reorganized Debtors; (c) the official committee of asbestos personal injury claimants appointed in the Chapter 11 Cases, and its members, solely in their respective capacities as such; (d) the Future Claimants' Representative; and (e) with respect to each of the foregoing Entities in clauses (a) through (d), each such Entity's directors, officers, and professionals, in each case solely in its capacity as such.

66.     "*Executory Contract*" means any unexpired lease or executory contract to which one or more of the Debtors is a party and that is subject to assumption or rejection pursuant to section 365 of the Bankruptcy Code.

67.     "*FFIC*" means Fireman's Fund Insurance Company.

68.     "*FFIC Agreement*" means that certain Settlement Agreement and Release, dated November 15, 2010, by and among Maremont, Fireman's Fund Insurance Company, and certain of their respective parents, subsidiaries, affiliates, divisions, predecessors, successors, directors, officers, agents, employees and assigns.

69.     "*FFIC ~~Amendment~~Settlement Agreement*" means that certain ~~amendment to the FFIC Agreement set forth in Section IV.D of this Plan or as such amendment terms may be revised, modified, or supplemented in form and substance acceptable to the Future Claimants' Representative, the Asbestos Claimants Committee, the Debtors, and FFIC.~~Permanent Settlement Agreement and Release entered into on March 15, 2019 between Maremont and FFIC, which agreement is attached hereto as Exhibit N.

70.     "*File,*" "*Filed*" or "*Filing*" means file, filed, or filing with the Bankruptcy Court or the District Court in the Chapter 11 Cases.

in each case solely in its capacity as such (the "Meritor Release").  The Meritor Release will be effectuated automatically upon the occurrence of the Effective Date.

        2.    Maremont Contribution. On the Effective Date, the Debtors will transfer, or cause to be transferred, to the Asbestos Personal Injury Trust (or, if the Asbestos Personal Injury Trust determines it would be more beneficial, the Reorganized Debtors shall retain) the Maremont Insurance, the Maremont Contributed Cash, and, to the extent not included in the Maremont Contributed Cash, the Meritor Contribution (the "Maremont Contribution").  Also on the Effective Date, Maremont will contribute the Intercompany Receivables to the Maremont Subsidiaries, thereby cancelling them, or, alternatively, cause the Intercompany Receivables to be cancelled and discharged for no consideration.

*C.*     *Restructuring*

        1.    On or prior to the Effective Date: (a) Maremont will contribute the Intercompany Receivables to AVM, FRCOC, and MEP, respectively, as the Entities from which such receivables are owed, thereby cancelling the Intercompany Receivables.

        2.    On the Effective Date: (a) all outstanding shares of Maremont will be cancelled; and (b) simultaneously with the cancellation of such shares, Maremont will issue the Reorganized Maremont Stock to the Asbestos Personal Injury Trust.  Each of AVM, FRCOC, and MEP shall remain wholly owned subsidiaries of Reorganized Maremont.

        3.    The sequence of the foregoing transactions and other Restructuring Transactions will be set forth in the Implementation Step Plan.

*D.*     *Insurance Agreements*

        Pursuant to Bankruptcy Rule 9019, and in consideration for the treatment of FFIC, Everest, Mt. McKinley, and Zurich, respectively, as Settling Insurers under the Plan, and other benefits provided under the Plan, the following treatment of the FFIC Agreement, the Zurich Agreement, and the Everest Agreement shall constitute a good faith compromise and settlement of such agreements, effective upon the occurrence of the Effective Date with no further action required:

        1. FFIC Agreement.  The FFIC Amendment shall become effective as of the Effective Date of the Plan with no further action required by FFIC or the Debtors.  The FFIC Amendment shall include the following terms:

            (a) FFIC shall acknowledge the remaining indemnity obligations under policies XLX 136 64 170 (June 30, 1980-June 30, 1981) and XLX 143 63 10 (June 30, 1981-June 30, 1982), which obligations were approximately $7.4 million as of the commencement of the Solicitation.

            (b) FFIC shall reimburse the Debtors for any invoices that remain outstanding under the FFIC Agreement as of the Effective Date and such amount shall be paid directly to the Asbestos Personal Injury Trust;.

            (c) FFIC shall agree that Allocated Expenses (as defined in the FFIC Agreement) shall include (i) any and all Allowed Administrative Expense Claims and (ii) Asbestos Personal Injury Trust Expenses.

            (d) After the Effective Date, FFIC shall pay any and all invoices submitted by the Asbestos Personal Injury Trust within thirty (30) days of receipt of such invoices.  The invoices shall include the following details: (i) the name of the holder of the Asbestos Personal Injury Claim; (ii) the last four digits of such claimant's social security number; (iii) such claimant's disease; and (iv) the

applicable claim amount.   Upon request, the Asbestos Personal Injury Trust shall provide FFIC with copies of the releases evidencing the underlying indemnity payments.

(e) FFIC shall have no further audit rights or right to information regarding Asbestos Personal Injury Claims with respect to the Debtor or the Reorganized Debtor, and shall have no opportunity to audit any cost of or payment by the Asbestos Personal Injury Trust.

1.     FFIC Agreement.  Notwithstanding any other provision of the Plan, subject to all of the terms and conditions of the FFIC Settlement Agreement, the FFIC Agreement~~, as amended pursuant to the FFIC Amendment,~~ shall be ~~assumed~~rejected by the Debtors ~~and assigned to the Asbestos Personal Injury Trust~~ effective automatically as of the Effective Date, without the need for any further action by any party. ~~Following such assumption and assignment, the Asbestos Personal Injury Trust shall have all of the benefits and obligations of the Debtors under the FFIC Agreement, as amended pursuant to the FFIC Amendment. In exchange, the Debtors shall treat FFIC as a Settling Insurer under the Plan. In the event that the FFIC Amendment is not approved as part of this Plan~~As of the Effective Date, the Reorganized Debtors and FFIC shall be bound by, and shall have the rights and obligations set forth in, the FFIC Settlement Agreement. Upon the payment by FFIC of the Settlement Amount (as defined in the FFIC Settlement Agreement), FFIC shall ~~not~~ be a Settling Insurer under ~~the~~this Plan ~~and the Debtors, with the consent of the Asbestos Claimants Committee and the Future Claimants' Representative, reserve the right to reject the FFIC Agreement~~.

2.     Everest Agreement.  Notwithstanding any other provision of the Plan, the Everest Agreement shall be rejected by the Debtors effective automatically as of the Effective Date, without the need for any further action by any party. In exchange for the treatment of Everest and Mt. McKinley as Settling Insurers under the Plan, Everest and Mt. McKinley shall agree to waive any and all claims they may have against the Debtors and the Asbestos Personal Injury Trust including, but not limited to, any claims arising under the Everest Agreement, and shall fully release all rights, claims, and defenses available under the Everest Agreement, regardless of whether the Everest Agreement is ultimately determined by the Court to be an Executory Contract. In the event that Everest and Mt. McKinley do not consent to such waiver and release, Everest and Mt. McKinley shall not be Settling Insurers under the Plan.

3.     Zurich Agreement.  Notwithstanding any other provision of the Plan, the Zurich Agreement shall be rejected by the Debtors effective automatically as of the Effective Date, without the need for any further action by any party. In exchange for the treatment of Zurich as a Settling Insurer under the Plan, Zurich shall agree to waive any and all claims it may have against the Debtors and the Asbestos Personal Injury Trust including, but not limited to, any claims arising under the Zurich Agreement for a refund payment or otherwise, and shall fully release all rights, claims, and defenses available under the Zurich Agreement, regardless of whether the Zurich Agreement is ultimately determined by the Court to be an Executory Contract. In the event that Zurich does not consent to such waiver and release, Zurich shall not be a Settling Insurer under the Plan.

E.     *Asbestos Personal Injury Trust*

1.     Creation of the Asbestos Personal Injury Trust.  On the Effective Date, the Asbestos Personal Injury Trust shall be established in accordance with the Plan Documents, the Asbestos Personal Injury Trust Documents, and section 524(g) of the Bankruptcy Code and managed pursuant to the terms and conditions of the Asbestos Personal Injury Trust Documents. On the Effective Date, the Asbestos Records Cooperation Agreement shall become effective and the Debtors' asbestos records shall be treated in accordance therewith.

2.     Purpose of the Asbestos Personal Injury Trust.  The purpose of the Asbestos Personal Injury Trust shall be to assume all liabilities and responsibility for all Asbestos Personal Injury Claims, and, among other things, to: (a) direct the processing, liquidation, and payment of all compensable Asbestos Personal Injury Claims in accordance with this Plan, the Asbestos Personal Injury Trust Agreement, the Asbestos Personal Injury Trust Distribution Procedures and the Confirmation Order; (b) preserve, hold, manage, and maximize the assets of the Asbestos Personal Injury Trust for use in paying and satisfying Asbestos Personal Injury Claims; and (c) qualify at all times as a qualified settlement fund. The Asbestos Personal Injury Trust shall use the Asbestos Personal Injury Trust's assets and income to resolve Asbestos Personal Injury Claims in accordance with the Asbestos Personal Injury Trust Agreement and the Asbestos Personal Injury Trust Distribution Procedures in such a way that Holders of Asbestos Personal Injury Claims are treated fairly, equitably, and reasonably in light of the finite assets available to satisfy such Claims, and shall otherwise comply in all respects with the requirements of a trust established pursuant to section 524(g)(2)(B) of the Bankruptcy Code.

3.     Except as provided in the Plan or the Confirmation Order, the Debtors, the Reorganized Debtors, and any and all Entities seeking to exercise the rights of any Debtor's Estate, in each case, whether individually or collectively, including, without limitation, any successor to any Debtor or any Debtor's Estate representative appointed or selected pursuant to the applicable provisions of the Bankruptcy Code, are permanently enjoined from taking any of the following actions on account of or based upon any and all Claims, obligations, suits, judgments, remedies, damages, Demands, debts, rights, Causes of Action and liabilities released pursuant to this Section VIII.E: (a) commencing or continuing any action or other proceeding against the Released Parties or the Non-Estate Representative Released Parties or their respective property; (b) enforcing, attaching, collecting or recovering any judgment, award, decree or order against the Released Parties or the Non-Estate Representative Released Parties or their respective property; (c) creating, perfecting or enforcing any Encumbrance against the Released Parties or the Non-Estate Representative Released Parties or their respective property; (d) asserting any setoff, right of subrogation, or recoupment of any kind against any obligation due the Released Parties or the Non-Estate Representative Released Parties or against their respective property; and (e) commencing or continuing any action, in any manner and in any place in the world, against the Released Parties or the Non-Estate Representative Released Parties that does not comply with or is inconsistent with the provisions of the Plan or the Confirmation Order. Notwithstanding the foregoing, the rights of the Debtors and the Reorganized Debtors, and any and all Entities seeking to exercise the rights of any Debtor's Estate, against FFIC under the FFIC Agreement shall not be released and shall be preserved as set forth in the Plan.

F.      *Release by Holders of Claims and Interests*

1.     As of the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, each Holder of a Claim against, or Interest in, any of the Debtors who receives a Distribution pursuant to the Plan or who votes to approve the Plan shall be deemed to forever release, waive, and discharge all claims, obligations, suits, judgments, remedies, damages, Demands, debts, rights, Causes of Action and liabilities whatsoever against the Released Parties and the Non-Estate Representative Released Parties, whether known or unknown, liquidated or unliquidated, fixed or contingent, foreseen or unforeseen, matured or unmatured, existing or hereinafter arising, in law, equity or otherwise, based in whole or in part upon any act or omission, transaction, or occurrence taking place on or prior to the Effective Date in any way relating to the Debtors, the Estate, the conduct of the Debtors' business, the Chapter 11 Cases, this Plan or the Reorganized Debtors (other than the rights under this Plan, the Plan Documents, and the contracts, instruments, releases and other agreements or documents delivered or to be delivered hereunder), including, for the avoidance of doubt, any and all Causes of Action that the Holder of an Asbestos Personal Injury Claim, the Asbestos Personal Injury Trust, or the Future Claimants Representative did or could have commenced against any officer or director of any of the Debtors (in such capacity) that is based upon or arising from any acts or omissions of such officer or director occurring prior to the Effective Date on account of such Asbestos Personal Injury Claim, to the fullest extent permitted under section 524(g) of the Bankruptcy Code and applicable law (as now in effect or subsequently extended); provided, however, that nothing contained in this Section VIII.F.1 is intended to (a) operate as a release of (i) any claims, debts, obligations, rights, suits, damages, actions, causes of action, remedies, and liabilities of the United States or any enforcement or regulatory agency thereof; (ii) any claims, debts, obligations, rights, suits, damages, actions, causes of action, remedies, and liabilities of any State or any enforcement or regulatory agency of any State, under state or federal environmental laws; or (iii) any criminal liability under the laws of the United States or any State, or (b) affect the treatment of Asbestos Personal Injury Claims pursuant to this Plan and the channeling of Asbestos Personal Injury Claims pursuant to the Asbestos Personal Injury Channeling Injunction; provided, further, that the releases set forth in this Section VIII.F.1 shall not be granted or be deemed to have been granted by any Entity who returns the Opt-Out Election Form, within thirty (30) days after entry of the Effective Date, to the address specified on the Opt-Out Election Form, specifying that such Entity elects not to grant the releases contained in this Section VIII.F.1. Any election in the Opt-Out Election Form not to grant the releases contained in this Section VIII.F.1. shall not affect or alter the requirement that all Holders of Asbestos Personal Injury Claims must execute an Asbestos Personal Injury Claimant Release as a precondition to receiving payment on account of their Asbestos Personal Injury Claims from the Asbestos Personal Injury Trust.

**ARTICLE XI.**
**RETENTION OF JURISDICTION**

A.      *Retention of Jurisdiction*

Pursuant to sections 105(a) and 1142 of the Bankruptcy Code, the Bankruptcy Court and, to the extent applicable, the District Court, shall, to the fullest extent permitted by law, retain jurisdiction over all matters arising out of and related to the Chapter 11 Cases and the Plan, including, among other things, jurisdiction to:

(a)      hear and determine any and all objections to and proceedings involving the allowance, estimation, classification, and subordination of Claims that have been or properly should have been brought in the Bankruptcy Court (other than Asbestos Personal Injury Claims) or Interests;

(b)      hear and determine all objections to the termination of the Asbestos Personal Injury Trust;

(c)      hear and determine such other matters that may be set forth in or arise in connection with the Plan, the Confirmation Order, the Asbestos Personal Injury Channeling Injunction, or the Asbestos Personal Injury Trust Agreement;

(d)      hear and determine any proceeding that involves the validity, application, construction, enforceability, or modification of the Asbestos Personal Injury Channeling Injunction;

(e)      hear and determine any conflict or other issues that may arise in the Chapter 11 Cases, including the implementation and enforcement of all orders entered by the Bankruptcy Court in the Chapter 11 Cases, and in the administration of the Asbestos Personal Injury Trust;

(f)      enter such orders as are necessary to implement and enforce the releases and injunctions described herein, including, if necessary, in connection with application of the protections afforded by section 524 of the Bankruptcy Code and/or the Plan to the Protected Parties;

(g)      hear and determine any and all applications for allowance of Professional Fee Claims and any other fees and expenses authorized to be paid or reimbursed under the Bankruptcy Code or the Plan;

(h)      enter such orders authorizing non-material modifications to the Plan as may be necessary to comply with section 468B of the Internal Revenue Code;

(i)      hear and determine any applications pending on the Effective Date for the assumption, assumption and assignment, or rejection, as the case may be, of Executory Contracts to which any Debtor is a party, and to hear and determine and, if necessary, liquidate any and all Claims arising therefrom;

(j)      hear and determine any proceeding to enforce the provisions of the FFIC Settlement Agreement;

(k)      (j) hear and determine any and all applications, Claims, causes of action, adversary proceedings, and contested or litigated matters that may be pending in the Chapter 11 Cases on the Effective Date or commenced by one or more Debtors or any other party in interest (including, without limitation, the

48

Asbestos Personal Injury Trust) in the Chapter 11 Cases subsequent to the Effective Date;

(l) (k) consider any modifications of the Plan, and remedy any defect or omission or reconcile any inconsistency or make any other necessary modifications in or to the Plan, the Asbestos Personal Injury Trust Documents or any order of the Bankruptcy Court, including the Confirmation Order, as may be necessary to carry out the purposes and intent of the Plan, to the extent authorized by the Bankruptcy Code and the Bankruptcy Rules; provided, that there shall be no modification made at any time that would reduce or eliminate any of the protections provided herein to the Protected Parties or releases provided hereunder;

(m) (l) hear and determine all controversies, suits, and disputes that may arise in connection with the interpretation, enforcement, or consummation of the Plan or any Entity's obligations hereunder and issue orders in aid of confirmation, consummation and execution of the Plan to the extent authorized by section 1142 of the Bankruptcy Code, including, but not limited to, compelling the conveyance of property and other performance contemplated under the Plan and documents executed in connection herewith;

(n) (m) hear and determine all questions and disputes and enter such orders or judgments, including, but not limited to, injunctions, as are necessary to (i) enforce the title, rights and powers of the Reorganized Debtors and the Asbestos Personal Injury Trust, and (ii) enable Holders of Claims to pursue their rights against any Entity that may be liable therefor pursuant to applicable law or otherwise;

(o) (n) hear and determine any proposed compromise and settlement of any Claim against or cause of action by or against any Debtor that has been or properly should have been brought in the Bankruptcy Court to the extent requested by the Reorganized Debtors;

(p) (o) hear and determine any timely objections to Administrative Expense Claims asserted or to Proofs of Claim filed, both before and after the Confirmation Date, including any objections to the classification of any Claim, and to allow or disallow any Disputed Claim, in whole or in part;

(q) (p) hear and determine matters concerning state, local and federal taxes, tax refunds, tax attributes, tax benefits, and similar or related matters with respect to Maremont, the Reorganized Debtors, or the Asbestos Personal Injury Trust arising on or prior to the Effective Date, arising on account of transactions contemplated by the Plan Documents, or relating to the period of administration of the Chapter 11 Cases;

(r) (q) hear and determine such other matters as may be set forth in the Confirmation Order or other orders of the Bankruptcy Court, or which may arise in connection with the Plan, the Confirmation Order, or the Effective Date, as may be authorized under the provisions of the Bankruptcy Code or any other applicable law;

(s) (r) hear and determine all controversies, suits, and disputes that may arise in connection with the interpretation, enforcement, or consummation of the Plan or

49

any Entity's obligations hereunder, including, but not limited to, performance of the Debtors' duties under the Plan;

(t)    ~~(s)~~ hear and determine all controversies, suits, and disputes regarding interpretation or enforcement of the Asbestos Claims Indemnification Agreement;

(u)    ~~(t)~~ enforce remedies upon any default under the Plan;

(v)    ~~(u)~~ hear and determine any other matter not inconsistent with the Bankruptcy Code;

(w)    ~~(v)~~ hear and determine any claim that in any way challenges or is based on any provision in the Confirmation Order; and

(x)    ~~(w)~~ enter a final decree closing the Chapter 11 Cases.

If and to the extent that the Bankruptcy Court is not permitted under applicable law to exercise jurisdiction over any of the matters specified above, the reference to the "Bankruptcy Court" in the preamble to this Section XI.A shall be deemed to be a reference to the "District Court." Notwithstanding anything in this Section XI.A to the contrary, the Asbestos Personal Injury Trust Agreement and the Asbestos Personal Injury Trust Distribution Procedures shall govern the satisfaction of Asbestos Personal Injury Claims and the forum in which Asbestos Personal Injury Claims shall be determined.

B.    *Post-Confirmation Modification of Plan*

Subject to the limitations contained herein and in the other Plan Documents, and except as otherwise ordered by the Bankruptcy Court, the Plan Proponents, with the consent of the Asbestos Claimants Committee and the Future Claimants' Representative, which consent may not be unreasonably withheld, may alter, amend, or modify the Plan or any exhibits thereto under section 1127(b) of the Bankruptcy Code and in accordance with the Plan Documents, at any time after the entry of the Confirmation Order and prior to substantial consummation of the Plan (1) in accordance with the requirements of sections 1122 and 1123 of the Bankruptcy Code, or (2) to remedy any defect or omission or reconcile any inconsistency in the Plan in such manner as may be necessary to carry out the purpose and intent of the Plan either with Bankruptcy Court approval or, so long as the interests of the Holders of Allowed Claims are not adversely affected thereby in any material respect, without Bankruptcy Court approval. A Holder of a Claim that has accepted or rejected the Plan shall be deemed to have accepted or rejected, as the case may be, the Plan as modified, unless, within the time fixed by the Bankruptcy Court, if any, such Holder changes its previous acceptance or rejection, to the extent such Holder is afforded the opportunity to do so under section 1127(d) of the Bankruptcy Code.

After the Effective Date, the Reorganized Debtors, Meritor, or the Asbestos Personal Injury Trust, as applicable, may remedy any defects or omissions or reconcile any inconsistencies in the Plan Documents for the purpose of implementing the Plan in such manner as may be necessary to carry out the purposes and intent of the Plan, so long as the interests of the Holders of Allowed Claims and other applicable parties-in-interest are not adversely affected thereby.

Notwithstanding anything in this Article XI, there shall be no modification to the Plan made at any time that would reduce or eliminate any of the protections provided herein, or in the releases provided hereunder, to the Protected Parties, without the consent of Meritor and the Debtors or Reorganized Debtors, as applicable.

C.    *Consent to Jurisdiction*

Upon default under the Plan, the Debtors, the Reorganized Debtors, Meritor, the Asbestos Personal Injury Trust, the Asbestos Personal Injury Trustee, the Asbestos Personal Injury Trust Advisory Committee, and the Future

Claimants' Representative, respectively, consent to the jurisdiction of the Bankruptcy Court, and agree that it shall be the preferred forum for all proceedings relating to any such default.

## ARTICLE XII.
## MISCELLANEOUS PROVISIONS

A.    *Immediate Binding Effect*

Notwithstanding Federal Bankruptcy Rules 3020(e), 6004(h), or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plan and the documents and instruments contained in the Plan Supplement shall be immediately effective and enforceable and deemed binding upon the Debtors, the Reorganized Debtors, and any and all Holders of Claims or Interests (irrespective of whether their Claims or Interests are deemed to have accepted the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, discharges, and injunctions described in the Plan, each Entity acquiring property under the Plan, and any and all non-Debtor parties to Executory Contracts. The Confirmation Order shall contain a waiver of any stay of enforcement otherwise applicable, including pursuant to Bankruptcy Rule 3020(e) and 7062. Upon Confirmation of the Plan, the Confirmation Order shall be deemed to be in recordable form, and shall be accepted by any recording officer for filing and recording purposes without further or additional orders, certifications, or other supporting documents.

B.    *Additional Documents*

On or before the Effective Date, the Debtors may File with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan. The Debtors or Reorganized Debtors, as applicable, and all Holders receiving Distributions pursuant to the Plan and all other parties in interest shall, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

C.    *FFIC Settlement Agreement and FFIC Amendment*

~~Except in the event that the FFIC Amendment is not approved as part of this Plan, the~~The terms and conditions of the FFIC Settlement Agreement~~, as amended pursuant to the FFIC Amendment,~~ are expressly incorporated into this Plan.

D.    *Payment of Statutory Fees*

All fees payable pursuant to section 1930(a) of the Judicial Code, as determined by the Bankruptcy Court at the Confirmation Hearing shall be paid on or prior to the Effective Date. On and after the Effective Date, each Reorganized Debtor (individually or collectively with the other Reorganized Debtors) shall pay all such fees when due and payable, and shall file with the Bankruptcy Court quarterly reports in a form reasonably acceptable to the U.S. Trustee, until that particular Reorganized Debtor's case has been closed, converted or dismissed, whichever occurs first.

E.    *Tax Reporting and Compliance*

In connection with the Plan and all instruments issued in connection therewith and Distributions thereon, the Debtors and the Reorganized Debtors shall comply with all withholding and reporting requirements imposed by any federal, state, local or foreign taxing authority and all Distributions hereunder shall be subject to any such withholding and reporting requirements. No Holder of an Allowed Claim against the Debtors shall effectuate any withholding with respect to the cancellation or satisfaction of such Allowed Claim under the Plan. Reorganized Maremont is hereby authorized to request an expedited determination of taxes under section 505(b) of the Bankruptcy Code for all taxable periods of Maremont ending after the Petition Date through and including the Effective Date of the Plan.

Dated:    March 1217, 2019
             Wilmington, Delaware

                                                    MAREMONT CORPORATION, on behalf of itself and each
                                                    of the other Debtors


                                                    By:  */s/ Carl D. Anderson, II*
                                                    Name:  Carl D. Anderson, II
                                                    Title:    Chairman and Sole Officer


COUNSEL:


*/s/ Norman L. Pernick*


James F. Conlan
Andrew F. O'Neill
Allison Ross Stromberg
Blair M. Warner
**SIDLEY AUSTIN LLP**
One South Dearborn Street
Chicago, Illinois 60603
Telephone: (312) 853-7000
Facsimile: (312) 853-7036

 - and -

Norman L. Pernick
J. Kate Stickles
**COLE SCHOTZ P.C.**
500 Delaware Avenue, Ste. 1410
Wilmington, DE 19801
Telephone: (302) 652-3131
Facsimile: (302) 652-3117

**Exhibit N**

**FFIC Settlement Agreement**

## PERMANENT SETTLEMENT AGREEMENT AND RELEASE

This Permanent Settlement Agreement and Release (the "Agreement," as defined below) is entered into on March 15, 2019 between Maremont Corporation ("Maremont") and Fireman's Fund Insurance Company ("FFIC") (collectively referred to as "Parties," as defined below).

## RECITALS

WHEREAS, FFIC issued policy number XLX 136 64 70 (June 30, 1980–June 30, 1981) and policy number XLX 143 63 10 (June 30, 1981–March 10, 1982) to Maremont (the "Policies," as defined below); and

WHEREAS, Maremont is and will be subject to Asbestos Personal Injury Claims and Demands; and

WHEREAS, Maremont and FFIC are signatories to the June 19, 1985 Agreement Concerning Asbestos-Related Claims (the "Wellington Agreement"); and

WHEREAS, Maremont and FFIC are parties to the November 15, 2010 Settlement Agreement and Release (the "FFIC Agreement"); and

WHEREAS, Maremont, Maremont Exhaust Products, Inc, AVM, Inc, and Former Ride Control Operating Company. Inc. (f/k/a ArvinMeritor, a Delaware corporation) (collectively, the "Debtors") filed the Chapter 11 Cases and intend to seek confirmation of the Plan that provides protection pursuant to §524(g) of the Bankruptcy Code against Asbestos Personal Injury Claims and Demands to certain Protected Parties, including Settling Insurers, and channel Asbestos Personal Injury Claims and Demands to the Asbestos Personal Injury Trust; and

WHEREAS, on February 4, 2019, the United States Trustee for the District of Delaware appointed the Committee of Asbestos Personal Injury Claimants in the Chapter 11 Cases (the "Committee"); and

WHEREAS, on March 13, 2019, the Bankruptcy Court entered an order appointing James L. Patton, Jr. as the Future Claimants' Representative ("FCR"); and

WHEREAS, Debtors filed the Plan on January 22, 2019, which, among other things, provides for the FFIC Amendment; and

WHEREAS, FFIC has raised various issues concerning the FFIC Amendment and the Plan and their potential impact on FFIC's contractual rights under the Policies, the Wellington Agreement, the FFIC Agreement, and applicable law; and

WHEREAS, Maremont has demanded that FFIC pay certain costs and expenses associated with the Chapter 11 Cases and the Asbestos Personal Injury Trust and its operations, and FFIC disputes any obligation under the FFIC Agreement or the Policies to pay or reimburse such costs and expenses; and

ACTIVE 241146552

WHEREAS, representatives of the Debtors, Committee, and the FCR (together, the "Plan Proponents"), on the one hand, and FFIC, on the other hand, engaged in negotiations to resolve all disputes among them with respect to coverage under the Policies, the FFIC Agreement, and the Wellington Agreement, including disputes that have arisen or may arise in the future with respect to the Plan; and

WHEREAS, in consideration of payment of the Settlement Amount and other consideration as more fully set forth herein, the Parties intend to adopt, by way of compromise and release, a full and final settlement that releases and terminates all rights, obligations, and liabilities of FFIC and Maremont arising out of, relating to, and/or in connection with the Policies or FFIC Agreement; and

WHEREAS, the Parties are entering into this Agreement in good faith and as the result of arms-length negotiations between the Plan Proponents and FFIC.

NOW, THEREFORE, in full consideration of the foregoing and the mutual agreements contained herein, the Parties agree as follows:

<u>**AGREEMENTS**</u>

**1.    DEFINITIONS**

As used in this Agreement, the following terms shall have the following meanings. Capitalized terms not specifically defined in this Agreement shall have the meanings set forth in the Plan as filed on January 22, 2019 at Doc. No. 10.

(a) "Affiliate" means an Entity that is an affiliate of, or an Entity that is affiliated with, another specified Entity because it directly, indirectly, or through one or more intermediaries, controls, is controlled by, or is under common control with the other specified Entity.

(b) "Agreement" shall mean this Permanent Settlement Agreement and Release, as the same may be modified in accordance with its provisions.

(d) "Claim" means any and all past, present, or future, actual, alleged or potential, liability, duty, obligation, claim, debt, demand, allegation, action, damages, suit, expense, loss, cost, assertion of liability, and/or cause of action of any type whatsoever, whether in law, in equity, in admiralty, or otherwise, and whether or not presently known, contractual or extracontractual (including without limitation any claims for "bad faith," unfair claims practices, or breach of any implied duty of good faith and fair dealing).

(e) "Execution Date" means the earliest date on which this Agreement is signed by all of the Parties and persons contemplated to sign the Agreement.

(f) "FFIC Parties" means:  (i) FFIC, as it exists on the Execution Date, along with (ii) each of its predecessors, successors, Affiliates, (iii) any joint venture in which FFIC has participated as of the Execution Date, and (iv) all of the officers, directors, employees, agents, representatives, members, and attorneys of any of the foregoing, solely in their capacity as such. FFIC Parties also shall include any Entity that acquired or acquires FFIC, or becomes successor

in interest to FFIC through assignment, merger, or otherwise, but only to the extent that such successor succeeds to FFIC's rights or obligations as they existed on the Execution Date.

(g) "Maremont Parties" means: (i) Maremont Corporation, along with (ii) each of its predecessors, successors, Affiliates (including but not limited to the Debtors), (iii) any joint venture in which Maremont has participated as of the Execution Date, (iv) each Entity insured or allegedly insured under the Policies, and (v) all of the officers, directors, employees, agents, representatives, members, and attorneys of any of the foregoing, solely in their capacity as such. Maremont Parties also shall include any Entity that acquired or acquires Maremont, or becomes successor in interest to Maremont through assignment, merger, or otherwise, but only to the extent that such successor succeeds to Maremont's rights or obligations as they existed on the Execution Date.

(h) "Party" means a signatory of this Agreement; "Parties" means the Maremont Parties and the FFIC Parties, together.

(i) "Policies" means (i) FFIC policies XLX 136 64 70 and XLX 143 63 10 issued to Maremont; and (ii) any and all known and unknown liability insurance policies ever issued by the FFIC Parties to any Maremont Party, or that potentially or actually provides coverage to any Maremont Party for any Asbestos Personal Injury Claim or other Claims.

(j) "Settlement Amount" means Eight Million Dollars ($8,000,000).

(k) "Settlement Effective Date" means the first Business Day upon which the Debtors have provided notice to FFIC pursuant to Section 10 of this Agreement that the Effective Date has occurred.

## 2.    Settlement Payment

(a) Within 28 days after the Settlement Effective Date, FFIC shall pay the Settlement Amount to Maremont pursuant to the instructions to be provided with the notice to FFIC that the Effective Date has occurred.

(b) Maremont hereby acknowledges that FFIC is not acting as a volunteer in paying the Settlement Amount, and FFIC's payment of the Settlement Amount reflects potential liabilities and obligations to Maremont that FFIC allegedly is obligated to pay under the Policies on account of certain Claims.

**3.        Full and Mutual Releases**

(a) Release of the FFIC Parties By The Maremont Parties

In consideration of FFIC's paying the Settlement Amount, and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Maremont Parties hereby irrevocably and forever settle, remise, release, covenant not to sue, and discharge the FFIC Parties from and with respect to any and all Claims that the Maremont Parties ever had, now have, or hereafter may have under, arising out of, connected to, and/or in connection with the Policies or the FFIC Agreement, and the FFIC Parties shall be irrevocably released from all Claims under, arising out of, related to, and/or in connection with the Policies, including but not limited to:

i.  Claims for insurance coverage and/or other obligations under the Policies, the FFIC Agreement, and/or the Wellington Agreement;

ii.  Claims under, arising out of, related to, and/or in connection with any act, omission, representation, or conduct of any sort under, arising from, related to, and/or in connection with the Policies, the FFIC Agreement, and/or the Wellington Agreement;

iii.  Claims for any form of extra-contractual liability under, arising out of, related to, and/or in connection with the Policies, including Claims for punitive or exemplary damages, antitrust or unfair competition, breach of any duty of good faith and fair dealing, bad faith or other misconduct or alleged wrongdoing, breach of statutory duties, and/or breach of common law duties, such as, but not limited to, negligent undertaking, breach of fiduciary duty, and/or any other theory of extra-contractual liability.

The releases provided in this Section 3(a) shall not, however, relieve FFIC of any of its obligations under this Agreement.

For the avoidance of doubt, and without limitation, immediately upon FFIC's payment of the Settlement Payment, all past, present, and future claims of the Maremont Parties against the FFIC Parties under, arising out of, related to, and/or in connection with the Policies, the FFIC Agreement, and the Wellington Agreement shall be deemed to be fully and finally released and extinguished; and the FFIC Parties shall have no further obligations under, arising out of, related to, and/or in connection with the Policies, the FFIC Agreement, or the Wellington Agreement.

(b) Release of the Maremont Parties By The FFIC Parties

In consideration of the releases and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the FFIC Parties hereby irrevocably and forever settle, remise, release, covenant not to sue, and discharge the Maremont Parties from and with respect to any and all Claims that the FFIC Parties ever had, now have, or hereafter may have under, arising out of, connected to, and/or in connection with the Policies or the FFIC Agreement, and the Maremont Parties shall be irrevocably released from all Claims under, arising out of, related to, and/or in connection with the Policies, including but not limited to:

i.  Obligations under the Policies, the FFIC Agreement, and/or the Wellington Agreement;

ii.  Claims under, arising out of, related to, and/or in connection with any act, omission, representation, or conduct of any sort under, arising from, related to, and/or in connection with the Policies, the FFIC Agreement, and/or the Wellington Agreement;

iii.  Claims for any form of extra-contractual liability under, arising out of, related to, and/or in connection with the Policies, including Claims for punitive or exemplary damages, antitrust or unfair competition, breach of any duty of good faith and fair dealing, bad faith or other misconduct or alleged wrongdoing, breach of statutory duties, and/or breach of common law duties, such as, but not limited to, negligent undertaking, breach of fiduciary duty, and/or any other theory of extra-contractual liability.

The releases provided in this Section 3(b) shall not, however, relieve FFIC of any of its obligations under this Agreement.

For the avoidance of doubt, and without limitation, immediately upon FFIC's payment of the Settlement Payment, all past, present, and future claims of the FFIC Parties against the Maremont Parties under, arising out of, related to, and/or in connection with the Policies, the FFIC Agreement, and the Wellington Agreement shall be deemed to be fully and finally released and extinguished; and the Maremont Parties shall have no further obligations under, arising out of, related to, and/or in connection with the Policies, the FFIC Agreement, or the Wellington Agreement.

(c) The Parties understand and acknowledge that (i) Claims that have been or may be asserted against Maremont or the Asbestos Personal Injury Trust may increase or decrease in amount or in severity over time and may include progressive, cumulative, unknown, and/or unforeseen elements and (ii) there may be hidden, unknown, and unknowable damages, defense expenses, or other costs related to such Claims. Each of the Parties acknowledges and agrees that it nevertheless willingly enters into this Agreement, including the releases set forth in this Section 3. Likewise, each of the Parties expressly assumes the risk that Claims, acts, omissions, matters, causes, or other facts or things arising out of, related to, and/or in connection with the Policies, FFIC Agreement, or the Wellington Agreement may have occurred that one or more Parties do not know or do not suspect to exist, and the Parties expressly assume the risk of new or additional facts, Claims, or legal theories, or subsequent legal developments, that were not known and/or could not be anticipated at the Execution Date. Each of the Parties waives, with respect to the Claims released in this Agreement, the terms and provisions of any statute, rule, or doctrine of common law that either (i) narrowly construes releases purporting by their terms to release Claims in whole or in part under, arising out of, or related to, and/or in connection with such acts, omissions, matters, causes, or things, or (ii) restricts or prohibits the releasing of such Claims.

(d) This settlement and the Agreement are explicitly acknowledged by all concerned to be complete and effective notwithstanding any facts, legal theories, alleged mistakes, misrepresentations, alleged duties to disclose, or failures to disclose that are presently known to, or that subsequently become known to, FFIC, Maremont, or anyone else. This Agreement shall

not be subject to any claims of accident, unilateral mistake, mutual mistake, mistake of fact, estoppel, rescission, or reformation, and/or comparable claims, as the Parties intend by this Agreement permanently to resolve all present and future disputes.

(e) The Parties acknowledge they have been advised by their respective legal counsel and are familiar with the provisions of Section 1542 of the California Civil Code, which provides:

> **A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of the executing of the release, and that if known by him or her would have materially affected his or her settlement with the debtor or released party.**

## 5.    Bankruptcy-Related Obligations

(a) Before the Confirmation Hearing, Debtors shall file a revised Plan that (i) eliminates any and all references to the "FFIC Amendment," and includes a reference to this Agreement as the "FFIC Settlement Agreement", (ii) designates FFIC as a Settling Insurer, (iii) revises Section IV.D.1 of the Plan to read as follows (or to include such other language agreed between Maremont and FFIC):

> Notwithstanding any other provision of the Plan, and subject to all of the terms and conditions of the FFIC Settlement Agreement, the FFIC Agreement shall be rejected by the Debtors effective automatically as of the Effective Date, without the need for any further action by any Party.  As of the Effective Date, the Reorganized Debtors and FFIC shall be bound by, and shall have the rights and obligations set forth in, the FFIC Settlement Agreement. Upon the payment by FFIC of the Settlement Amount (as defined in the FFIC Settlement Agreement), FFIC shall be a Settling Insurer under this Plan.

and (iv) revises Section XII.C of the Plan to provide as follows:

> *FFIC Settlement Agreement*.   The terms and conditions of the FFIC Settlement Agreement are expressly incorporated into this Plan.

(b)   The Debtors shall submit to the Bankruptcy Court a proposed form order confirming the Plan, as revised, that shall include language in form and substance agreed to by the Parties: (i) approving this Agreement in its entirety, (ii) authorizing and directing the Debtors to perform their obligations under this Agreement, (iii) directing FFIC to perform its obligations under this Agreement, (iv) binding the Debtors' bankruptcy estates to the terms and conditions of this Agreement, (v) designating FFIC as a Settling Insurer, and (vi) containing a provision that the Bankruptcy Court shall retain jurisdiction over any proceeding to enforce the provisions of this Agreement to the fullest extent permissible under applicable law.

(c)      It is a condition precedent to the Parties' obligations under this Agreement that authorized representatives of the Committee and the FCR indicate in writing that each consents to (i) Maremont's entry into this Agreement and (ii) the terms and conditions set forth in this Agreement.

**6.       Reinsurance Claims/Limitations on Reimbursement Claims**

(a) FFIC will be free to pursue reinsurance claims against any and all reinsurers or retrocessionaires regarding any consideration paid by FFIC in connection with this Agreement (as well as for other reinsured amounts such as, without limitation, FFIC's counsel fees). FFIC is free to allocate the Settlement Amount among the Policies in its sole discretion, and such allocation shall not be binding on Maremont in any other proceeding.

(b) Subject to the provision allowing them to pursue reinsurance claims that is set forth in Section 6.(a), FFIC will not otherwise seek reimbursement of the Settlement Amount from any other insurer (or such other insurers' Affiliates) that enters into a settlement with Maremont in which such other insurer(s) agree, specifically as to FFIC or with respect to other Maremont insurers more generally: (1) not to seek any defense costs or indemnity payments from FFIC; and (2) not to assert a Claim for contribution, subrogation, or reimbursement against FFIC.

**7.       Cooperation**

(a) Each Party will use its best efforts to obtain the outcomes sought by this Agreement, and to take such steps and to execute such documents as may be reasonably necessary or proper to effectuate the purpose and intent of this Agreement and to preserve its validity and enforceability. In the event that any action or proceeding of any type whatsoever is commenced or prosecuted by any Entity not a Party hereto to invalidate, interpret, or prevent the validation, enforcement, or carrying out of all or any of the provisions of this Agreement, the Parties mutually agree represent, warrant, and covenant to cooperate fully in opposing such action or proceeding.

(b) Maremont agrees to undertake all reasonable actions and cooperate with FFIC in connection with FFIC's claims against its reinsurers and retrocessionaires relating to payment of the Settlement Amount, this Agreement, and/or Asbestos Personal Injury Claims. In particular, and without limiting other actions and cooperation that FFIC may request, Maremont will provide FFIC with a report once each quarter from the date that the Asbestos Personal Injury Trust begins processing claims that identifies (i) claimant name, (ii) date of alleged first exposure to a Maremont product, (iii) alleged injury, (iv) claim payment amount and (v) claim payment date for all claims processed through the Asbestos Personal Injury Trust (collectively, the "Reporting Material") until the total claim payments exhaust the Settlement Amount. Fireman's Fund shall keep all Reporting Material confidential, and Fireman's Fund shall not provide Reporting Material to any Entity other than its reinsurers, retrocessionaires, or reinsurance arbitrators solely for the purpose of obtaining reinsurance for any portion of the Settlement Amount. When providing Reporting Material to its reinsurers, retrocessionaires, or reinsurance arbitrators, Fireman's Fund shall advise the receiving Entity in writing to maintain the confidentiality of the Reporting Material and not to disclose such Material to any other Entity other than a reinsurer's retrocessionaires. Fireman's Fund shall not, and will confirm in writing with its reinsurers, retrocessionaires, and/or reinsurance arbitrators to which any Reporting Material will be provided, that they shall not, disclose any Reporting Material to any other Entity unless such Reporting Material is sought pursuant to a subpoena or other valid legal process.

**8.      Representations By Counsel**

The Parties acknowledge and agree that this Agreement was bargained for and entered into in good faith and as the result of arms-length negotiations.  This Agreement involves compromises of the Parties' previously stated legal positions, and the Parties expressly agree that at all material times they have been represented by counsel of their own choosing concerning the rights affected by this Agreement, the form and content of it, and the advisability of executing it. This Agreement does not reflect the Parties' views as to their rights and obligations with respect to matters or Entities outside the scope of this Agreement. This Agreement is without prejudice to positions taken by FFIC with regard to other insureds or claimants, and without prejudice to positions taken by Maremont with regard to other insurers. The Parties specifically disavow any intention to create rights in third parties under or in relation to this Agreement. This Agreement is the jointly-drafted product of multi-lateral negotiations among parties of equal sophistication and bargaining power and thus shall not be interpreted for or against any Party notwithstanding statutes, rules, or doctrines that presumptively construe agreements or contracts against certain parties, and no provision of this Agreement shall be construed against FFIC because of its status as an insurance company or as having issued or allegedly issued the Policies to Maremont.  This Agreement is not, nor shall it be construed as, an insurance policy.

**9.      Entire Agreement/Amendments to Agreement**

This Agreement constitutes the entire agreement between the Parties. Except as expressly set forth herein to the contrary, this Agreement supersedes all prior written and oral agreements, commitments or understandings with respect to the matters provided for in this Agreement. No amendments or variations of the terms of this Agreement shall be valid unless made in writing and signed by all Parties hereto, or their successors or assigns.

**10.     Notices**

(a)  All notices, requests, demands and other communications required or permitted to be given under this Agreement shall be deemed to have been duly given if in writing and delivered personally, or by registered or certified mail, return receipt requested, or by Federal Express with signature required, <u>and</u> also by email, addressed as follows:

| | |
|---|---|
| Reorganized Maremont: | Maremont Corporation<br>27 Albany Avenue<br>Brooklyn, New York 11216<br>Attn: Sherman K. Edmiston III, HI CapM Advisors |
| With a copy to: | Sidley Austin LLP<br>One South Dearborn Street<br>Chicago, Illinois 60603<br>Attn: Andrew F. O'Neill<br>aoneill@sidley.com |
| Maremont Asbestos<br>Personal Injury Trust: | 4244 Renaissance Tower<br>1201 Elm Street<br>Dallas, Texas 75270 |

8

|  | Attn: Alan B. Rich, Esq. |
|---|---|
| With a copy to: | Stutzman, Bromberg, Esserman & Plifka, a Professional Corporation<br>2323 Bryan Street, Suite 2200<br>Dallas, TX 75201-2689<br>Attn: Sander L. Esserman, Esq. |
| Fireman's Fund: | Amanda Webber<br>Claims Director – Asbestos and Toxic Tort Claims<br>Allianz Reinsurance America, Inc.<br>1465 North McDowell Blvd., Suite 100<br>Petaluma, CA 94954<br>amanda.webber@allianzrm-us.com |
| With a copy to: | Leslie A. Davis<br>Troutman Sanders LLP<br>401 9th Street, NW<br>Washington, DC 20004<br>leslie.davis@troutman.com |

**11. Binding Effect**

This Agreement shall be binding upon and inure to the benefit of the Parties and their respective successors and assigns.

**12.  Execution**

This Agreement may be executed in multiple counterparts, each of which shall be deemed an original but all of which shall constitute one and the same instrument. Execution of this Agreement may be effected by facsimile, PDF, or other electronic transmission of executed copies of the signature pages delivered to counsel for the Parties. This Agreement shall become effective as of the Execution Date.

**IN WITNESS WHEREOF,** the Parties have executed this Agreement by their duly-authorized officers or representatives.

**MAREMONT CORPORATION**

_____
By: Carl D. Anderson, II
Its: Chairman and Sole Officer
Date:

**FIREMAN'S FUND INSURANCE COMPANY**

_____
By:
Its:
Date: