## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| MAREMONT CORPORATION, et al.,[1] | Case No. 19-10118 (KJC) |
| Debtors. | (Jointly Administered) |
| | **Ref. Docket Nos. 10, 11, 65, 136, 139, 140, 142, 155, 158, 222, 223, 238** |

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER (I) APPROVING THE ADEQUACY OF THE DISCLOSURE STATEMENT, (II) APPROVING THE PREPETITION SOLICITATION PROCEDURES, AND (III) CONFIRMING THE MODIFIED JOINT PREPACKAGED PLAN OF REORGANIZATION OF MAREMONT CORPORATION AND ITS DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE

### Recitals

A.      On December 4, 2018 (the "Solicitation Date"), Maremont Corporation ("Maremont") and its affiliated debtors and debtors in possession (collectively, the "Debtors") in the above-captioned chapter 11 cases (the "Chapter 11 Cases") commenced a prepetition solicitation (the "Solicitation") of votes to accept or reject the *Joint Prepackaged Plan of Reorganization of Maremont Corporation and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 10] (the "Original Plan," as supplemented by the *Plan Supplement to the Joint Prepackaged Plan of Reorganization of Maremont Corporation and Its Debtor Affiliates* [Docket No. 65] (the "Plan Supplement") and as modified by (i) the *Modified Joint Prepackaged Plan of Reorganization of Maremont Corporation and Its Debtor Affiliates Pursuant*

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal taxpayer identification number, are: Maremont Corporation (6138); Maremont Exhaust Products, Inc. (9284); AVM, Inc. (9285); and Former Ride Control Operating Company, Inc. (f/k/a ArvinMeritor, Inc., a Delaware corporation) (9286). The mailing address for each Debtor for purposes of these chapter 11 cases is 2135 West Maple Road, Troy, MI 48084.

to Chapter 11 of the Bankruptcy Code [Docket No. 136], (ii) the modifications filed on March 17, 2019 [Docket No. 155], (iii) the modifications and revised Exhibit D (Asbestos Personal Injury Trust Distribution Procedures) filed on May 14, 2019 [Docket No. 222]; and (iv) the further revised Exhibit D filed on May 17, 2019 [Docket No. ___] (collectively with the Original Plan, the Plan Supplement, and as may be further amended, modified, or supplemented from time to time, the "Plan")).[2] Specifically, on the Solicitation Date, the Debtors caused Donlin, Recano & Company, Inc. (the "Solicitation Agent") to commence service of (i) the *Disclosure Statement for the Joint Prepackaged Plan of Reorganization of Maremont Corporation and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code*, dated December 4, 2018 [Docket No. 11] (together with all exhibits thereto, the "Disclosure Statement") and all exhibits thereto, including, inter alia, the Original Plan, to Holders of Claims in the Voting Class (as defined below), all as more fully described in the *Declaration of Jung W. Song of Donlin, Recano & Company, Inc. Regarding Solicitation of Votes and Tabulation of Ballots Cast on the Joint Prepackaged Plan of Reorganization of Maremont Corporation and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 12] (the "Voting Declaration") and the *Affidavit of Donlin, Recano & Company, Inc. Regarding Service of Solicitation Packages with Respect to the Joint Prepackaged Plan of Reorganization of Maremont Corporation and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 13] (the "Affidavit of Service"). On December 12, 2018, the Debtors supplemented the Solicitation Package by mailing additional materials – including the ballot (the "Ballot") and master ballot (the "Master Ballot") for accepting or rejecting the Plan (together with the Plan, the Disclosure Statement and as supplemented on December 12,

---

[2] The Plan, as confirmed by this Order (as defined below), is attached hereto as **Exhibit A**. All capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan. The rules of interpretation set forth in Section I.B of the Plan shall apply to this Order.

2018, the "Solicitation Package"), the Asbestos Personal Injury Trust Agreement, and the Asbestos Personal Injury Trust Distribution Procedures (as may be modified, amended or supplemented from time to time, the "TDP").

     B.    The Solicitation Package was distributed to each Holder of record or such Holder's counsel of record as of November 30, 2018 (the "Voting Record Date") of a Class 4 Asbestos Personal Injury Claim, the only Class of Claims or Interests entitled to vote to accept or reject the Original Plan (the "Voting Class"). The Debtors established January 18, 2019 at 4:00 p.m. (prevailing Eastern Time) as the deadline by which Holders of Claims in the Voting Class were required to have returned their completed Ballots or Master Ballots to the Solicitation Agent by first-class mail, overnight mail, or hand delivery.

     C.    The Debtors did not solicit votes to accept or reject the Original Plan from Holders of Claims or Interests in Classes 1, 2, 3, 5, 6, 7 or 8, each of which was presumed to have accepted or rejected the Original Plan pursuant to sections 1126(f) or (g), as applicable, of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code").

     D.    On January 22, 2019 (the "Petition Date"), the Debtors each filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court").

     E.    On the Petition Date, the Debtors filed, among other documents and pleadings, (i) the Original Plan; (ii) the Disclosure Statement; and (iii) the *Debtors' Motion for Entry of an Order (I) Scheduling Combined Hearing to Consider Approval of Disclosure Statement and Confirmation of Prepackaged Plan, (II) Establishing the Plan and Disclosure Statement Objection Deadline and Related Procedures, (III) Approving the Solicitation Procedures and Forms of Ballots, (IV) Approving the Form and Manner of Notice of the Combined Hearing, Objection*

3

*Deadline, and Notice of Commencement, (V) Conditionally Directing that a Meeting of Creditors*
*Not Be Convened, (VI) Conditionally Extending Deadline to File Schedules and Statements, and*
*(VII) Granting Related Relief* [Docket No. 9].

F.      On January 23, 2019, the Bankruptcy Court entered the *Order (I) Scheduling*
*Combined Hearing   to Consider Approval of Disclosure Statement and Confirmation of*
*Prepackaged Plan, (II) Establishing the Plan and Disclosure Statement Objection Deadline and*
*Related Procedures, (III) Approving the Solicitation Procedures and Forms of Ballots, (IV)*
*Approving the Form and Manner of Notice of the Combined Hearing, Objection Deadline, and*
*Notice of Commencement, (V) Conditionally Directing that a Meeting of Creditors Not Be*
*Convened, (VI) Conditionally Extending Deadline to File Schedules and Statements, and (VII)*
*Granting Related Relief* [Docket No. 30] (the "Scheduling Order").

G.      In accordance with the Scheduling Order, the Bankruptcy Court established (i)
March 4, 2019 at 4:00 p.m. (prevailing Eastern Time) as the deadline by which any responses or
objections to the adequacy of the Disclosure Statement or confirmation of the Original Plan were
to be filed (the "Objection Deadline"); (ii) March 12, 2019 as the date by which any replies in
support of the Disclosure Statement or the Plan were to be filed; and (iii) March 18, 2019 at 1:00
p.m. (prevailing Eastern Time) as the date and time of the hearing at which the Bankruptcy Court
would consider, among other things, the adequacy of the Disclosure Statement and confirmation
of the Plan, which hearing was continued to May 14, 2019 at 2:00 p.m. (prevailing Eastern Time)
(collectively, the "Combined Hearing").

H.      Under the Scheduling Order, the Debtors were required, on or before January 25,
2019, to serve notice of, among other things, the commencement of the Chapter 11 Cases, the
Combined Hearing, the Objection Deadline, and the procedures for objecting to the adequacy of

4

the Disclosure Statement and confirmation of the Plan [Docket No. 33] (the "Combined Notice").

As evidenced by the *Affidavit of Service of Winnie Yeung*, dated January 28, 2019 [Docket No. 35]

(the "Combined Notice Affidavit"), the Debtors served the Combined Notice on January 25, 2019

upon all Holders of Claims or Interests, the United States Trustee for the District of Delaware

("U.S. Trustee"), all parties requesting notice under rule 2002 (the "Rule 2002 Service List") of

the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and other parties in interest

and potential parties in interest.

I.      On several dates between January 25 and January 30, 2019, the Debtors published

a supplemental notice of the commencement of the Chapter 11 Cases and the Combined Hearing

and related procedures (the "Publication Notice"), once in each of *The New York Times*, *USA*

*Today*, the *Wall Street Journal*, *Mealey's Litigation Report: Asbestos*, and *Mealey's Asbestos*

*Bankruptcy Report*.  See Docket Nos. 39, 40, 41, 42 and 43 (the "Certifications of Publication").

J.      On February 4, 2019, the U.S. Trustee appointed an official committee of asbestos

personal injury claimants (the "Asbestos Claimants Committee").   On March 13, 2019, the

Bankruptcy Court entered the *Order Appointing James L. Patton, Jr., as Legal Representative for*

*Future Asbestos Claimants,* Nunc Pro Tunc *to the Petition Date* [Docket No. 146] (the "Future

Claimants' Representative").

K.      On February 15, 2019, the Debtors filed the Plan Supplement containing the

following documents: (i) the Asbestos Records Cooperation Agreement; (ii) the Assumed

Executory Contract and Unexpired Lease List; (iii) Reorganized Maremont's Bylaws;

(iv) Reorganized Maremont's Certificate of Incorporation; (v) the List of Members of Reorganized

Maremont Board and Reorganized Subsidiary Board, and List of Officers of Reorganized

Maremont Reorganized Subsidiaries; and (vi) an amended Exhibit I to the Original Plan, listing

the names and affiliations of Future Claimants' Representative, Asbestos Personal Injury Trustee, and members of the Asbestos Personal Injury Trust Advisory Committee.  See Docket Nos. 65, 66.

L.    In the Voting Declaration, the Solicitation Agent certified the results of the Solicitation and confirmed that the Solicitation was carried out in accordance with the Solicitation Procedures.  As further described below, the Voting Declaration certified that, among other things, Holders of Claims in the Voting Class that voted on the Plan voted unanimously to accept the Plan.

M.    On March 12, 2019, the Debtors filed the following documents concurrently herewith: (i) the Plan; (ii) a proposed form of this order (as may be modified, amended or supplemented from time to time, this "Order"); (iii) the *Memorandum of Law in Support of Entry of an Order Approving the Adequacy of the Disclosure Statement and Confirming the Modified Joint Prepackaged Plan of Reorganization of Maremont Corporation and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* (the "Confirmation Memorandum"); (iii) the *Declaration of Carl D. Anderson, II in Support of the Adequacy of the Disclosure Statement and Confirmation of the Modified Joint Prepackaged Plan of Reorganization of Maremont Corporation and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 139] (the "Anderson Declaration"); and (iv) the *Declaration of James L. Patton, Jr. in Support of the Memorandum of Law in Support of Entry of an Order Approving the Adequacy of the Disclosure Statement and Confirming the Modified Joint Prepackaged Plan of Reorganization of Maremont Corporation and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 140] (the "Patton Declaration" and, together with the proposed form of this Order, the Confirmation Memorandum, and the Anderson Declaration, the "Confirmation Submissions").

6

N.     On March 17, 2019, the Debtors filed a blackline of changed pages to the *Modified Joint Prepackaged Plan of Reorganization of Maremont Corporation and Its Debtor Affiliates* and Exhibit N to the Plan [Docket No. 155].  On May 14, 2019, the Debtors filed (i) a blackline of changed pages to the *Modified Joint Prepackaged Plan of Reorganization of Maremont Corporation and Its Debtor Affiliates*, (ii) a blackline of revised Exhibit D – Asbestos Personal Injury Trust Distribution Procedures [Docket No. 222], and (iii) a revised proposed form of this Order [Docket No. 223].  On May 17, 2019, the Debtors filed a certificate of counsel with (i) a blackline of revised Exhibit D – Asbestos Personal Injury Trust Distribution Procedures and (ii) a revised proposed form of this Order [Docket No. ___].

O.     One objection to the Plan and Disclosure Statement was filed by the U.S. Trustee [Docket No. 112] (the "UST Objection").  The Debtors also received informal comments and/or requests that clarifying language be included in the Plan or this Order from (i) the United States Department of Justice, (ii) the United States Environmental Protection Agency, (iii) the Ohio Attorney General's Office and the Ohio Environmental Protection Agency, (d) Zurich, and (e) FFIC.

P.     The Bankruptcy Court held the Combined Hearing to consider the adequacy of the Disclosure Statement and confirmation of the Plan.  At the initial portion of the Combined Hearing on March 18, 2019, the Bankruptcy Court overruled certain of the U.S. Trustee's objections to provisions in the TDP, including the objections to: (i) the confidentiality of claim submissions set forth in Section 6.5 of the TDP and the related discovery procedures; (ii) Sections 5.7(b)(3) and 5.7(a)(2) of the TDP; (iii) the claim withdrawal and deferral provisions in Section 6.3 of the TDP; (iv) the audit provisions in Section 5.8 of the TDP; and (v) the lack of a provision in the TDP limiting the amount of attorneys' fees that a claimant may pay to his or her attorney upon receiving

payment from the Asbestos Personal Injury Trust.  The Bankruptcy Court also directed that the TDP be revised to require claimants to provide certain additional information to the Asbestos Personal Injury Trust and to permit the Asbestos Personal Injury Trust to obtain certain additional information from the claimants in its discretion.

Q.    The Debtors filed modifications to the TDP on May 14, 2019 to address the remaining objection of the U.S. Trustee and the statements of the Bankruptcy Court at the March 18, 2019 portion of the Combined Hearing.  On May 14, 2019, the Bankruptcy Court confirmed that the TDP, as modified, satisfied the Bankruptcy Court's concerns as stated at the March 18, 2019 portion of the Combined Hearing and as identified in paragraph P above, and that the TDP would be approved in connection with confirmation of the Plan.  On May 17, 2019, the Debtors filed final revisions to the TDP with a certificate of counsel confirming that the TDP, as further modified, satisfies the remaining objection of the U.S. Trustee.

WHEREFORE, the Bankruptcy Court having: (a) reviewed the Plan, the Combined Notice, the Affidavit of Service, the Combined Notice Affidavit, the Confirmation Submissions, and all filed pleadings, exhibits, statements and comments regarding the approval of the Disclosure Statement and confirmation of the Plan, including all objections, statements, and reservations of rights; (b) held the Combined Hearing on March 18, 2019 and May 14, 2019; (c) heard the statements and arguments made by counsel in respect of the approval of the Disclosure Statement and confirmation of the Plan; (d) considered all oral representations, affidavits, testimony, documents, filings and other evidence regarding approval of the Disclosure Statement and confirmation of the Plan, including, without limitation, evidence submitted or presented at the Combined Hearing; (e) overruled any and all objections to approval of the Disclosure Statement and to confirmation of the Plan and all statements and reservations of rights not consensually

resolved or withdrawn unless otherwise indicated herein; and (f) taken judicial notice of all pleadings and other documents filed, all orders entered, and all evidence proffered or adduced and arguments presented in the Chapter 11 Cases;

NOW, THEREFORE, the Bankruptcy Court having found that notice of the Combined Hearing and the opportunity for any party in interest to object to approval of the Disclosure Statement and confirmation of the Plan has been adequate and appropriate as to all parties affected or to be affected by the Plan and the transactions contemplated thereby, and that the legal and factual bases set forth in the Confirmation Submissions and all evidence presented at the Combined Hearing establish just cause for the relief granted herein; and after due deliberation thereon and good cause appearing therefor, the Bankruptcy Court hereby makes and issues the following findings of fact and conclusions of law and orders:

### Findings of Fact and Conclusions of Law

IT IS HEREBY FOUND AND DETERMINED THAT:

**A.    Findings of Fact and Conclusions of Law.**

1.    The findings and conclusions set forth herein, in the recitals, and in the record of the Combined Hearing constitute the Bankruptcy Court's findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure, made applicable herein by Bankruptcy Rules 7052 and 9014. To the extent any findings of fact constitute conclusions of law, or any conclusions of law constitute findings of fact, they are adopted as such.

**B.    Corporate Structure.**

2.    Maremont is a Delaware corporation and a wholly-owned subsidiary of Meritor, Inc. ("Meritor"), a public company organized under the laws of the State of Indiana. Maremont is headquartered in Troy, Michigan. Maremont's Debtor affiliates Maremont Exhaust Products, Inc. ("MEP"), AVM, Inc. ("AVM"), and Former Ride Control Operating Company, Inc. ("FRCOC")

are wholly-owned by Maremont.  AVM is a South Carolina corporation and FRCOC and MEP are incorporated in Delaware.  See *Declaration of Carl D. Anderson, II in Support of First Day Pleadings* ¶ 3 [Docket No. 3] (the "Anderson First Day Declaration").

**C.      History of the Debtors' Asbestos Personal Injury Liabilities.**

      **1.      Corporate History.**

      3.      Historically, Maremont and its subsidiaries manufactured, distributed, and sold aftermarket friction products, including aftermarket brake linings, disc pads, and clutch facings (the "Friction Products Business"), aftermarket mufflers (the "Exhaust Products Business"), aftermarket shock absorbers and strut assemblies, and original equipment vacuum actuators for automotive climate controls systems, superchargers and turbochargers, and gas springs.  Anderson First Day Decl. ¶ 4.  Certain of the products manufactured and sold as part of the Friction Products Business and the Exhaust Products Business contained asbestos.  However, Maremont and its subsidiaries have not manufactured or sold any asbestos-containing products since 1978.  Id.

      4.      Maremont divested its business lines over time pursuant to multiple sale transactions, beginning with the sale of the Friction Products Business in June 1977.  Anderson First Day Decl. ¶ 5.  This was followed by the sale of the Exhaust Products Business and the Motion Control Business in 2006 and the sale of the Ride Control Business in 2009.  By 2013, the Debtors had ceased all operations and divested all remaining operating assets.  Id.  The Debtors' ongoing operations as of the Petition Date relate to (a) managing their legacy environmental and asbestos liabilities and (b) owning the Commercial Property and collecting rents on a lease of that property pursuant to the Commercial Property Lease (each as defined below).  Id.

**D.      Maremont's Business and Property.**

      5.      Maremont owns an income-producing commercial property in Grand Blanc, Michigan, which was valued at approximately $1.4 million as of October 2018 (the "Commercial

Property"). Anderson Decl. ¶ 7. The Commercial Property is a *Dollar General* store leased under a 15-year triple-net lease (the "Commercial Property Lease") that generates approximately $91,000 in annual revenue. Id. The Debtors will assume the Commercial Property Lease pursuant to the Plan. See id.; Plan, Ex. J. Reorganized Maremont intends to continue to own the Commercial Property business after the Effective Date, which will continue to generate rental income pursuant to the Commercial Property Lease. See id.

### 1.    Asbestos Personal Injury Claims Against Maremont and Its Debtor Affiliates.

6.    Debtors Maremont and MEP have collectively been subject to thousands of personal injury and wrongful death claims asserting that they are liable for damages caused by exposure to asbestos-containing products that they or their predecessor(s)-in-interest allegedly used, sold, manufactured, marketed, produced or distributed or that were allegedly present in their manufacturing facilities. Anderson First Day Decl. ¶ 13. These suits commenced in 1977 and have continued to the present. As of December 31, 2018, there were approximately 13,000 pending asbestos-related lawsuits against Maremont and MEP, of which approximately 1,900 were considered by the Debtors to be active. Id. During the five-year period ending December 31, 2018, approximately 2,600 asbestos-related lawsuits were asserted against Maremont and MEP. During this same period, Maremont has incurred and paid approximately $43.8 million in defense and settlement costs on account of the Asbestos Personal Injury Claims, including over $6.2 million in the calendar year ended December 31, 2018. Id. Maremont recently reported its contingent asbestos liabilities as of the end of fiscal year 2018 for the next 41 years at approximately $107 million (including future defense costs of approximately $79.6 million, of which $27.4 million was estimated to be incurred over the next five years). Id.

2.    **Asbestos Personal Injury Claims Against Non-Debtor Affiliates of Maremont.**

7.    In addition to the claims asserted against Maremont and its subsidiaries, certain plaintiffs also have alleged asbestos-related personal injury or wrongful death claims against one or more Non-Debtor Affiliates of Maremont, including Meritor, based upon or arising from alleged exposure to the Debtor Product Lines.  Anderson First Day Decl. ¶ 14.  These claims appear to name Non-Debtor Affiliates solely on account of the plaintiffs' purported exposure to the Debtor Product Lines.  None of the Non-Debtor Affiliates has ever engaged in or been involved in the manufacture, distribution or sale of any of the Debtor Product Lines, and, to date, no court has issued a ruling or made a finding that any Non-Debtor Affiliate is liable for any claims based upon or arising from any of the Debtor Product Lines or that any such Non-Debtor Affiliate should be treated as a successor in interest or alter ego of the Debtors, or that Maremont's corporate veil should be pierced.  Id.

8.    In addition, Meritor and certain of its predecessors and affiliates other than the Debtors have been named as defendants in asbestos lawsuits alleging personal injury or wrongful death as a result of exposure to asbestos used in the Rockwell Product Lines of Rockwell International Corporation, i.e., the Rockwell Claims.  Anderson First Day Decl. ¶ 15.  Liability for certain Rockwell Claims was transferred to a predecessor of Meritor at the time of the spin-off of Rockwell International's automotive business to that predecessor in 1997.  The Rockwell Product Lines are independent of the Debtor Product Lines, and while claims relating to the Debtor Product Lines will be channeled to the Asbestos Personal Injury Trust under the terms of the Plan, the Rockwell Claims will not.  Id.; see Plan § I.A.43, I.A.76,  I.A.82, I.A.144, I.A.145.

3.    **Remaining Maremont Insurance.**

9.    Historically, Maremont maintained insurance coverage for asbestos liabilities under a number of primary and excess insurance policies issued by various insurers.  The majority

of Maremont's insurance coverage has been exhausted and released through insurance coverage settlements and is no longer available to provide coverage for asbestos-related personal injury or other claims. Anderson First Day Decl. ¶ 10.

10.    The only remaining coverage currently held by Maremont is with FFIC pursuant to the FFIC Agreement, which is a coverage-in-place settlement agreement entered into with FFIC in 2010. Anderson First Day Decl. ¶ 10. As of the Petition Date, the remaining indemnity limits under the FFIC Agreement were approximately $7 million. Anderson Decl. ¶ 12.

11.    FFIC, Zurich, Everest, and Mt. McKinley were each providers of insurance to the Debtors. As a good faith compromise and settlement, pursuant to Section IV.D of the Plan, FFIC and Zurich have agreed to be Settling Insurers as defined in the Plan. Anderson Decl. ¶ 13. Everest and Mt. McKinley have not objected to the treatment of the Everest Agreement as set forth in Section IV.D of the Plan, and are therefore being treated as Settling Insurers in accordance with Section IV.D of the Plan. Id. On the Effective Date, the FFIC Agreement, the Everest Agreement, and the Zurich Agreement will be rejected by the Debtors. FFIC, Zurich, Everest, and Mt. McKinley will each be Non-Estate Representative Released Parties and Protected Parties under the Plan. Id.

**4.    Trust-Related Settlement Negotiations.**

12.    As described in detail in the First Day Declaration, in the face of mounting costs to defend and resolve Asbestos Personal Injury Claims and dwindling insurance and other assets, Maremont decided to investigate a potential restructuring to be implemented through a chapter 11 proceeding, utilizing section 524(g) of the Bankruptcy Code to establish and fund a trust that would provide for the fair and equitable treatment of all Holders of Asbestos Personal Injury Claims. The parties' negotiation of the terms of the Plan and Asbestos Personal Injury Trust ultimately centered around fixing the amount of the Meritor Contribution for its and its affiliates' protections under

the Asbestos Personal Injury Channeling Injunction and related provisions of the Plan.  Following several months of good faith, arm's length negotiations, the parties agreed to the terms of a settlement now embodied in the Plan.  <u>See</u> Anderson Decl. ¶ 14.

13.     In addition to the parties spending considerable time negotiating a settlement, including the principal terms of significant contributions by Meritor and Maremont to help fund the Asbestos Personal Injury Trust, the advisors to the ad hoc committee of firms representing personal injury claimants (the "<u>Ad Hoc Committee</u>") and the prepetition Future Claimants' Representative, personally and/or through their advisors, engaged in numerous discussions regarding the terms of potential settlements with Maremont and Meritor and conducted their own negotiations regarding the terms of the Asbestos Personal Injury Trust.  Anderson Decl. ¶ 15.  This included extensive negotiations regarding initial payment percentages and claim and distribution procedures for Holders of current Claims and future Demands.  Following the initial negotiations between the Ad Hoc Committee and the prepetition Future Claimants' Representative regarding the terms of the Asbestos Personal Injury Trust Agreement and the TDP, counsel to the Debtors reviewed the proposed documents and further engaged in negotiations with the Ad Hoc Committee and the prepetition Future Claimants' Representative regarding the specific terms of the Asbestos Personal Injury Trust Agreement and the TDP.  <u>Id.</u>  During these negotiations, counsel to the Debtors sought to understand the rationale and basis for including certain provisions in the TDP. <u>Id.</u>  Various revisions were made to the TDP as a result of negotiations among the Debtors, the Ad Hoc Committee and the prepetition Future Claimants' Representative.  The Debtors' overall focus was to propose a Plan and Asbestos Personal Injury Trust in good faith that (i) would satisfy the requirements of the Bankruptcy Code, including sections 1129 and 524(g), (ii) included provisions intended to treat current and future claimants in substantially the same manner, and (iii) would be

supported by the Ad Hoc Committee and prepetition Future Claimants' Representative, and accepted by Holders of Asbestos Personal Injury Claims. Id.

**E.    Key Provisions of the Plan.**

**1.    The Asbestos Personal Injury Trust.**

14.    The Plan establishes the Asbestos Personal Injury Trust under section 524(g) of the Bankruptcy Code.  On the Effective Date, the Asbestos Personal Injury Trust will assume all liabilities and responsibility for all Asbestos Personal Injury Claims.  Plan §§ VIII.E.2, VIII.E.8. The Asbestos Personal Injury Trust shall constitute a "qualified settlement fund" under section 468 of the Internal Revenue Code.  Plan §§ I.A.11, VIII.E.2.  The Asbestos Personal Injury Trust will be funded by the contribution of the Asbestos Personal Injury Trust Assets, which include: (a) the Maremont Contribution, which includes (i) all insurance proceeds and obligations owed to the Debtors, (ii) all Cash and cash equivalents held by the Debtors as of the Effective Date after giving effect to the Intercompany Loan Payment and the Settlement Payment, *less* the Effective Date Payment, the Reserve Funds, and the Effective Date Working Capital, and (iii) the Meritor Contribution (to the extent included in the Maremont Contributed Cash and described in (b) herein); (b) the cash portions of the Meritor Contribution, which includes (i) the Intercompany Loan Payment—pursuant to which Meritor owed Maremont approximately $20 million as of the Petition Date, and (ii) the Settlement Payment in Cash by Meritor to Maremont in the amount of $28 million; (c) all other assets, rights, and benefits assigned, transferred, or conveyed to the Asbestos Personal Injury Trust in connection with the Plan or any Plan Documents, including, without limitation, the Reorganized Maremont Stock; and (d) all proceeds of the foregoing.  See Plan §§ IV.B.1, IV.B.2, IV.C, IV.E, IV.I.

15.    The Plan also contains an injunction that will channel all Asbestos Personal Injury Claims to the Asbestos Personal Injury Trust (as referenced and more fully defined in the Plan, the

"Asbestos Personal Injury Channeling Injunction"). Plan § VIII.C. The injunction bars Holders of such Claims, Demands, and Causes of Action from taking any actions against the Protected Parties, which include the Debtors, the Reorganized Debtors, Meritor Related Parties, the Non-Debtor Affiliates, the Settling Insurers, which include Zurich, FFIC, Mt. McKinley, and Everest, and any Representative of the Debtors, the Reorganized Debtors, or any Representative of the foregoing parties, in each case that is not a Non-Indemnified Party. See Plan §§ I.A.126, IV.E.11, VIII.C.

16.    The Asbestos Personal Injury Trust will use its assets and income to resolve Asbestos Personal Injury Claims in accordance with the Asbestos Personal Injury Trust Agreement (Plan, Ex. C) and the TDP (Plan, Ex. D) so that Holders of such Claims are treated fairly, equitably, and reasonably in light of the finite assets available to satisfy such Claims. Plan § IV.E.2.

### 2.    Releases by the Debtors.

17.    The Plan provides that the Debtors will release the Non-Estate Representative Released Parties from any all claims of, or on behalf of, the Debtors, whether direct, indirect, or derivative. See Plan §§ I.A.105, VIII.E. Specifically, on the Effective Date, the Debtors, the Reorganized Debtors, any entity seeking to exercise the rights of the Estates, and any successor to any Debtor or any Estate representative will release Meritor and the other Non-Debtor Affiliates, the Settling Insurers, solely in their capacity as such, any Representative of the foregoing entities, and any Meritor-Indemnified Representative. See Plan §§ I.A.105, VIII.E.

### 3.    Treatment of Claims Other than Asbestos Personal Injury Claims.

18.    Under the Plan, Holders of Allowed Priority Non-Tax Claims, Secured Claims, General Unsecured Claims, Environmental Claims, and Subsidiary Equity Interests will be paid in full. Plan § III.C. The Maremont Equity Interests will be cancelled, annulled, and extinguished. Plan § III.C.7. The Intercompany Claims shall be paid, adjusted, continued, settled, reinstated,

16

canceled, discharged, or eliminated, in each case to the extent determined to be appropriate by the

Debtors or the Reorganized Debtors, as applicable, or as otherwise provided in Section IV.B of

the Plan.  Plan § III.C.6.

**F.      Jurisdiction; Venue; Core Proceeding (28 U.S.C. §§ 157, 1334(a), 1408 and 1409).**

19.     The Bankruptcy Court and the United States District Court for the District of

Delaware (the "District Court") have jurisdiction over this proceeding and the parties and property

affected hereby pursuant to 28 U.S.C. § 1334 and the *Amended Standing Order of Reference* from

the United States District Court for the District of Delaware dated February 29, 2012.  Approval

of the Disclosure Statement and confirmation of the Plan are core proceedings under 28 U.S.C.

§ 157(b)(2), and the Bankruptcy Court has jurisdiction (a) to approve the adequacy of information

contained in the Disclosure Statement and to determine whether the Plan complies with the

applicable provisions of the Bankruptcy Code and should be confirmed, and (b) to enter an order,

consistent with Article III of the United States Constitution, with respect thereto, except to the

extent section 524(g) of the Bankruptcy Code requires issuance or affirmance of the Confirmation

Order by the District Court.  Venue in this District was proper as of the Petition Date and remains

proper pursuant to 28 U.S.C. §§ 1408 and 1409.

**G.      Commencement and Joint Administration of the Chapter 11 Cases.**

20.     On the Petition Date, the Debtors commenced the Chapter 11 Cases by filing

voluntary petitions for relief under chapter 11 of the Bankruptcy Code.  On January 23, 2019, the

Bankruptcy Court entered an order authorizing the joint administration and procedural

consolidation of the Chapter 11 Cases in accordance with Bankruptcy Rule 1015(b)

[Docket No. 26].  No request for the appointment of a trustee or examiner has been made in the

Chapter 11 Cases.  On February 4, 2019, the U.S. Trustee appointed the Asbestos Claimants

Committee.

**H.      Judicial Notice.**

21.      The Bankruptcy Court takes judicial notice of the docket of the Chapter 11 Cases maintained by the Clerk of the Bankruptcy Court, including, without limitation, all pleadings and other documents filed and orders entered thereon.  The Bankruptcy Court also takes judicial notice of all evidence proffered or adduced and all arguments made at the hearings held before the Bankruptcy Court during the pendency of the Chapter 11 Cases.

**I.      Burden of Proof.**

22.      The Debtors, as proponents of the Plan, have met their burden of proving the applicable elements of sections 1129 and 524(g) of the Bankruptcy Code by a preponderance of the evidence, which is the applicable evidentiary standard for Confirmation.

**J.      Objections Overruled.**

23.      All parties have had a full and fair opportunity to be heard on all issues raised by objections to confirmation of the Plan.  All unresolved objections, statements, informal objections, and reservations of rights, if any, related to the Solicitation, the Disclosure Statement, or the confirmation of the Plan, including any unresolved objection of the U.S. Trustee to the Plan, are OVERRULED on the merits.

**K.      Adequacy of the Solicitation Procedures and Adequacy of the Information Contained in the Disclosure Statement (11 U.S.C. §§ 1125, 1126(b)).**

24.      Sections 1125(g) and 1126(b) of the Bankruptcy Code apply to the solicitation of acceptances and rejections of the Plan prior to the commencement of a chapter 11 case.  The Disclosure Statement contains "adequate information" as such term is defined in section 1125 of the Bankruptcy Code, thereby satisfying sections 1125 and 1126(b) of the Bankruptcy Code.  Based upon the applicable Affidavits of Service and the Voting Declaration, votes for acceptance or rejection of the Original Plan were solicited and tabulated in good faith and the Solicitation was

fair and complied with sections 1125 and 1126 of the Bankruptcy Code, Bankruptcy Rules 3017 and 3018, the Disclosure Statement, all other applicable provisions of the Bankruptcy Code and all other applicable rules, laws and regulations, including any applicable non-bankruptcy law.

**L.    Transmittal and Mailing of Materials; Notice.**

25.    As evidenced by the Affidavit of Service, the Combined Notice Affidavit, the Voting Declaration, and the other affidavits of service and mailing filed with the Bankruptcy Court prior to the Combined Hearing, the transmittal and service of the Plan, the Disclosure Statement, the Ballots, and the Combined Notice were adequate and sufficient under the circumstances, and all parties have been given due, proper, timely, and adequate notice, and an opportunity to appear and be heard with respect thereto.  The Combined Notice informed Holders of Claims, Holders of Interests and other parties in interest that the Combined Hearing could be adjourned and informed them of how to access the electronic website maintained by the Solicitation Agent to obtain up-to-date information regarding the scheduling of the Combined Hearing and other relevant dates in the Chapter 11 Cases.  Holders of Claims and Holders of Interests also had the ability to request that they be placed on the Debtors' Rule 2002 Service List.  Accordingly, due and proper notice has been given with respect to the Combined Hearing and the deadlines and procedures for filing objections to the Disclosure Statement and confirmation of the Plan in accordance with the Scheduling Order, the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules of Bankruptcy Practice and Procedures of the United States Bankruptcy Court for the District of Delaware (the "Local Rules").

**M.    Plan Modifications.**

26.    On March 12, 2019, the Debtors filed the Plan [Docket No. 136], containing certain non-material technical modifications as well as certain other modifications that are responsive to the UST Objection and informal comments from other parties (the "March 12 Plan

Modifications"). The Debtors served notice of the filing of the Plan and the March 12 Plan Modifications with (a) a blackline comparison showing the non-material and technical changes made to the Original Plan mailed as part of the Solicitation Package and filed on the Petition Date on the Rule 2002 Service List, and (b) a fully-conformed clean version of the Plan reflecting the Plan Supplement and the Plan Modifications. The Debtors filed further modifications to the Plan on March 17, 2019 [Docket No. 155], May 14, 2019 [Docket No. 222], and May 17, 2019 [Docket No. ___] (together with the March 12 Plan Modifications, the "Plan Modifications"), and served notice of the filing of these modifications on the Rule 2002 Service List. A fully-conformed version of the Plan is attached hereto as **Exhibit A**. Adequate and sufficient notice of the Plan Modifications has been given, and, pursuant to section 1127 of the Bankruptcy Code and in accordance with Bankruptcy Rule 3019, no other further notice, disclosure under section 1125 of the Bankruptcy Code, or re-solicitation of votes on the Plan is required, as the Plan Modifications do not materially adversely affect the treatment of any Claims against or Interests in the Debtors under the Plan.

**N.     The Plan's and the Debtors' Compliance with the Bankruptcy Code.**

**1.     Plan Compliance with the Applicable Provisions of the Bankruptcy Code (11 U.S.C. § 1129(a)(1)).**

27.     The Plan has complied, and the Debtors have complied, with all applicable provisions of section 1129 of the Bankruptcy Code.

**(a)     Proper Classification of Claims and Equity Interests (11 U.S.C. §§ 1122 and 1123(a)(1)).**

28.     The classification of Claims and Interests under the Plan is proper under the Bankruptcy Code. Article III of the Plan designates Classes of Claims and Interests, other than Administrative Expense Claims (see Plan § II.A), including Professional Fee Claims (see Plan § II.B), and Priority Tax Claims (see Plan § II.C), which, pursuant to section 1123(a)(1) of the

Bankruptcy Code, need not be classified. The Plan designates six Classes of Claims against the Debtors and two Classes of Interests in the Debtors. See Plan § III.B. As required by section 1122(a) of the Bankruptcy Code, each Class of Claims and Interests contains only Claims or Interests that are substantially similar to the other Claims or Interests within such Class. Valid business, factual and legal reasons exist for separately classifying the various Classes of Claims and Interests created under the Plan, the classifications were not promulgated for any improper purpose and such Classes do not unfairly discriminate between or among Holders of Claims or Interests. The Plan therefore satisfies sections 1122 and 1123(a)(1) of the Bankruptcy Code.

**(b)      Specification of Unimpaired Classes (11 U.S.C. § 1123(a)(2)).**

29.      The Plan specifies that Classes 1, 2, 3, 5 and 8 are Unimpaired within the meaning of section 1124 of the Bankruptcy Code, thereby satisfying section 1123(a)(2) of the Bankruptcy Code. Plan § III.C. Holders of Claims in Class 6 are either conclusively deemed to have accepted or rejected the Plan as to be determined by the Debtors or the Reorganized Debtors, as applicable, and as a result are either Unimpaired or Impaired. See Plan § III.C.6.

**(c)      Specification of Treatment of Impaired Classes (11 U.S.C. § 1123(a)(3)).**

30.      The Plan designates each of Classes 4, 6 (to the extent Impaired), and 7 as Impaired within the meaning of section 1124 of the Bankruptcy Code and specifies the treatment of Claims and Interests in those Classes, thereby satisfying section 1123(a)(3) of the Bankruptcy Code. See Plan § III.C.

**(d)      No Discrimination (11 U.S.C. § 1123(a)(4)).**

31.      The Plan provides for the equivalent treatment by the Debtors for each Claim or Interest in a particular Class, unless a Holder of a particular Claim or Interest has agreed to less favorable treatment, which satisfies section 1123(a)(4) of the Bankruptcy Code. See Plan § III.C.

(e)      **Implementation of Plan (11 U.S.C. § 1123(a)(5)).**

32.      The Plan and the Plan Supplement provide adequate and proper means for implementation of the Plan, thereby satisfying section 1123(a)(5) of the Bankruptcy Code, including without limitation, (i) the good-faith compromise and settlement of all Claims, Interests, and controversies resolved pursuant to the Plan (Plan § IV.A); (ii) the continued corporate existence of the Debtors on and after the Effective Date (the "Reorganized Debtors") and the vesting of the property of the Debtors' Estates in the Reorganized Debtors (Plan § IV.I); (iii) all actions set forth in Article IV of the Plan; (iv) the adoption of the corporate documents that will govern the Reorganized Debtors (Plan §§ IV.K–L); (v) the sole director and officer of Reorganized Maremont and the Reorganized Subsidiaries (Plan § IV.M); (vi) the vesting of authority in the Reorganized Debtors and their officers and directors to issue, execute, deliver, file, or records such agreements, instruments, releases, and other documents, and to take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of the Plan and the Restructuring Transactions (Plan § IV.K); (vii) the various discharges, releases, injunctions, indemnifications, and exculpation provided under the Plan, including those set forth in Section IV.B and Article VIII of the Plan; (viii) the assumption, assumption and assignment, or rejection of Executory Contracts, including the assumption of Environmental Claims by Arvin Environmental Management, LLC ("Arvin Environmental") pursuant to the Environmental Assumption and Indemnification Agreement (Plan §§ IV.F, V); (ix) the cancellation of the outstanding shares of Maremont common stock and the issuance of the Reorganized Maremont Stock (Plan §§ IV.C, IV.I); (x) the making of the Meritor Contribution and the Maremont Contribution (Plan § IV.B); (xi) the contribution of the Intercompany Receivables to Maremont and then from Maremont to each of AVM, FRCOC, and MEP (Plan § IV.G); (xii) the compromise and settlement of each of the FFIC Agreement, the Zurich Agreement, and the Everest Agreement

(Plan § IV.D); (xiii) the funding of the Reserve Funds for the Effective Date Payments and the payment of other legal fees and expenses (Plan § IV.G); and (xiv) the creation of the Asbestos Personal Injury Trust, the transfer of the Asbestos Personal Injury Trust Assets to the Asbestos Personal Injury Trust, the assumption of liabilities and responsibility for Asbestos Personal Injury Claims by the Asbestos Personal Injury Trust, the appointment of the Asbestos Personal Injury Trustee, the members of the Asbestos Personal Injury Trust Advisory Committee and the Post-Effective Date Future Claimants' Representative, and the resolution of Asbestos Personal Injury Claims in accordance with the Asbestos Personal Injury Trust Agreement and the TDP.  Plan § IV.E.  The Plan therefore satisfies the requirements of section 1123(a)(5) of the Bankruptcy Code.

### (f)    Non-Voting Equity Securities (11 U.S.C. § 1123(a)(6)).

33.    In accordance with section 1123(a)(6) of the Bankruptcy Code, Reorganized Maremont's Certificate of Incorporation prohibits the issuance of non-voting equity securities. See Plan Ex. L.  After the Effective Date, the Reorganized Debtors may amend and restate Reorganized Maremont's Bylaws, Certificate of Incorporation, or similar governing documents, as applicable, as permitted by applicable non-bankruptcy law.  See Plan Ex. K.

### (g)    Selection of Officers and Directors (11 U.S.C. § 1123(a)(7)).

34.    On the Effective Date, the Debtors' officers and directors will be removed except for Sherman K. Edmiston III, a current director of Debtor Maremont, who was identified in the Plan Supplement as the proposed sole director and officer of each of the Reorganized Debtors. Plan Supplement Ex. M; Plan Ex. M.  Mr. Edmiston has been selected with the participation of the Asbestos Claimants Committee and the Future Claimants' Representative, given that the Asbestos Personal Injury Trust will own 100% of the equity in Reorganized Maremont (Anderson Decl. ¶ 40; Patton Decl. ¶ 25).

35.    Section 1123(a)(7) of the Bankruptcy Code does not apply to the selection of the Asbestos Personal Injury Trust Advisory Committee and the Asbestos Personal Injury Trustee. Mr. Alan Rich will serve as the initial Asbestos Personal Injury Trustee.    Plan Ex. I. Notwithstanding the foregoing, the Plan also provides for the nomination of five individuals to serve as the initial members of the Asbestos Personal Injury Trust Advisory Committee, with their appointment effective pursuant to this Order.  Plan § IV.E.6, Ex. I.  The initial members will be Beth Gori, Perry Browder, Armand J. Volta, Jr., John D. Cooney, and Marcus E. Raichle, Jr. Successor members will be appointed as provided in the Asbestos Personal Injury Trust Agreement.  Plan § IV.E.6, Ex. C.  In addition, Section IV.E.4 of the Plan provides for the nomination and appointment of the initial Asbestos Personal Injury Trustee, who will be Alan B. Rich, Esq.  Plan § IV.E.4, Ex. I.  Any subsequent trustees will also be appointed in accordance with the terms of the Asbestos Personal Injury Trust Agreement.  Plan § IV.E.4, Ex. C.  Mr. Patton, who has served as the Future Claimants' Representative prior to, and in these Chapter 11 Cases, will continue to serve as the Post-Effective Date Future Claimants' Representative post-Confirmation, pursuant to the terms of the Asbestos Personal Injury Trust Agreement.    Plan § IV.E.5, Ex. C.  Such provisions are consistent with the interests of creditors, equity security holders, and public policy.  The Plan therefore satisfies the requirements of section 1123(a)(7) of the Bankruptcy Code.

(h)    **No Debtor Is an Individual (11 U.S.C. §§ 1123(a)(8), 1123(c)).**

36.    None of the Debtors is an individual.  Accordingly, sections 1123(a)(8) and 1123(c) of the Bankruptcy Code are not applicable to the Plan.

#### (i)    Discretionary Contents of the Plan (11 U.S.C. § 1123(b)).

37.    The other provisions of the Plan are appropriate and consistent with the applicable provisions of the Bankruptcy Code.  The Plan therefore satisfies the requirements of section 1123(b) of the Bankruptcy Code.

#### (i)    Impairment or Unimpairment of Classes of Claims and Interests (11 U.S.C. § 1123(b)(1)).

38.    The Plan specifies that (a) Class 1 (Priority Non-Tax Claims), Class 2 (Secured Claims), Class 3 (General Unsecured Claims), Class 5 (Environmental Claims), and Class 8 (Subsidiary Equity Interests) are Unimpaired, (b) Class 4 (Asbestos Personal Injury Claims) and Class 7 (Maremont Equity Interests) are Impaired, and (c) Class 6 (Intercompany Claims) is Impaired or Unimpaired as determined by the Debtors or Reorganized Debtors, as applicable.  Plan §§ III.B–C.  The Plan therefore is consistent with section 1123(b)(1).

#### (ii)    Assumption and Rejection of Executory Contracts and Unexpired Leases (11 U.S.C. § 1123(b)(2)).

39.    Article V of the Plan governs the assumption or rejection of Executory Contracts that were not otherwise rejected, or subject to rejection, pursuant to an order of the Bankruptcy Court.  On the Effective Date, all Executory Contracts shall be rejected by the applicable Debtor in accordance with the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code, unless any such Executory Contract: (a) is listed on the Assumed Executory Contract and Unexpired Lease List (see Plan Ex. J); or (b) has been specifically addressed pursuant to an order of the Bankruptcy Court that becomes a Final Order on or before the Effective Date.  On the Effective Date, except as otherwise provided in the Plan, entry of this Order shall constitute an order of this Court approving the assumption or the assumption and assignment of the Executory Contracts listed on the Assumed Executory Contract and Unexpired Lease List, in accordance with, and subject to, the requirements of sections 365 and 1123 of the Bankruptcy Code.

40.    On or as soon as reasonably practicable after the Effective Date, any monetary amounts by which each Executory Contract on the Assumed Executory Contract and Unexpired Lease List may be in default shall be satisfied in full by the payment of the proposed cure amount, if any, listed on the Assumed Executory Contract and Unexpired Lease List.  There have been no objections to the Debtors' assumption of the Executory Contracts, to the Debtors' representation that no cure amounts are due with respect to any Executory Contract to which the Debtors are a party, or that the Debtors have provided adequate assurance of future performance of the Executory Contracts to be assumed or assumed and assigned.  See Anderson Decl. ¶ 32.

41.    The Debtors have exercised sound business judgment in determining to reject all Executory Contracts, except those listed on Exhibit J to the Plan or otherwise addressed pursuant to an order of this Court, pursuant to sections 365 and 1123(b)(2) of the Bankruptcy Code and Article V of the Plan.  The rejection of these Executory Contracts pursuant to the Plan is beneficial and necessary to the Debtors' and Reorganized Debtors' operations upon and subsequent emergence from chapter 11, and is in the best interests of the Debtors, their Estates, and their creditors.  In addition, the Debtors have exercised sound business judgment in determining to assume or assume and assign the Executory Contracts listed on Exhibit J to the Plan.  The assumption or assumption and assignment of such Executory Contracts pursuant to the Plan is beneficial and necessary to the Debtors' and Reorganized Debtors' operations upon and subsequent emergence from chapter 11, and is in the best interests of the Debtors, their Estates, and their creditors.

42.    In addition, the assumption by the Reorganized Debtors and the Asbestos Personal Injury Trust of indemnification obligations pursuant to the Asbestos Claims Indemnification Agreement (Plan Ex. A) and the survival of the Debtors' indemnification obligations to certain

26

Representatives of the Debtors and the Non-Debtor Affiliates post-emergence is of fundamental importance to the Debtors' reorganization process, is a sound exercise of the Debtors' business judgment, and is in the best interests of the Debtors, their estates, and their creditors.

> **(iii)    Settlement and Preservation of Claims and Causes of Action (11 U.S.C. § 1123(b)(3)).**

43.    In accordance with section 1123(b) of the Bankruptcy Code, and except where such Causes of Action have been expressly released (including, for the avoidance of doubt, pursuant to the Debtor Release), the Reorganized Debtors shall retain and may enforce all rights to commence and pursue, as appropriate, any and all Causes of Action in their favor, whether arising before or after the Petition Date, and the Reorganized Debtors' rights to commence, prosecute or settle such Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date.  Plan § IV.P.    The Reorganized Debtors may pursue such Causes of Action, as appropriate, in accordance with the best interest of the Reorganized Debtors.  No Entity may rely on the absence of a specific reference in the Plan, the Plan Supplement or the Disclosure Statement to any Cause of Action against them as an indication that the Debtors or Reorganized Debtors, as applicable, will not pursue any and all available Causes of Action.  Except with respect to Causes of Action as to which the Debtors or Reorganized Debtors have expressly released any Person or Entity on or prior to the Effective Date (pursuant to the Debtor Release or otherwise), the Debtors or Reorganized Debtors, as applicable, expressly reserve all rights to prosecute any and all Causes of Action against any Entity, except as otherwise expressly provided in the Plan.  Unless any Causes of Action against an Entity are expressly waived, relinquished, exculpated, released, compromised or settled in the Plan, this Order, or a Bankruptcy Court order, the Reorganized Debtors expressly reserve all Causes of Action, for later adjudication, and, therefore, no preclusion doctrine, including the doctrines of *res judicata*, collateral estoppel, issue preclusion, claim preclusion,

estoppel (judicial, equitable or otherwise) or laches, shall apply to such Causes of Action upon, after or as a consequence of the Confirmation or Consummation of the Plan.

44.    With the exception of those claims released by the Debtors pursuant to Section VIII.E of the Plan, on the Effective Date all claims, defenses, rights and Causes of Action of the Debtors and of the Reorganized Debtors relating to Asbestos Personal Injury Claims shall be transferred and assigned to the Asbestos Personal Injury Trust.  Plan § IV.E.8.  In accordance with section 1123(b) of the Bankruptcy Code, the Asbestos Personal Injury Trust shall retain and may enforce such claims, defenses, rights, and Causes of Action and shall retain and may enforce all defenses and counterclaims to all Claims or Demands asserted against the Asbestos Personal Injury Trust, including, but not limited to, setoff, recoupment, and any rights under section 502(d) of the Bankruptcy Code; provided, however, that no such claims, defenses, Causes of Action, or counterclaims may be asserted against any Protected Party.  Id.  The Asbestos Personal Injury Trust shall be deemed to be the appointed representative of the Debtors and the Reorganized Debtors and may pursue, litigate, compromise, and settle any rights, claims, or Causes of Action transferred to it, as appropriate.  Id.

**(iv)    Modification of Rights (11 U.S.C. § 1123(b)(5)).**

45.    In accordance with section 1123(b)(5) of the Bankruptcy Code, Article III of the Plan modifies or leaves unaffected, as the case may be, the rights of Holders of Claims or Interests in each Class.

**(v)    Additional Plan Provisions (11 U.S.C. § 1123(b)(6)).**

46.    In accordance with section 1123(b)(6) of the Bankruptcy Code, the Plan includes additional appropriate provisions, including the retention of jurisdiction of the Bankruptcy Court and District Court and certain release, injunction, exculpation, and discharge provisions, that are not inconsistent with applicable provisions of the Bankruptcy Code.

#### (vi)    Cure of Defaults (11 U.S.C. § 1123(d)).

47.    In accordance with section 1123(d) of the Bankruptcy Code, Section V.B of the Plan provides for the satisfaction of any cure amounts associated with any Executory Contracts to be assumed pursuant to the Plan in accordance with section 365(b)(1) of the Bankruptcy Code. The Debtors are not in default under any Executory Contract assumed pursuant to the Plan and accordingly, no cure amounts are required to be paid to any party to such Executory Contract, unless otherwise determined by this Court or through mutual agreement by the parties to such Executory Contract prior to the Effective Date.  Anderson Decl. ¶ 31.

### 2.    Debtors' Compliance with the Applicable Provisions of the Bankruptcy Code (11 U.S.C. § 1129(a)(2)).

48.    The Debtors have complied in good faith with the applicable provisions of the Bankruptcy Code, thereby satisfying section 1129(a)(2) of the Bankruptcy Code.  Specifically: (a) the Debtors are eligible to be debtors under section 109 of the Bankruptcy Code and are proper proponents of the Plan under section 1121(a) of the Bankruptcy Code; and (b) except as otherwise provided or permitted by orders of this Court, the Debtors have complied with the applicable provisions of the Bankruptcy Code, including sections 1125 and 1126(b), the Bankruptcy Rules, the Local Rules, and applicable non-bankruptcy rules and regulations and the Scheduling Order in transmitting the Solicitation Package and in soliciting and tabulating votes to accept or reject the Plan.  The Debtors complied with applicable provisions of the Bankruptcy Code in transmitting the Combined Notice and otherwise satisfied section 1129(a)(2) of the Bankruptcy Code.

### 3.    Plan Proposed in Good Faith (11 U.S.C. § 1129(a)(3)).

49.    The Debtors filed the Chapter 11 Cases and have proposed the Plan (and all documents necessary to effectuate the Plan) in good faith.  The Chapter 11 Cases were filed and the Plan was proposed with the legitimate purpose of providing a fair and equitable resolution of

the Debtors' Asbestos Personal Injury Claims and maximizing the returns available to creditors and other parties in interest. The Plan allows the Debtors to do this by channeling their Asbestos Personal Injury Claims to the Asbestos Personal Injury Trust and assigning their Environmental Claims to an affiliate of their ultimate parent, Meritor. Anderson Decl. ¶ 33. The Debtors' good faith is evident from the facts and record of the Chapter 11 Cases, the Disclosure Statement, the record of the Combined Hearing, and other proceedings held in the Chapter 11 Cases. The record demonstrates that the Debtors engaged in extensive good-faith, arm's length negotiations with Meritor, the Ad Hoc Committee, and the prepetition Future Claimants' Representative, which led to the Plan's formulation. In the negotiations, the Debtors sought to reach a fair and equitable global resolution of their Asbestos Personal Injury Claims, including future Demands. Id. ¶ 34. Further, the exposure and medical criteria, (TDP § 5.3(a)(3)), confidentiality provision, (TDP § 6.5), and audit provision (TDP § 5.8), set forth in the TDP are fair and equitable to Holders of all Asbestos Personal Injury Claims, including Future Demand Holders. The Plan and the contracts, instruments, agreements, and documents necessary and related to implementing, effectuating, and consummating the Plan, including all exhibits to the Plan – including the Asbestos Personal Injury Trust Documents – along with the Plan's classification, indemnification, release, injunction, and exculpation provisions, were the product of lengthy and hard-fought negotiations among the parties, and reflect the global compromise of numerous complex and interdependent issues. Anderson Decl. ¶ 34; Patton Decl. ¶ 10. Such exhibits and provisions are consistent with sections 105, 524(g), 1122, 1123(b)(3)(A), 1123(b)(6), 1129, and 1142 of the Bankruptcy Code and applicable law in this Circuit and are each necessary for the Debtors' successful reorganization and permanent resolution of their Asbestos Personal Injury Claims, including future Demands. In determining that the Plan satisfies section 1129(a)(3) of the

Bankruptcy Code, the Bankruptcy Court has examined the totality of the circumstances surrounding the filing of the Chapter 11 Cases, the Plan itself, and the process leading to Confirmation. The Plan therefore satisfies the requirements of section 1129(a)(3) of the Bankruptcy Code.

      **4.      Payments for Services or Costs and Expenses (11 U.S.C. § 1129(a)(4)).**

      50.      Except as otherwise provided or permitted by the Plan or other orders of the Bankruptcy Court, the payments for services or costs and expenses in or in connection with the Chapter 11 Cases, or in connection with the Plan and incidental to the Chapter 11 Cases, in each case incurred prior to the Effective Date, including Professional Fee Claims asserted by Retained Professionals that have been or will be paid by the Debtors, have been, hereby are, or will be, authorized by order of the Bankruptcy Court or are otherwise permitted under the Bankruptcy Code. The Plan therefore satisfies the requirements of section 1129(a)(4) of the Bankruptcy Code.

      **5.      Directors, Officers, and Insiders (11 U.S.C. § 1129(a)(5)).**

      51.      In compliance with section 1129(a)(5)(A)(i) of the Bankruptcy Code, the Debtors have disclosed the identity and affiliations of the initial sole director and officer of the Reorganized Debtors, Sherman K. Edmiston III, in Exhibit M to the Plan that was filed with the Plan Supplement. Plan Ex. M. Mr. Edmiston is one of the current directors of Debtor Maremont. Plan Ex. M; Anderson Decl. ¶ 35. Accordingly, the Debtors have satisfied the requirements of section 1129(a)(5)(A)(i) of the Bankruptcy Code. The proposed sole director and officer of Reorganized Maremont and each of the Reorganized Subsidiaries was selected with the approval of the Asbestos Claimants Committee and the Future Claimants' Representative, who have each determined that having Mr. Edmiston continue as the sole director and officer of the Reorganized Debtors will benefit the Holders of Claims and Interests. Patton Decl. ¶ 19. The continuation in office of the proposed sole director and officer of each of the Reorganized Debtors will allow the

Reorganized Debtors to benefit from the director's familiarity with the Debtors' reorganization and business going forward, which is consistent with the interests of Holders of Claims and Interests and with public policy.   The Plan therefore satisfies the requirements of section 1129(a)(5) of the Bankruptcy Code.

      **6.**      **Inapplicability of Section 1129(a)(6).**

      52.      The Plan does not provide for any change in rates subject to the jurisdiction of any governmental regulatory commission and will not require governmental regulatory approval. Accordingly, section 1129(a)(6) of the Bankruptcy Code does not apply to the Plan.

      **7.**      **Best Interests of Creditors Test (11 U.S.C. § 1129(a)(7)).**

      53.      The Plan satisfies section 1129(a)(7) of the Bankruptcy Code.   The liquidation analysis set forth in Section IX.D of the Disclosure Statement and other evidence proffered or adduced in the Anderson Declaration and at the Combined Hearing: (i) are reasonable, persuasive and credible as of the dates such analysis or evidence was prepared, presented, or proffered; (ii) utilize reasonable and appropriate methodologies and assumptions; (iii) have not been controverted by other evidence or challenged; and (iv) establish that each Holder of a Claim or Interest in an Impaired Class either has accepted the Plan or would not receive or retain property of greater value if the Debtors were liquidated under chapter 7 of the Bankruptcy Code.

      54.      Two Classes of Claims or Interests (other than Intercompany Claims) are Impaired under the Plan: Class 4 (the Voting Class) and Class 7 (Maremont Equity Interests).   Holders in the Voting Class who voted on the Plan voted unanimously to accept the Plan, thereby satisfying section 1129(a)(7).   With respect to Class 7, the requirement of section 1129(a)(7) is also satisfied because the Holders of Maremont Equity Interests would receive no distribution if Maremont were liquidated under chapter 7 of the Bankruptcy Code due to the absence of the Meritor Contribution. Disclosure Statement § IX.D.

55.     As described further in the Disclosure Statement, the Debtors expect that there will be substantially more assets available to pay Holders of Claims under the Plan than would be the case if there were no Plan because of, among other reasons, the Meritor Contribution.  Anderson Decl. ¶ 37.  The Meritor Contribution includes, among other things, (i) the Settlement Payment of $28 million in cash, (ii) the Meritor Release, (iii) the contribution and subsequent cancellation of the Intercompany Receivables, which were valued at approximately $165 million as of the Petition Date, and (iv) the Intercompany Loan Payment, the balance of which was approximately $20 million as of the Petition Date, and (v) Arvin Environmental's assumption of Environmental Claims and the agreement of Meritor Heavy Vehicle Systems, LLC and Arvin Environmental to indemnify the Reorganized Debtors and their affiliates from and against Environmental Claims, pursuant to and to the extent set forth in the Environmental Assumption and Indemnification Agreement.  Plan § IV.B.1.  The Plan is the result of an extensively negotiated settlement, which avoids costly and time-consuming litigation that would deplete the funds available for creditors. Id.  All of these factors demonstrate that the Plan provides greater recoveries to creditors and Demand holders than would be realized in a chapter 7 liquidation, the costs of which would deplete much of the recoveries from the liquidation of the Debtors' assets.  Thus, Confirmation of the Plan is in the best interests of all creditors.

**8.     Acceptance by Certain Classes (11 U.S.C. § 1129(a)(8)).**

56.     Holders of Claims in the Voting Class were the only Holders of Claims or Interests entitled to vote to accept or reject the Plan pursuant to the provisions of the Bankruptcy Code. Holders of Claims in the Voting Class (Class 4 – Asbestos Personal Injury Claims) have voted to accept the Plan pursuant to section 1126(c) of the Bankruptcy Code.  Holders of Claims and Interests in Classes 1, 2, 3, 5, and 8 are deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Holders of Claims in Class 6 (Intercompany Claims) are

conclusively deemed to have accepted or rejected the Plan pursuant to section 1126(f) or 1126(g) of the Bankruptcy Code, as determined by the Debtors or Reorganized Debtors, as applicable.  The Holder of Interests in Class 7 (Maremont Equity Interests) is conclusively deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.  Notwithstanding the lack of compliance with section 1129(a)(8) of the Bankruptcy Code with respect to Class 6 (to the extent such Class is deemed to reject) and Class 7, the Plan is confirmable because, as set forth below, it satisfies section 1129(b)(1) and (b)(2)(C)(ii) of the Bankruptcy Code with respect to each such Class.

57.     The only known Intercompany Claims in Class 6 are the Intercompany Receivables held by Meritor, which are being contributed to Maremont as part of the Meritor Contribution, and then are being contributed to MEP, AVM, and FRCOC as part of the Maremont Contribution.  See Anderson Decl. ¶ 38.  The Intercompany Receivables are therefore being consensually resolved and settled pursuant to the Plan, and Meritor, as Plan Proponent, affirmatively consents to the treatment of the Intercompany Receivables notwithstanding any deemed rejection of Class 6 under section 1126(g) of the Bankruptcy Code.  Id.

58.     As set forth in the Voting Declaration, the percentages of Holders of Claims in the Voting Class that voted to accept or reject the Plan are as follows:

| Class | Accepting Plan | | Rejecting Plan | |
|---|---|---|---|---|
| | Amount (% of Amount Voted) | Number (% of Amount Voted) | Amount (% of Number Voted) | Number (% of Number Voted) |
| Class 4 – Asbestos Personal Injury Claims | $322,838,800.00 (100%) | 12,644 (100%) | $0.00 (0%) | 0 (0%) |

9.      **Treatment of Administrative Expense Claims and Priority Tax Claims (11 U.S.C. § 1129(a)(9)).**

59.     The treatment of Administrative Expense Claims, including Professional Fee Claims, under Section II.A of the Plan satisfies the requirements of section 1129(a)(9)(A) of the Bankruptcy Code.  The treatment of Priority Tax Claims under Section II.C of the Plan satisfies the requirements of section 1129(a)(9)(C) of the Bankruptcy Code.  No Holder of an Allowed Administrative Expense Claim other than a Holder of a Professional Fee Claim (which must file an application with the Bankruptcy Court for Allowance of such Professional Fee Claim) is required to file a Proof of Claim.  For the avoidance of doubt, except to the extent that a Holder of an Allowed Priority Tax Claim agrees with the applicable Debtor(s) to less favorable treatment, Allowed Priority Tax Claims shall receive (a) Cash in an amount equal to the Allowed amount of such claims under the Plan and this Order on or as soon as reasonably practicable following the Effective Date, or (b) with respect to Allowed Priority Tax Claims that are not due and payable on or before the Effective Date, such claims shall be paid in the ordinary course of business or under applicable non-bankruptcy law as such obligations become due.

10.     **Acceptance of At Least One Impaired Class (11 U.S.C. § 1129(a)(10)).**

60.     As evidenced by the Voting Declaration, at least one Class of Claims that is Impaired under the Plan has voted to accept the Plan, determined without including the acceptance by any insider with respect to the Debtors.  Specifically, Class 4, the Class of Asbestos Personal Injury Claims, has voted unanimously to accept the Plan in number and amount, determined in accordance with section 524(g) of the Bankruptcy Code.

11.     **Feasibility (11 U.S.C. § 1129(a)(11)).**

61.     The Plan is feasible within the meaning of section 1129(a)(11) of the Bankruptcy Code.  The evidence proffered or adduced at or prior to the Combined Hearing and in the Anderson

Declaration, the Patton Declaration, the Confirmation Memorandum, and the financial projections attached to the Disclosure Statement as Exhibit B (a) was reasonable, persuasive, accurate and credible as of the dates such analysis or evidence was prepared, presented, or proffered; (b) has not been controverted by other evidence; (c) utilizes reasonable and appropriate methodologies and assumptions; (d) establishes that the Reorganized Debtors will have sufficient funds available to meet their obligations under the Plan; and (e) establishes that confirmation of the Plan is not likely to be followed by a liquidation or further reorganization of the Reorganized Debtors. Pursuant to the Plan, the Debtors will create and fund the Asbestos Personal Injury Trust pursuant to section 524(g) of the Bankruptcy Code. The Asbestos Personal Injury Trust will be in a position to begin operating on the Effective Date, as the relevant governing and other documents (the Asbestos Personal Injury Trust Agreement, the TDP, the Asbestos Claims Indemnification Agreement, the Asbestos Personal Injury Claimant Release, and the Asbestos Records Cooperation Agreement) have been included as exhibits to the Plan and will go into effect upon the Effective Date. See Plan Ex. A, B, C, D, E. In addition, on the Effective Date, Meritor will contribute the Settlement Payment of $28 million as part of the Meritor Contribution. See Plan § IV.B. The Asbestos Personal Injury Channeling Injunction will effectively redirect the liability and responsibility of the Debtors for Asbestos Personal Injury Claims (including Demands) to the Asbestos Personal Injury Trust from and after the Effective Date, enabling the Reorganized Debtors to operate without further responsibility for such liabilities.

62.     On the Effective Date, the Debtors will also make the Effective Date Payments or set aside the Reserve Funds sufficient for the payment in Cash of the Allowed amount of any unpaid Administrative Expense Claims, Priority Tax Claims, Priority Non-Tax Claims, Secured Claims, General Unsecured Claims, and all legal fees and expenses reasonably likely to be incurred

by the Reorganized Debtors through the closing of the Chapter 11 Cases—including all legal fees and expenses necessary to defend to final resolution any appeal of this Order, hearing on a Professional Fee Claim, and any adversary proceeding pending as of the Effective Date.

63.     The Plan is also feasible because of the revenue generated by Reorganized Maremont's continued management of its commercial property business, which will continue to generate rental income pursuant to the Commercial Property Lease (as defined in the Disclosure Statement). Anderson Decl. ¶ 43. The financial projections prepared by the Debtors based on this ownership show sufficient cash flow to fund the Reorganized Debtors' operations going forward, and provide a dividend to the Asbestos Personal Injury Trust as the owner of Reorganized Maremont. Id.; Disclosure Statement Ex. B. Accordingly, the Debtors have established that the Plan has a reasonable likelihood of success. The Plan therefore is feasible and satisfies the requirements of section 1129(a)(11) of the Bankruptcy Code.

**12.     Payment of Certain Fees (11 U.S.C. § 1129(a)(12)).**

64.     Section XII.D of the Plan provides for payment of all fees payable by the Debtors pursuant to 28 U.S.C. § 1930. The Plan therefore satisfies the requirements of section 1129(a)(12) of the Bankruptcy Code.

**13.     Non-Applicability of Certain Sections (11 U.S.C. §§ 1129(a)(13), (14), (15), and (16)).**

65.     The Debtors do not have any continuing obligations in respect of retiree benefits, see Anderson Decl. ¶ 45, owe no domestic support obligations, are not individuals, and are not nonprofit corporations. Accordingly, sections 1129(a)(13), (14), (15), and (16) of the Bankruptcy Code do not apply to the Plan.

14. **Confirmation of Plan Over Non-acceptance of an Impaired Class (11 U.S.C. § 1129(b)).**

66.     The Plan provides that Class 6 (Intercompany Claims) will either be Unimpaired or

Impaired, as to be determined by the Debtors or the Reorganized Debtors, as applicable, and as a

result the Intercompany Claims will either be deemed to accept or deemed to reject the Plan and

were not entitled to vote on the Plan.  Class 7 (Maremont Equity Interests) is Impaired and is

deemed to reject the Plan pursuant to section 1126(g) of the Bankruptcy Code.[3]  Based upon the

evidence proffered, adduced, and presented by the Debtors prior to and at the Combined Hearing,

the Plan does not discriminate unfairly and is fair and equitable with respect to Class 6 and Class

7, as required by sections 1129(b)(1) and (b)(2) of the Bankruptcy Code.

67.     The only known claims in Class 6 are the Intercompany Receivables, which are

being consensually resolved and settled under the Plan pursuant to the Meritor Contribution and

the Maremont Contribution, and Meritor, as Plan Proponent, affirmatively consents to such

treatment notwithstanding any deemed rejection of Class 6 under section 1126(g) and supports

confirmation of the Plan.  See Anderson Decl. ¶ 46.  Thus, the Plan may be confirmed

notwithstanding any deemed rejection of the Plan by Class 6 pursuant to section 1126(g), and

notwithstanding the reinstatement of Class 8 (Subsidiary Equity Interests).

68.     The Plan's treatment of Class 6 is proper because no similarly situated Class of

Claim or Interests will receive more favorable treatment under the Plan.  There are no similarly

situated Classes of Interests pursuant to the Plan, so the Plan does not unfairly discriminate with

respect to Class 7.  The Plan is fair and equitable to Class 7 because no Holder of any Interest that

is junior to such Class will receive or retain any property under the Plan on account of such junior

---

[3] As previously stated, Meritor, as the Holder of 100% of the Maremont Equity Interests, is a Plan Proponent and a Non-Debtor Affiliate and supports confirmation of the Plan notwithstanding its deemed rejection of the Plan under the Bankruptcy Code.

interest, and no Holder of a Claim or Interest in a Class senior to Class 7 is receiving more than 100% of recovery on account of its Claim or Interest. Thus, the Plan may be confirmed notwithstanding the deemed rejection of the Plan by Class 7. Additionally, for the same reasons, the Plan is fair and equitable with respect to Class 6.

        **15.**      **Confirmation of Only One Plan (11 U.S.C. § 1129(c)).**

        69.      The Plan is the only plan of reorganization for the Debtors proposed and considered by the Bankruptcy Court for Confirmation. The Plan therefore satisfies the requirements of section 1129(c) of the Bankruptcy Code.

        **16.**      **Principal Purpose of the Plan (11 U.S.C. § 1129(d)).**

        70.      The principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act of 1933, 15 U.S.C. § 77e, and no governmental unit has objected to the confirmation of the Plan on any such grounds. The Plan therefore satisfies the requirements of section 1129(d) of the Bankruptcy Code.

**O.**      **Good Faith Solicitation (11 U.S.C. § 1125(e)).**

        71.      Based upon the record before this Court in these Chapter 11 Cases, the Section 1125(e) Protected Parties have acted in "good faith" within the meaning of section 1125(e) of the Bankruptcy Code and in compliance with the applicable provisions of the Bankruptcy Code, Bankruptcy Rules, Local Rules and any applicable non-bankruptcy rules or regulations. Each of the Section 1125(e) Protected Parties participated in good faith and in compliance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and applicable non-bankruptcy law in the offer and issuance of any securities under the Plan, and therefore are not, and on account of such offer, issuance, and solicitation will not be, liable at any time for the violation of any applicable law, rule or regulation governing the Solicitation or the offer and issuance of the securities under the Plan. Accordingly, without limiting the foregoing, all Entities

within the definition of Section 1125(e) Protected Parties are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code. The Solicitation is exempt from the registration requirements of the Securities Act and state securities laws pursuant to sections 4(a)(2) and 18(b)(4)(F) of the Securities Act and Rule 506 of Regulation D of the Securities Act.

**P.    Good Faith.**

72.    The Debtors, the Reorganized Debtors, and each of the Section 1125(e) Protected Parties have been and will be acting in good faith if they proceed to (i) consummate the Plan and the agreements, settlements, transactions, and transfers contemplated thereby and (ii) take the actions authorized and directed by this Order, in each case, to the extent such actions are consistent with the Plan or this Order, as applicable.

**Q.    Bankruptcy Rule 3016.**

73.    As required by Bankruptcy Rule 3016(a), the Plan is dated and identifies the Debtors and Meritor as the proponents. The Debtors appropriately filed the Disclosure Statement and the Plan with the Bankruptcy Court, thereby satisfying Bankruptcy Rule 3016(b). The injunction, release, and exculpation provisions of the Disclosure Statement and Plan describe all acts to be enjoined and identify the Entities that will be subject to the injunctions, and each of the injunction, release, and exculpation provisions were set forth in bold, conspicuous language in the Combined Notice that was mailed to all known creditors of the Debtors, thereby satisfying Bankruptcy Rule 3016(c).

**R.    Bankruptcy Rule 3017.**

74.    The Debtors have given proper and sufficient notice of the Combined Hearing, the Solicitation, and the Solicitation Procedures, and have therefore satisfied the requirements of Bankruptcy Rules 3017(a) and 3017(d), as modified by the Scheduling Order. The Solicitation

Procedures, pursuant to which the Solicitation Package was provided to Holders of Claims in the Voting Class, were adequate, thereby satisfying Bankruptcy Rule 3017(e).

**S.**     **Bankruptcy Rule 3018.**

75.     The Solicitation of votes to accept or reject the Plan solely from the Holders of Claims in Class 4 (Asbestos Personal Injury Claims) satisfies Bankruptcy Rule 3018(a). The Plan was transmitted in accordance with the Solicitation Procedures, sufficient time was prescribed for the Voting Class to accept or reject the Plan under the circumstances, and the Solicitation and the Solicitation Procedures complied with sections 1125 and 1126 of the Bankruptcy Code.

**T.**     **Plan Compliance with the Requirements of Section 524(g) of the Bankruptcy Code.**

76.     Based on the findings of fact and conclusions of law contained herein, the Plan complies in all respects with the applicable requirements of section 524(g) of the Bankruptcy Code.

**1.**     **Requirements of Section 524(g)(1)(A) of the Bankruptcy Code.**

77.     Having provided notice of the Confirmation of the Plan and the issuance of the Asbestos Personal Injury Channeling Injunction through the Combined Notice, and this Court having held the Combined Hearing on March 18, 2019, the Asbestos Personal Injury Channeling Injunction and the Asbestos Personal Injury Trust to be established through this Order meet the requirements of section 524(g)(1)(A) of the Bankruptcy Code. The Plan comports with the Bankruptcy Code's requirements for issuance of an injunction to enjoin entities from taking legal action to recover, directly or indirectly, payment in respect of Asbestos Personal Injury Claims against the Reorganized Debtors, any other Protected Party, or any of their respective property.

**2.**     **Requirements of Section 524(g)(2)(B)(i) of the Bankruptcy Code.**

78.     The Asbestos Personal Injury Channeling Injunction is to be implemented in accordance with the Plan and the Asbestos Personal Injury Trust Documents. Plan § VIII.C.

        **(a)**      **Assumption of Liabilities (11 U.S.C. § 524(g)(2)(B)(i)(I)).**

79.      As of the Petition Date, Maremont, MEP, and certain other Non-Debtor Affiliates had been named as defendants in thousands of personal injury, wrongful death or property damage actions seeking recovery for damages allegedly caused by the presence of, or exposure to, asbestos or asbestos-containing products from the Debtor Product Lines. Anderson First Day Decl. ¶¶ 13–14. Pursuant to Section IV.E and any other relevant provisions of the Plan, as of the Effective Date, the Asbestos Personal Injury Trust shall assume all liabilities, obligations, and responsibilities of the Debtors with respect to Asbestos Personal Injury Claims, and shall have the sole and exclusive authority to satisfy or defend against all Asbestos Personal Injury Claims. Plan § IV.E.8.

        **(b)**      **Funding of the Asbestos Personal Injury Trust (11 U.S.C. § 524(g)(2)(B)(i)(II)).**

80.      The Plan provides that on the Effective Date, all right, title, and interest in and to the Asbestos Personal Injury Trust Assets, and any proceeds thereof, will be transferred to, and vested in, the Asbestos Personal Injury Trust, free and clear of all Claims, Demands, Interests, Encumbrances, and other interests of any Entity, without any further action of the Bankruptcy Court or any Entity, but subject to the remaining provisions of Section IV.E of the Plan. Plan § IV.E.3.

81.      Specifically, the Plan provides that on the Effective Date, the Asbestos Personal Injury Trust is to be funded by contribution of the Asbestos Personal Injury Trust Assets, which include: (a) the Maremont Contribution, which includes (i) all insurance proceeds and obligations owed to the Debtors, (ii) all Cash and cash equivalents held by the Debtors as of the Effective Date after giving effect to the Intercompany Loan Payment and the Settlement Payment, *less* the Effective Date Payment, the Reserve Funds, and the Effective Date Working Capital, and (iii) the

Meritor Contribution (to the extent included in the Maremont Contributed Cash and described in (b) herein); (b) the cash portions of the Meritor Contribution, which includes (i) the Intercompany Loan Payment—pursuant to which Meritor owed Maremont approximately $20 million as of the Petition Date, and (ii) the Settlement Payment in Cash by Meritor to Maremont in the amount of $28 million; (c) all other assets, rights, and benefits assigned, transferred, or conveyed to the Asbestos Personal Injury Trust in connection with the Plan or any Plan Documents, including, without limitation, the Reorganized Maremont Stock; and (d) all proceeds of the foregoing. See Plan §§ IV.B.1, IV.B.2, IV.C, IV.E, IV.I. On the Effective Date, all right, title, and interest in and to the Asbestos Personal Injury Trust Assets, and any proceeds thereof, including the Meritor Contribution and the Maremont Contribution, shall be automatically, and without further act or deed, transferred to, vested in, and assumed by the Asbestos Personal Injury Trust. The Asbestos Personal Injury Trust will own all of the Reorganized Maremont Stock as of the Effective Date, and have the right to receive dividends from Reorganized Maremont's commercial property business. Plan § IV.I; Anderson Decl. ¶ 40.

      (c)    **Transfer of Voting Shares (11 U.S.C. § 524(g)(2)(B)(i)(III)).**

82.    The Plan provides that, as the sole shareholder of the common stock of Reorganized Maremont stock after the Effective Date, the Asbestos Personal Injury Trust will (i) own one hundred percent (100%) of the Reorganized Maremont Stock and (ii) hold all rights to receive dividends or other distributions on account of such stock. See Plan §§ IV.C.2, IV.I.

      (d)    **Use of Asbestos Personal Injury Trust Assets (11 U.S.C. § 524(g)(2)(B)(i)(IV)).**

83.    The Plan provides that the Asbestos Personal Injury Trust is to use the Asbestos Personal Injury Trust Assets and income to resolve Asbestos Personal Injury Claims in accordance with the Asbestos Personal Injury Trust Agreement and the TDP in such a way that Holders of

Asbestos Personal Injury Claims are treated fairly, equitably, and reasonably in light of the finite assets available to satisfy such Claims. Plan § IV.E.2. In addition, the Asbestos Personal Injury Trust is to use the Asbestos Personal Injury Trust Assets and income to pay Asbestos Personal Injury Trust Expenses. See Plan § IV.E.14. The Asbestos Personal Injury Trust shall have no liability for any Claims or Demands other than Asbestos Personal Injury Claims and Asbestos Personal Injury Trust Expenses, and no Claims and Demands other than Asbestos Personal Injury Claims and Asbestos Personal Injury Trust Expenses shall be transferred and channeled to the Asbestos Personal Injury Trust. Patton Decl. ¶ 12. None of the Plan Proponents, the Debtors' Estates, the Reorganized Debtors, nor any other Protected Party shall have any obligation to pay any Asbestos Personal Injury Claims or Asbestos Personal Injury Trust Expenses or any other liabilities of the Asbestos Personal Injury Trust. See Plan § IV.E.14. The Asbestos Personal Injury Trust shall promptly pay all Asbestos Personal Injury Trust Expenses incurred by the Reorganized Debtors for any and all liabilities, costs, or expenses as a result of taking any action on behalf of, and at the direction of, the Asbestos Personal Injury Trust. See Plan § IV.E.14.

84.     Additionally, the Plan states that the TDP shall provide on the Effective Date, and shall not thereafter cease to provide, that all Holders of Asbestos Personal Injury Claims shall, as a precondition to receiving payment on account of their Asbestos Personal Injury Claims from the Asbestos Personal Injury Trust, each execute an Asbestos Personal Injury Claimant Release in favor of certain parties, which includes (i) Meritor and other Non-Debtor Affiliates that are not Non-Indemnified Parties, (ii) the Settling Insurers that are not Non-Indemnified Parties, and (iii) any Representative of the Entities set forth in (i) and (ii) that are not Non-Indemnified Parties. Plan §§ IV.E.9, Ex. B. The Plan further provides that such release shall be substantially in the

form attached to the Plan as Exhibit B, and shall not be materially amended after the Effective Date without the consent of the Reorganized Debtors and Meritor.  Plan § IV.E.9, Ex. A, C.

3.      **Requirements of Section 524(g)(2)(B)(ii) of the Bankruptcy Code.**

85.     Maremont and MEP have been named in thousands of personal injury and wrongful death lawsuits dating back to 1977 asserting liability for damages caused by exposure to asbestos-containing products that they or their predecessor(s)-in-interest allegedly used, sold, manufactured, marketed, produced or distributed or that were allegedly present in their manufacturing facilities.  Anderson First Day Decl. ¶ 13.  During the five-year period ending December 31, 2018, approximately 2,600 asbestos-related lawsuits were asserted against Maremont and MEP.  Id.  The Debtors' history as defendants in the tort system, the nature of asbestos litigation, and the facts of these Chapter 11 Cases support the findings required for the issuance of the Asbestos Personal Injury Channeling Injunction under section 524(g) of the Bankruptcy Code.

(a)      **Likelihood of Future Demands (11 U.S.C. § 524(g)(2)(B)(ii)(I)).**

86.     In the absence of the Plan and based on the substantial number of asbestos-related personal injury lawsuits that have been asserted against Maremont and MEP in the past and that remained unresolved on the Petition Date, as well as the long latency period for many asbestos-related diseases, the Debtors would be subject to substantial future Demands for payment arising out of the same or similar conduct or events that gave rise to the Asbestos Personal Injury Claims that are addressed by the Asbestos Personal Injury Channeling Injunction.  Anderson Decl. ¶ 49.  Thus, the Plan satisfies section 524(g)(2)(B)(ii)(I) of the Bankruptcy Code.

       **(b)**      **Indeterminate   Nature   of   Future   Demands   (11   U.S.C.**
             **§ 524(g)(2)(B)(ii)(II)).**

87.     Due to the long latency period for asbestos-related diseases and the substantial number of asbestos-related personal injury lawsuits that had been asserted in the past and that remain unresolved as of the Petition Date, the actual amounts, numbers, and timing of future Demands in respect of alleged asbestos-related personal injuries cannot be determined. Anderson Decl. ¶ 50; Patton Decl. ¶ 27.  Therefore, the Plan satisfies section 524(g)(2)(B)(ii)(II) of the Bankruptcy Code.

       **(c)**      **Threat of Future Demands Pursued Outside the Plan (11 U.S.C.**
             **§ 524(g)(2)(B)(ii)(III)).**

88.     Pursuit of Demands outside the procedures prescribed by the Plan is likely to threaten the Plan's purpose to deal equitably with Asbestos Personal Injury Claims, including future Demands.  Equitable treatment of Holders of Asbestos Personal Injury Claims and Future Demand Holders depends on all claimants being subject to the same rules and procedures as provided under the terms of the Asbestos Personal Injury Trust Agreement and the TDP.  Patton Decl. ¶ 28.  Without the Asbestos Personal Injury Trust as provided by the Plan and the TDP, holders of Demands would be forced to litigate their Claims in the tort system on an individual basis, distributions to creditors would most likely be delayed, and, due to the costs of litigation, the funds actually available for distribution to creditors and Demand holders may be reduced substantially and the relief available would likely be inconsistent. Id. Further, a substantial portion of the Debtors' aggregate liability for Asbestos Personal Injury Claims relates to Demands, and estimates of the predicted liability for such Demands may vary widely.  Id.  Because of the uncertainties inherent in litigation and the limited resources of the Debtors, Holders of asbestos-related Demands would almost certainly obtain inconsistent awards and disparate recoveries.  Id.

89.     In such case, holders of earlier asserted Demands might be paid in full as the Demands are settled or liquidated in the tort system, while holders of later Demands may be paid less or go unsatisfied altogether.    Patton Decl. ¶ 28.    Thus, the Plan satisfies section 524(g)(2)(B)(ii)(III) of the Bankruptcy Code.

      **(d)**     **Description of Asbestos Personal Injury Channeling Injunction in Plan and Disclosure Statement (11 U.S.C. § 524(g)(2)(B)(ii)(IV)(aa)).**

90.     The terms of the Asbestos Personal Injury Channeling Injunction, including provisions barring actions against third parties, are set forth in the Plan and described in the Disclosure Statement.  Plan § VIII.C; Disclosure Statement at 47–48.  In addition, these provisions were negotiated heavily with the Asbestos Claimants Committee and the Future Claimants' Representative to provide extensive description of such terms in the Plan and Disclosure Statement.    Anderson Decl. ¶ 52; Patton Decl. ¶ 29.    Thus, the Plan satisfies section 524(g)(2)(B)(ii)(IV)(aa) of the Bankruptcy Code.

      **(e)**     **Acceptance of Plan by Voting Class Addressed by Asbestos Personal Injury Trust (11 U.S.C. § 524(g)(2)(B)(ii)(IV)(bb)).**

91.     The Debtors designated Class 4 for the Holders of Asbestos Personal Injury Claims, that are to be subject to the Asbestos Personal Injury Channeling Injunction and liquidated and paid by the Asbestos Personal Injury Trust.  Of the Holders of Asbestos Personal Injury Claims in Class 4 that voted, 100 percent voted to accept the Original Plan in both number and amount of such Claims, using the values assigned to such Asbestos Personal Injury Claims solely for voting purposes as set forth and defined in the TDP and disclosed in the Ballots and Master Ballots.  See Voting Decl. ¶ 11.  Thus, the Plan satisfies section 524(g)(2)(B)(ii)(IV)(bb) of the Bankruptcy Code.

> (f)  **Operation of the Asbestos Personal Injury Trust and Treatment of Present and Future Claims Involving Similar Claims in Substantially the Same Manner (11 U.S.C. § 524(g)(2)(B)(ii)(V)).**

92.    As set forth in Sections IV.E and VIII.C of the Plan, Exhibit C (the Asbestos Personal Injury Trust Agreement), and Exhibit D of the Plan (the TDP), all Asbestos Personal Injury Claims shall be determined and paid pursuant to the terms of the Asbestos Personal Injury Trust Agreement and the TDP.  Pursuant to such documents, an order of this Court, or otherwise, the Asbestos Personal Injury Trust will operate through mechanisms such as structured, periodic, or supplemental payments, pro rata distributions, matrices, or periodic review of estimates of the numbers and values of Asbestos Personal Injury Claims and Demands or other comparable mechanisms that provide reasonable assurance that the Asbestos Personal Injury Trust will value, and be in a financial position to pay, similar Asbestos Personal Injury Claims and Demands in substantially the same manner regardless of the timing of the assertion of such Asbestos Personal Injury Claims.    TDP § 2; Patton Decl. ¶ 31.    Therefore, the Plan complies with section 524(g)(2)(B)(ii)(V) of the Bankruptcy Code.

> 4.    **Extension of the Asbestos Personal Injury Channeling Injunction to Certain Third Parties (11 U.S.C. § 524(g)(4)(A)(ii)).**

93.    Section VIII.C of the Plan provides that, in addition to protecting the Debtors and the Reorganized Debtors, the Asbestos Personal Injury Channeling Injunction will be extended to protect certain third parties.  Plan §§ I.A.126, VIII.C.  The Plan identifies these non-Debtor Protected Parties as follows:

> (a)  the Meritor Related Parties, which includes the Non-Debtor Affiliates and their respective officers, directors, shareholders, employees, professionals, and consultants, and the assignees and successors of any of the foregoing (in their respective capacities as such);
>
> (b)  the Settling Insurers, which includes FFIC, Zurich, Mt. McKinley, and Everest in accordance with Section IV.D of the Plan; and

(c)     any Representative of the Debtors, the Reorganized Debtors, or the foregoing parties, in each case that is not a Non-Indemnified Party.

Plan §§ I.A.101, I.A.104, I.A.126, I.A.154, IV.D.

94.    The Protected Parties under the Plan fall within the scope of sections 524(g)(3)(A) and 524(g)(4)(A)(ii).  The Non-Debtor Affiliates are each a former affiliate or predecessor of the Debtors and/or a current or former affiliate of Meritor other than the Debtors.  Anderson Decl. ¶ 52.  In addition, the Settling Insurers are each covered by section 524(g)(4)(A)(ii)(III) as providers of insurance to the Debtors and in consideration for the settlement of the respective agreements with such Settling Insurers.  Id.  The release of the Intercompany Claims by the Non-Debtor Affiliates, and the assignment, transfer, and conveyance of the other Asbestos Personal Injury Trust Assets to the Asbestos Personal Injury Trust on the Effective Date supports the imposition of the Asbestos Personal Injury Channeling Injunction in favor of all of the Protected Parties as of the Effective Date.  Plan § IV.E.11; Patton Decl. ¶ 18.  Any claims against Representatives of the Non-Debtor Affiliates or Settling Insurers that are not Non-Indemnified Parties, in turn, would have to be brought against those Representatives solely in their capacity as a representative of the relevant Non-Debtor Affiliate or Settling Insurer.

### 5.    The Interests of Future Claimants Were Represented by the Future Claimants' Representative (11 U.S.C. § 524(g)(4)(B)(i)).

95.    In accordance with section 524(g)(4)(B)(i) of the Bankruptcy Code, the Future Claimants' Representative, Mr. Patton, was appointed by the Bankruptcy Court as part of these Chapter 11 Cases leading to the issuance of the Asbestos Personal Injury Channeling Injunction for the purpose, among other things, of protecting the rights of future Demand Holders.  See Patton Decl. ¶ 7.  Mr. Patton represented the interests of future claimants prior to the Petition Date, and negotiated the terms of the Plan, including all exhibits, with the Debtors, Meritor, and the pre-petition Asbestos Claimants Committee, in his capacity as the pre-petition Futures Claimants'

Representative. Id. ¶¶ 8–10.   Mr. Patton has extensive experience with asbestos litigation, including serving as the future claimants' representative in various bankruptcy cases, and has represented the future claimants' representative in other bankruptcies.  Id. ¶ 6.   The Future Claimants' Representative's experience and actions in these Chapter 11 Cases, as summarized in the Patton Declaration, evidence that he has properly understood his duties as the Future Claimants' Representative and the nature of the interests he represents in these Chapter 11 Cases. Post-Effective Date, he will continue to represent those interests as the appointed Post-Effective Date Future Claimants' Representative, pursuant to the Plan, this Order, and the Asbestos Personal Injury Trust Agreement.   The Future Claimants' Representative has in all respects fulfilled his duties, responsibilities, and obligations as the futures representative in accordance with section 524(g) of the Bankruptcy Code.

6. **The Asbestos Personal Injury Channeling Injunction Is Fair and Equitable (11 U.S.C. § 524(g)(4)(B)(ii)).**

96.     The Debtors and Meritor, on behalf of themselves and other Protected Parties, are contributing substantial assets to the Asbestos Personal Injury Trust.  See Plan §§ I.A.93, I.A.94, I.A.100, IV.B.  Mr. Patton, as the Future Claimants' Representative, supports confirmation of the Plan.  Patton Decl. ¶ 1.  In light of the substantial contributions provided, or to be provided, to the Asbestos Personal Injury Trust and/or the Reorganized Debtors by or on behalf of each current and future Protected Party, the Asbestos Personal Injury Channeling Injunction is fair and equitable to all creditors and future Demand Holders.   Thus, the Plan complies with section 524(g)(4)(B)(ii) of the Bankruptcy Code.

U. **The Commercial Property Business Is an "Ongoing Business."**

97.     After the Effective Date, Reorganized Maremont will continue to own and manage its commercial property business, which will continue to generate rental income pursuant to the

Commercial Property Lease (as defined in the Disclosure Statement).  See Anderson Decl. ¶ 7. Accordingly, the Reorganized Debtors will have an ongoing business after the Effective Date, and will continue in business as separate corporate entities.

V.      **Releases Contained in Section VIII.E of the Plan.**

98.      Section VIII.E.1 of the Plan provides that except as otherwise expressly provided in the Plan or this Order (including with respect to the treatment of the FFIC Agreement, the Zurich Agreement and the Everest Agreement), on the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, the Debtors, the Reorganized Debtors, and any Entity seeking to exercise the rights of the Estates, in each case, whether individually or collectively, including, without limitation, any successor to any Debtor or any Estate representative appointed or selected pursuant to the applicable provisions of the Bankruptcy Code, shall, and shall be deemed to, completely and forever release, waive and discharge unconditionally the Non-Estate Representative Released Parties from any and all claims, obligations, suits, judgments, remedies, damages, Demands, debts, rights, Causes of Action and liabilities which any of the Debtors, their respective Estates, or Reorganized Debtors is entitled to assert, whether known or unknown, liquidated or unliquidated, fixed or contingent, foreseen or unforeseen, matured or unmatured, existing or hereafter arising, in law, equity or otherwise, whether direct, indirect, or derivative, based upon, attributable to, or arising out of, in whole or in part, any act or omission, transaction, or occurrence taking place on or prior to the Effective Date (including prior to the Petition Date) (other than the rights under the Plan, the Plan Documents, and the contracts, instruments, releases and other agreements or documents delivered or to be delivered hereunder), including, without limitation, the Non-Estate Representative Released Party Claims.    Plan § VIII.E.1.

51

99.     Section VIII.E.2 of the Plan that except as otherwise expressly provided in the Plan or this Order, on the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, the Debtors, the Reorganized Debtors, and any Entity seeking to exercise the rights of the Estates, in each case whether individually or collectively, including, without limitation, any successor to any Debtor or any Estate representative appointed or selected pursuant to the applicable provisions of the Bankruptcy Code, shall, and shall be deemed to, completely and forever release, waive and discharge unconditionally the Released Parties (other than the Non-Estate Representative Released Parties, which Parties are the subject of Section VIII.E.1) from any and all claims, obligations, suits, judgments, remedies, damages, Demands, debts, rights, Causes of Action and liabilities which any of the Debtors, their Estates, or Reorganized Debtors is entitled to assert, whether known or unknown, liquidated or unliquidated, fixed or contingent, foreseen or unforeseen, matured or unmatured, existing or hereafter arising, in law, equity or otherwise, whether direct, indirect, or derivative, based upon, attributable to, arising out of, in whole or in part, any act or omission, transaction, or occurrence taking place on or prior to the Effective Date (including prior to the Petition Date) (other than the rights under the Plan, the Plan Documents, and the contracts, instruments, releases and other agreements or documents delivered or to be delivered hereunder); provided, however, that nothing contained in Section VIII.E.2 of the Plan is intended to operate as a release of any liability based upon gross negligence or willful misconduct as determined by a Final Order.  Plan § VIII.E.2.

100.    In addition, Section VIII.E.3 of the Plan provides that except as provided in the Plan or this Order, the Debtors, the Reorganized Debtors, and any and all Entities seeking to exercise the rights of any Debtor's Estate, in each case, whether individually or collectively, including, without limitation, any successor to any Debtor or any Debtor's Estate representative

Case 19-10118-LSS    Doc 241    Filed 05/17/19    Page 53 of 95

appointed or selected pursuant to the applicable provisions of the Bankruptcy Code, are permanently enjoined from taking any of the following actions on account of or based upon any and all Claims, obligations, suits, judgments, remedies, damages, Demands, debts, rights, Causes of Action and liabilities released pursuant to Section VIII.E of the Plan: (a) commencing or continuing any action or other proceeding against the Released Parties or the Non-Estate Representative Released Parties or their respective property; (b) enforcing, attaching, collecting or recovering any judgment, award, decree or order against the Released Parties or the Non-Estate Representative Released Parties or their respective property; (c) creating, perfecting or enforcing any Encumbrance against the Released Parties or the Non-Estate Representative Released Parties or their respective property; (d) asserting any setoff, right of subrogation, or recoupment of any kind against any obligation due the Released Parties or the Non-Estate Representative Released Parties or against their respective property; and (e) commencing or continuing any action, in any manner and in any place in the world, against the Released Parties or the Non-Estate Representative Released Parties that does not comply with or is inconsistent with the provisions of the Plan or this Order.  Plan § VIII.E.3.

101.    The Debtors and their Estates have given the releases set forth in Section VIII.E of the Plan as part of the overall settlements contained in the Plan.

**W.    Exemption from Certain Taxes.**

102.    Pursuant to section 1146(a) of the Bankruptcy Code, any issuance, transfer or exchange of any note or security contemplated by the Plan (including, without limitation, the Reorganized Maremont Stock), the creation of any mortgage, deed of trust, pledge, or other security interest, the making or assignment of any lease or sublease, or the making or delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with the Plan shall be exempt from all stamp, transfer, or similar taxes, as provided in section 1146(a).

53

## X.    Exemption from Securities Laws.

103.    The offer, issuance, distribution, transfer or exchange of Reorganized Maremont Stock pursuant to the Plan shall be, and shall be deemed to be, exempt from registration under any applicable federal or state securities laws to the fullest extent permissible under applicable non-bankruptcy law and under bankruptcy law, including, without limitation, section 1145(a) of the Bankruptcy Code.

## Y.    Good Faith Negotiation, Implementation, and Consummation.

104.    The Debtors, Meritor, the Asbestos Claimants' Committee, and the Future Claimants' Representative participated in good faith in negotiating, at arm's length, the Original Plan, the Plan, and all contracts, instruments, releases, agreements, and documents related to or necessary to implement, effectuate, and consummate the Plan, including each of the Asbestos Claims Indemnification Agreement, the Asbestos Personal Injury Claimant Release, Reorganized Maremont's Certificate of Incorporation, and Reorganized Maremont's Bylaws, and all agreements and releases to be executed and delivered in connection with the Asbestos Personal Injury Trust. The Debtors, the Asbestos Claimants Committee, the Future Claimants' Representative, and Meritor also participated in good faith in each of the actions taken to bring about, and in satisfying each of the conditions precedent to, Confirmation and Consummation. In so determining, the Bankruptcy Court has considered, among other things, the totality of the circumstances surrounding the filing of the Chapter 11 Cases, the record of this proceeding and the Plan and all related pleadings, exhibits, statements, and comments regarding Confirmation. The restructuring documents contemplated by the Plan and all other relevant and necessary Plan Documents shall, upon completion of documentation and execution, be valid, binding, non-avoidable and enforceable agreements.

**Z.**    **Retention of Jurisdiction.**

105.    Pursuant to sections 105(a) and 1142 of the Bankruptcy Code, and notwithstanding the entry of this Order or the occurrence of the Effective Date, the Bankruptcy Court and, to the extent applicable, the District Court, except as otherwise provided in the Plan or herein, shall retain jurisdiction over all matters arising out of, or related to, the Chapter 11 Cases and the Plan to the fullest extent permitted by law, including, but not limited to, the matters set forth in Article XI of the Plan.  Notwithstanding anything to the contrary herein or in the Plan, the Asbestos Personal Injury Trust Agreement and the TDP shall govern the satisfaction of Asbestos Personal Injury Claims and the forum in which Asbestos Personal Injury Claims shall be determined.

**AA.**    **Waiver of Stay.**

106.    Under the circumstances, it is appropriate that the 14-day stay imposed by Bankruptcy Rules 3020(e) and 7062(a) and any other Bankruptcy Rules, if applicable, be waived.

**BB.**    **Satisfaction of Confirmation Requirements.**

107.    Based upon the foregoing and all other pleadings and evidence proffered or adduced at or prior to the Combined Hearing, the Plan satisfies the requirements for confirmation set forth in section 1129 of the Bankruptcy Code, including sections 1122 and 1123 thereof.

**CC.**    **Conditions to Confirmation.**

108.    Section IX.A of the Plan contains conditions precedent to Confirmation that must be satisfied or duly waived by the Plan Proponents.  For the reasons set forth herein, each of the conditions precedent in Section IX.A.1 through and including Section IX.A.3 of the Plan has been satisfied or duly waived, subject to the affirmance of this Order by the District Court.

**DD.**    **Compliance with Section 1141 of the Bankruptcy Code.**

109.    The Bankruptcy Court hereby determines that, under section 1141(d), the Debtors are and shall be entitled to a discharge.  In reaching this determination, the Bankruptcy Court has

considered section 1141(d)(3), which provides for denial of a discharge to a corporate debtor only if three criteria are met: (i) the plan provides for the liquidation of all or substantially all estate property, (ii) the debtor does not engage in business after consummation of the plan, and (iii) the debtor would be denied a discharge under section 727(a) if the case were a Chapter 7 case. 11 U.S.C. § 1141(d)(3). However, the Bankruptcy Court hereby determines that the Debtors will engage in business after the consummation of the Plan, thus negating the first and second requirements for denial of a discharge.

110. The Debtors are entitled to a discharge under section 1141(d) because confirmation of the Plan is not likely to be followed by the liquidation of the Reorganized Debtors or the need for further financial reorganization.

**EE.   Propriety of Settlement and Plan-Related Documents.**

111. In light of the extensive litigation related to the Asbestos Personal Injury Claims and the consideration to be provided by Maremont and Meritor to the Asbestos Personal Injury Trust on behalf of the Protected Parties under the Plan, and further based on the evidentiary record of the Chapter 11 Cases, the settlement of claims and potential claims against or involving the Debtors set forth in the Plan, and the channeling of all Asbestos Personal Injury Claims to the Asbestos Personal Injury Trust, in exchange for the consideration provided under the Plan, as embodied in the Plan, is fair, reasonable, and adequate, in accordance with applicable United States Supreme Court and Third Circuit law. See Protective Comm. for Indep. Stockholder of TMT Ferry, Inc. v. Anderson, 390 U.S. 414,424 (1968); Myers v. Martin (In re Martin), 91 F.3d 389, 393 (3d Cir. 1996).

112. In light of all of the circumstances and the record in the Chapter 11 Cases, each of the transactions contemplated by or referenced in the Plan, including the creation of the Asbestos Personal Injury Trust, is integral to the terms, conditions, and settlement contained in the Plan and

is critical to the effectuation of the purposes of the Plan. All contracts, instruments, releases, agreements, and documents entered into in connection with, or necessary to implement, effectuate, and consummate, the Plan, including, without limitation, (a) each of the contracts, instruments, agreements and documents to be executed and delivered in connection with Article IV of the Plan; (b) each of Reorganized Maremont's Bylaws and Reorganized Maremont's Certificate of Incorporation, attached to the Plan as Exhibit K and Exhibit L, respectively; (c) the Asbestos Personal Injury Trust Agreement, attached to the Plan as Exhibit C; (d) the TDP, attached to the Plan as Exhibit D; (e) the Asbestos Claims Indemnification Agreement, attached to the Plan as Exhibit A; (f) the Asbestos Personal Injury Claimant Release, attached to the Plan as Exhibit B; (g) the Environmental Assumption and Indemnification Agreement, attached to the Plan as Exhibit G; (h) the Asbestos Records Cooperation Agreement, attached to the Plan as Exhibit E; and (i) all other contracts, instruments, agreements, or documents that any of the Debtors, the Reorganized Debtors, Meritor, or the Asbestos Personal Injury Trustee may execute and deliver in connection with the consummation of the Plan or the Asbestos Personal Injury Trust are valid, proper, and reasonable under the circumstances and due and sufficient notice thereof has been provided in connection with, among other things, approval of the Disclosure Statement and confirmation of the Plan.

113. Without limiting the foregoing, the Bankruptcy Court concludes that, pursuant to section 1123(b) of the Bankruptcy Code and in consideration of the distributions and other benefits provided under the Plan, the provisions of the Plan, and the transactions contemplated by the Plan, including, without limitation, each of the injunctions, releases, exculpation, indemnifications, and discharges set forth in Article VIII of the Plan, the creation and administration of the Asbestos Personal Injury Trust as set forth in Section IV.E of the Plan, and each of the transactions

contemplated in Article IV of the Plan constitute a fair and reasonable, good faith compromise and settlement of all claims or controversies relating to the rights that a Holder of a Claim, Demand, or Interest may have with respect to any Claim (including an Asbestos Personal Injury Claim), Demand, or Interest or any distribution to be made pursuant to the Plan on account of any Allowed Claim (including an Asbestos Personal Injury Claim), Demand, or Interest.

114.    Moreover, based upon the representations and arguments of counsel for the Plan Proponents and all other testimony either given or proffered at the Confirmation Hearing or prior hearings relating to the negotiations leading to, among other things, the Original Plan, the Plan, or the various plan-related agreements and Plan Documents, the Plan constitutes a fair, reasonable, and good faith settlement and compromise of all claims or controversies relating to the rights of Holders of Claims or Demands against, and Interests in, the Debtors.

**FF.    Transfer of Books and Records to the Asbestos Personal Injury Trust.**

115.    Section IV.E.1 of the Plan provides that on the Effective Date, the Asbestos Records Cooperation Agreement shall become effective and the Debtors' asbestos records shall be treated in accordance with such.

**Decrees**

WHEREFORE, IT IS HEREBY ORDERED, ADJUDGED, DECREED, AND DETERMINED THAT:

**A.    Disclosure Statement.**

116.    For the reasons set forth in this Order, the Disclosure Statement (i) contains sufficient information of a kind generally consistent with the disclosure statement requirements of applicable non-bankruptcy laws, rules and regulations, including the Securities Act; and (ii) contains "adequate information" (as such term is defined in Bankruptcy Code section 1125(a)(1) and used in Bankruptcy Code section 1126(b)(2)) with respect to the Debtors, the Plan,

and the transactions contemplated therein. Accordingly, the Disclosure Statement hereby is **APPROVED**.

**B.    Solicitation and Solicitation Procedures.**

117.    The Solicitation and the Solicitation Procedures complied with Bankruptcy Code sections 1125 and 1126, Bankruptcy Rules 3017 and 3018, all other provisions of the Bankruptcy Code, and all other applicable rules, laws, and regulations, and were appropriate and satisfactory, and are approved. In connection with the Solicitation, the Debtors properly relied on, to the extent necessary, the exemption from registration requirements of the Securities Act pursuant to sections 4(a)(2) and 18(b)(4)(F) and Rule 506 of Regulation D thereof. The Solicitation Package complied with the Bankruptcy Code, including sections 1125 and 1126 thereof, the Bankruptcy Rules, including Bankruptcy Rules 3017 and 3018, the Local Rules, the Scheduling Order, any applicable non-bankruptcy law, and any other applicable rules, laws, and regulations, and were appropriate and satisfactory and hereby are approved.

**C.    Ballots.**

118.    The Ballots and Master Ballots utilized in the Solicitation are in compliance with Bankruptcy Rule 3018(c), conform to Official Form Number 14, and are approved in all respects. The procedures used for tabulation of votes to accept or reject the Plan as described in the Voting Declaration are approved.

**D.    Notice of the Combined Hearing.**

119.    Notice of the Combined Hearing complied with the terms of the Scheduling Order, was appropriate and satisfactory, was in compliance with the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules, and is approved.

**E.**     **Confirmation.**

120.    The Plan, attached hereto as __Exhibit A__, is hereby **CONFIRMED** under section 1129 of the Bankruptcy Code.  The terms of the Plan, including, without limitation, all exhibits thereto, and the Debtors' entry into the Plan Documents and performance thereunder are hereby authorized and approved.  The Debtors and the Reorganized Debtors are authorized to take all actions necessary or appropriate to enter into, implement, and consummate the contracts, instruments, releases, leases, indentures, and other agreements or documents created in connection with the Plan.  Notwithstanding the foregoing, if there is any direct conflict between the terms of the Plan or any exhibit thereto and the terms of this Order, the terms of this Order shall control.  This Order shall supersede any prior orders of the Bankruptcy Court issued in the Chapter 11 Cases that may be inconsistent herewith.  The terms of the Plan, the Plan Documents, and all exhibits thereto, shall be effective and binding as of the Effective Date.

**F.**     **Objections.**

121.    All objections (including any reservations of rights contained therein) to approval of the Disclosure Statement or Confirmation of the Plan that have not been withdrawn, waived, or settled prior to entry of this Order, are not cured by the relief granted herein, or are not otherwise resolved as stated by the Debtors on the record of the Combined Hearing, are **OVERRULED** on the merits and in their entirety, and all withdrawn objections are deemed withdrawn with prejudice.

**G.**     **References to and Omissions of Plan Provisions.**

122.    References in this Order to any article, section, paragraph, or provision of the Plan are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan.   The failure to specifically include or to refer to any particular article, section, paragraph, or provision of the Plan in this Order shall not diminish or impair the effectiveness of such article, section, paragraph, or provision, it being the intent of the Bankruptcy

Court that the Plan be confirmed in its entirety, except as expressly modified herein, and that the Plan Documents and all exhibits and schedules thereto, and all other agreements, instruments, or other documents filed in connection with the Plan and/or executed or to be executed in connection with the transactions contemplated by the Plan, and all amendments and modifications of any of the foregoing made pursuant to the provisions of the Plan governing such amendments and modifications, are approved in their entirety.

**H.    Headings.**

123.    Headings utilized in this Order are for convenience of reference only and do not constitute a part of the Plan or this Order for any other purpose.

**I.    Classifications.**

124.    The terms of the Plan shall govern the classification of Claims and Interests for purposes of the distributions to be made thereunder.

**J.    Modifications to the Plan.**

125.    Modifications made to the Plan, including the Plan Modifications, following the solicitation of votes thereon satisfied the requirements of section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, and no further solicitation is required. Such modifications do not adversely change the treatment of the Claim of any creditor or Interest Holder of the Debtors or have been consented to by the entities affected thereby, and are approved in all respects.

**K.    Deemed Acceptance of the Plan as Modified.**

126.    In accordance with section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, all Holders of Claims in the Voting Class who voted to accept the Original Plan or who are conclusively presumed to have accepted the Original Plan are deemed to have accepted the Plan as modified by the Plan Modifications. No Holder of a Claim shall be permitted to change its vote as a consequence of such modifications.

L.      **Plan Supplement.**

127.    The form of documents comprising the Plan Supplement are authorized and approved, and any other agreements, instruments, certificates or documents related thereto, and the transactions contemplated by each of the foregoing, are authorized, and, upon execution and delivery of the agreements and documents relating thereto by the applicable parties (and the satisfaction of applicable terms and conditions to their effectiveness), shall be in full force and effect and valid, binding and enforceable in accordance with their terms without the need for any further action, order or approval of the Bankruptcy Court or District Court, as applicable, or other act or action under applicable law, regulation, order or rule, and are expressly incorporated as part of the Plan.

M.      **No Action.**

128.    Pursuant to the appropriate provisions of section 303 of the Delaware General Corporation Law and section 1142(b) of the Bankruptcy Code, no action of the stockholders, members, managers or directors of the Debtors or Reorganized Debtors, as applicable, shall be required to authorize the Debtors or Reorganized Debtors, as applicable, to enter into, execute, deliver, file, adopt, amend, restate, consummate, or effectuate, as the case may be, the Plan and any contract, assignment, certificate, instrument, or other document to be executed, delivered, filed, adopted, amended, restated, consummated or effectuated, as the case may be, in connection with implementation of the Plan.

N.      **Binding Effect.**

129.    On the Effective Date, all provisions of the Plan, including all exhibits, agreements, instruments and other documents filed with the Bankruptcy Court in connection with the Plan (including, without limitation, the Plan Supplement and Plan Modifications) and executed by the Debtors or the Reorganized Debtors in connection with the Plan and this Order, shall be binding

on (i) the Debtors; (ii) the Reorganized Debtors; (iii) all Holders of Claims against and Interests in the Debtors and such Holders' respective successors and assigns, whether or not the Claim or Interest of such Holder is Impaired under the Plan and whether or not such Holder has accepted the Plan; and (iv) all other parties that are affected in any manner by the Plan. Except as expressly provided otherwise in the Plan or this Order, all agreements, instruments and other documents filed in connection with the Plan shall be given full force and effect, and shall bind all parities referred to therein as of the Effective Date, whether or not such agreements are actually issued, delivered or recorded on the Effective Date or thereafter and whether or not a party has actually executed such agreement. For the avoidance of doubt, no provision of any agreement, instrument or other document filed in connection with the Plan and executed by the Debtors or Reorganized Debtors in connection with the Plan shall render Impaired any Claim that is otherwise Unimpaired under the Plan; provided, however, that the Reorganized Debtors shall be authorized to take any action that they determine may be necessary, advisable or appropriate in connection with the operation of their business after the consummation of the Plan (without prejudice to the rights of creditors or other parties under contract or applicable nonbankruptcy law).

O.      **Implementation of the Plan.**

130.    The Plan Proponents and all other parties in interest are authorized to implement the Plan in accordance with its terms.

131.    The provisions in Article IV of the Plan governing the means for implementation of the Plan shall be, and are, approved in their entirety. On and after the Effective Date, the Reorganized Debtors and the officer and director of Reorganized Maremont and the Reorganized Subsidiaries are authorized to and may issue, execute, deliver, file or record such contracts, Reorganized Maremont Stock, instruments, releases and other agreements and documents and take such actions as the officer and director of Reorganized Maremont and the Reorganized

Subsidiaries may determine to be necessary, appropriate or advisable to effectuate, implement and/or consummate the Plan, the Plan Documents, this Order, or the transactions contemplated thereby or hereby, including the documents set forth in the exhibits to the Plan, the Plan Supplement, and the Reorganized Maremont Stock issued pursuant to the Plan in the name of and on behalf of the Reorganized Debtors, without the need for any further approvals, authorization, or consents.

132.    The Debtors and Reorganized Debtors, and all other parties, including all Holders of Claims entitled to receive Distributions under the Plan, shall execute any and all documents and instruments that must be executed under or in connection with the Plan in order to implement the terms of the Plan or to effectuate the Distributions under the Plan, provided that such documents and instruments are reasonably acceptable to such party or parties.

**P.       Effects of Confirmation.**

133.    All transfers of property by the Debtors to the Reorganized Debtors pursuant to the Plan (i) are or will be legal, valid, and effective transfers of property; (ii) vest or will vest the Reorganized Debtors with good title to such property; (iii) do not and will not constitute avoidable transfers under the Bankruptcy Code or under other applicable bankruptcy or non-bankruptcy law; and (iv) do not and will not subject the Reorganized Debtors to any liability by reason of such transfer under the Bankruptcy Code or applicable non-bankruptcy law, including, without limitation, any laws affecting or effecting successor or transferee liability.

134.    Except as otherwise provided in the Plan, this Order, or an order of the Bankruptcy Court in the Chapter 11 Cases, all transfers of the Debtors' assets contemplated under the Plan shall be free and clear of all Claims, Liens, Encumbrances, and other interests of any Entity without any further action of any Entity.

135.    Except as otherwise provided in the Plan or this Order, any assets revesting in the Reorganized Debtors shall be free and clear of all Claims and Encumbrances.

**Q.    Approval, Modification, and Execution of Plan Documents.**

136.    The Plan and all operative exhibits and schedules thereto, substantially in the form as they exist at the time of the entry of this Order, including, without limitation, the documents relating to the Asbestos Personal Injury Trust, and each of the other operative Plan Documents, are ratified and approved in all respects. All relevant parties are authorized, without further action by the Bankruptcy Court, to enter into, effectuate, and perform any and all obligations under such Plan Documents, notwithstanding that the efficacy of such documents may be subject to the occurrence of the Effective Date or another date thereafter.

137.    Subject to the limitations contained herein and in the other Plan Documents, and except as otherwise ordered by this Court, the Plan Proponents, with the consent of the Asbestos Claimants Committee and the Future Claimants' Representative, which consent may not be unreasonably withheld, may alter, amend, or modify the Plan or any exhibits thereto under section 1127(b) of the Bankruptcy Code and in accordance with the Plan Documents, at any time after the entry of this Order and prior to substantial consummation of the Plan (1) in accordance with the requirements of sections 1122 and 1123 of the Bankruptcy Code, or (2) to remedy any defect or omission or reconcile any inconsistency in the Plan in such manner as may be necessary to carry out the purpose and intent of the Plan either with this Court's further approval of such modifications, or, so long as the interests of the Holders of Allowed Claims are not adversely affected thereby in any material respect, without this Court's further approval. A Holder of a Claim that has accepted or rejected the Plan shall be deemed to have accepted or rejected, as the case may be, the Plan as modified, unless, within the time fixed by this Court, if any, such Holder

changes its previous acceptance or rejection, to the extent such Holder is afforded the opportunity to do so under section 1127(d) of the Bankruptcy Code.

138.    After the Effective Date, the Reorganized Debtors, Meritor, or the Asbestos Personal Injury Trust, as applicable, may remedy any defects or omissions or reconcile any inconsistencies in the Plan Documents for the purpose of implementing the Plan in such manner as may be necessary to carry out the purposes and intent of the Plan, so long as the interests of the Holders of Allowed Claims and other applicable parties-in-interest are not adversely affected thereby.  Notwithstanding anything to the contrary in Article XI of the Plan, there shall be no modification to the Plan made at any time that would reduce or eliminate any of the protections provided in the Plan, or in the releases provided in the Plan, to the Protected Parties, without the consent of Meritor and the Debtors or Reorganized Debtors, as applicable.

**R.    Cancellation of Stock, Certificates, Instruments, and Agreements.**

139.    On the Effective Date, all stock, units, instruments, certificates, agreements and other documents evidencing the Maremont Equity Interests will be cancelled, and the obligations of Maremont thereunder or in any way related thereto will be fully released, terminated, extinguished and discharged, in each case without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or any requirement of further action, vote or other approval or authorization by any Person.  Each of AVM, FRCOC, and MEP shall remain wholly owned subsidiaries of Reorganized Maremont.

**S.    Corporate Action.**

140.    On the Effective Date, (i) the selection of the director and officer for Reorganized Maremont and the Reorganized Subsidiaries, (ii) the issuance and distribution of the Reorganized Maremont Stock to the Asbestos Personal Injury Trust, and (iii) all other actions and transactions contemplated by the Plan and the Plan Supplement and consummated in accordance with their

respective terms, shall be deemed authorized and approved in all respects, subject to the provisions of the Plan and this Order. All matters provided for in the Plan involving the corporate structure of the Debtors or the Reorganized Debtors, and any corporate action required by the Debtors or the Reorganized Debtors in connection with the Plan, shall be deemed to have timely occurred in accordance with applicable law and shall be in effect, without any requirement of further action by the security holders or directors of the Debtors or the Reorganized Debtors in accordance with section 303 of the Delaware General Corporation Law and the provisions of the Bankruptcy Code. On and after the Effective Date, the appropriate director and officer of Reorganized Maremont and the Reorganized Subsidiaries hereby is and shall be authorized and directed to use, execute and deliver the agreements, documents, securities and instruments contemplated by the Plan in the name of and on behalf of the Reorganized Debtors.

**T.      Director and Officer of Reorganized Maremont and the Reorganized Subsidiaries.**

141.    The appointment of the individual who will serve as officer and director of Reorganized Maremont and the Reorganized Subsidiaries as of the Effective Date, in accordance with Section IV.M of the Plan and as set forth in Exhibit M of the Plan, is hereby approved.

**U.      Creation of the Asbestos Personal Injury Trust.**

142.    On the Effective Date, the Asbestos Personal Injury Trust shall be created in accordance with the terms and conditions of the Plan and the Asbestos Personal Injury Trust Agreement. The Asbestos Personal Injury Trust and the Asbestos Personal Injury Trustee thereof are authorized and empowered to receive the assets to be transferred to the Asbestos Personal Injury Trust pursuant to Sections IV.B, IV.D, to the extent applicable, IV.E.3, and IV.I of the Plan, which shall include, without limitation, 100% of the Reorganized Maremont Stock.

143.    Pursuant to sections 1123 and 1142 of the Bankruptcy Code, section 303 of the Delaware General Corporation Law, and any comparable provisions of the business corporation

law of any other state, as applicable, and other appropriate provisions of applicable state laws governing corporations or other legal entities and section 1142(b) of the Bankruptcy Code, without further action by the Bankruptcy Court or the directors or stockholders of the Debtors or further notice to any Entities, the Debtors are hereby authorized and directed to execute, deliver, and perform their obligations under the Asbestos Personal Injury Trust Agreement and to execute, deliver, file, record, and implement all such other contracts, instruments, agreements, or documents and take all such other actions as any of its directors or officers may determine are necessary, appropriate or desirable in connection therewith. The Asbestos Personal Injury Trust Agreement and the TDP, as in effect on the Effective Date, shall be substantially in the forms attached to the Plan as Exhibit C and Exhibit D thereto, respectively.

144.    On the Effective Date, except as otherwise provided in the Plan Documents, this Order, or an order of the Bankruptcy Court in the Chapter 11 Cases, all right, title, and interest in and to the Asbestos Personal Injury Trust Assets and any proceeds or causes of action thereunder shall be automatically transferred and assigned to, and indefeasibly vested in, the Asbestos Personal Injury Trust free and clear of all Claims, Liens, Encumbrances, and other interests of any Entity without any further action of any Entity.

145.    On the Effective Date, the Asbestos Records Cooperation Agreement shall become effective and the Debtors' asbestos records shall be treated in accordance therewith.

## V.    Transfers of Certain Property to and Assumption of Certain Liabilities by the Asbestos Personal Injury Trust.

### 1.    Funding of the Asbestos Personal Injury Trust.

146.    The Debtors and Meritor shall fund the Asbestos Personal Injury Trust in accordance with Sections IV.B.1, IV.B.2, and IV.E of the Plan.

**2.      Issuance of Reorganized Maremont Stock.**

147.    The Asbestos Personal Injury Trust shall receive the Reorganized Maremont Stock as of the Effective Date.

**3.      Transfer of Claims and Demands to the Asbestos Personal Injury Trust.**

148.    Subject to the terms and conditions of and as set forth in Article VIII of the Plan, on the Effective Date, all liabilities, obligations, and responsibilities relating to all present and future Asbestos Personal Injury Claims, including, without limitation, Demands, shall be transferred and channeled to the Asbestos Personal Injury Trust and shall be satisfied solely by the assets held by the Asbestos Personal Injury Trust. This transfer and channeling is in consideration for the property transferred to the Asbestos Personal Injury Trust and in furtherance of the purposes of the Asbestos Personal Injury Trust and the Plan. The Asbestos Personal Injury Trust shall have no liability for any Claims and Demands other than Asbestos Personal Injury Claims and Asbestos Personal Injury Trust Expenses, and no Claims other than Asbestos Personal Injury Claims and Asbestos Personal Injury Trust Expenses shall be transferred and channeled to the Asbestos Personal Injury Trust.

**4.      Transfer of Rights and Defenses to the Asbestos Personal Injury Trust.**

149.    With the exception of those claims released by the Debtors pursuant to Section VIII.E of the Plan, on the Effective Date all claims, defenses, rights and Causes of Action of the Debtors and Reorganized Debtors relating to Asbestos Personal Injury Claims shall be transferred and assigned to the Asbestos Personal Injury Trust. In accordance with section 1123(b) of the Bankruptcy Code, the Asbestos Personal Injury Trust shall retain and may enforce such claims, defenses, rights, and Causes of Action and shall retain and may enforce all defenses and counterclaims to all Claims or Demands asserted against the Asbestos Personal Injury Trust, including, but not limited to, setoff, recoupment, and any rights under section 502(d) of the

69

Bankruptcy Code; provided, however, that no such claims, defenses, Causes of Action, or counterclaims may be asserted against any Protected Party. The Asbestos Personal Injury Trust shall be deemed to be the appointed representative of the Debtors and Reorganized Debtors, and may, pursue, litigate, compromise, and settle any rights, claims, or Causes of Action transferred to it, as appropriate.

### 5.    Institution and Maintenance of Legal and Other Proceedings.

150.    From and after the Effective Date, the Asbestos Personal Injury Trust shall be empowered and entitled, in its sole and absolute discretion and at its own expense, to pursue, compromise, or settle all legal actions and other proceedings related to any asset, liability, or responsibility of the Asbestos Personal Injury Trust that is not released pursuant to the Plan.

### 6.    Appointment of Asbestos Personal Injury Trustee.

151.    The appointment of Alan B. Rich, Esq., as the initial Asbestos Personal Injury Trustee is hereby approved. Mr. Rich shall be appointed on the Effective Date, and shall thereafter serve in accordance with the terms of the Plan and the Asbestos Personal Injury Trust Agreement. For purposes of performing the duties and fulfilling the obligations under the Asbestos Personal Injury Trust Agreement and the Plan, the Asbestos Personal Injury Trustee shall be deemed to be a party in interest within the meaning of section 1109(b) of the Bankruptcy Code.

### 7.    Appointment of Post-Effective Date Future Claimants' Representative.

152.    Effective on the Effective Date, James L. Patton, Jr. shall be discharged from his duties as the Future Claimants' Representative, and on the same date, Mr. Patton shall be appointed as the Post-Effective Date Future Claimants' Representative. The Post-Effective Date Future Claimants' Representative shall have the functions, duties, and rights provided in, and shall serve in accordance with, the Asbestos Personal Injury Trust Agreement. In addition, the Post-Effective Date Future Claimants' Representative also may, at his option, participate in any: (a) appeal of this

Order; (b) hearing on a Professional Fee Claim; and (c) adversary proceeding pending on the Effective Date to which the Future Claimants' Representative was a party.

**8.      Appointment of Asbestos Personal Injury Trust Advisory Committee Members.**

153.    The appointment of Beth Gori, Perry Browder, Armand J. Volta, Jr., John D. Cooney, and Marcus E. Raichle, Jr. as the initial members of the Asbestos Personal Injury Trust Advisory Committee is hereby approved.  As of the Effective Date, the initial members of the Asbestos Personal Injury Trust Advisory Committee shall serve as members of the committee in accordance with the terms of the Asbestos Personal Injury Trust Agreement.

**9.      Indemnity Obligations of Asbestos Personal Injury Trust.**

154.    The Asbestos Personal Injury Trust shall be bound by the indemnity obligations set forth in the Plan and the Asbestos Personal Injury Trust Documents, including, without limitation, those indemnity obligations set forth in Sections IV.E.10 and VIII.I of the Plan and Section 4.6 of the Asbestos Personal Injury Trust Agreement.

**10.     Asbestos Claims Indemnification Agreement.**

155.    The Reorganized Debtors and the Asbestos Personal Injury Trust shall, on or before the Effective Date, execute and deliver the Asbestos Claims Indemnification Agreement, which shall be substantially in the form attached to the Plan as Exhibit A.

**11.     Asbestos Personal Injury Claimant Release.**

156.    The TDP shall provide on the Effective Date, and shall not thereafter cease to provide, that all Holders of Asbestos Personal Injury Claims shall, as a precondition to receiving payment on account of their Asbestos Personal Injury Claims from the Asbestos Personal Injury Trust, execute an Asbestos Personal Injury Claimant Release in favor of certain parties in substantially the form attached to the Plan as Exhibit B, which includes (i) Meritor and other Non-

Debtor Affiliates that are not Non-Indemnified Parties, (ii) the Settling Insurers that are not Non-Indemnified Parties, and (iii) any Representative of the Entities set forth in (i) and (ii) that are not Non-Indemnified Parties.

**W.      Approval of Executory Contract Provisions.**

157.    As set forth in Section V.A of the Plan, the Debtors shall reject, as of the Effective Date, any and all Executory Contracts to which any Debtor is a party, except for (i) any Executory Contracts listed on the Assumed Executory Contract and Expired Lease List, attached to the Plan as Exhibit J, and (ii) any Executory Contracts specifically assumed or assumed and assigned pursuant to a Final Order entered on or before the Effective Date.

158.    As of the Effective Date, the Debtors shall be deemed to have assumed any and all Executory Contracts on the Assumed Executory Contract and Unexpired Lease List, appended to the Plan as Exhibit J.  The fact that any contract or lease is listed on the Assumed Executory Contract and Unexpired Lease List shall not constitute or be construed to constitute an admission that such contract or lease is an Executory Contract within the meaning of section 365 of the Bankruptcy Code or that any of the Debtors or any of their respective successors in interest (including the Reorganized Debtors) has any liability thereunder.

**X.      Cure Amounts.**

159.    All Executory Contracts assumed or assumed and assigned by the Debtors during the Chapter 11 Cases or under the Plan shall remain in full force and effect for the benefit of the Reorganized Debtors or the assignee thereof notwithstanding any provision in such contract (including those provisions described in sections 365(b)(2) and (f) of the Bankruptcy Code) that prohibits such assignment or transfer or that enables or requires termination of such contract or lease.

160.    On or as soon as reasonably practicable after the Effective Date, in accordance with section 365(b)(1) of the Bankruptcy Code, any monetary amounts by which each Executory Contract on the Assumed Executory Contract and Unexpired Lease List may be in default shall be satisfied in full by the payment of the proposed cure amount listed on the Assumed Executory Contract and Unexpired Lease List.  In the event of a dispute regarding (1) the nature or amount of any cure payment, (2) the ability of the Debtors or the Reorganized Debtors to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the Executory Contract to be assumed, or (3) any other matter pertaining to the assumption, the payment of the cure amount, if any, shall occur following entry of a Final Order resolving the dispute.

**Y.      Environmental Assumption and Indemnification Agreement.**

161.    The Reorganized Debtors and the parties to the Environmental Assumption and Indemnification Agreement shall, on or before the Effective Date, execute and deliver the Environmental Assumption and Indemnification Agreement, which shall be substantially in the form attached to the Plan as Exhibit G.

**Z.      Bar Dates and Other Claims Matters.**

**1.      Administrative Expense Claims.**

162.    Pursuant to Section II.A of the Plan, requests for payment of Administrative Expense Claims, except as provided below for Professional Fee Claims, must be filed with the Bankruptcy Court and served on counsel for the Reorganized Debtors no later than that first Business Day that is sixty (60) days after the Effective Date (the "Administrative Expense Claims Bar Date").  Holders of Administrative Expense Claims that are required to file a request for payment of such Claims and that do not file such requests by the Administrative Expense Claims Bar Date (or, in the case of tax claims, such later date as may be applicable pursuant to Section

II.C of the Plan) shall be forever barred from asserting such Claims against the Debtors, the Reorganized Debtors, any of their Affiliates, or any of their respective property.

**2.    Professional Fee Claims.**

163.    Pursuant to Section II.B of the Plan, Retained Professionals asserting a Professional Fee Claim for services rendered or expenses incurred on or before the Effective Date must File and serve on Reorganized Maremont and such other Entities who are designated by the Bankruptcy Rules, this Order, or any other applicable order of the Bankruptcy Court, an application for final allowance of such Professional Fee Claim no later than thirty (30) days after the Effective Date (as defined in the Plan, the "Professional Fee Claims Bar Date").  Any objections to Professional Fee Claims must be Filed and served on Reorganized Maremont and the requesting party no later than twenty-one (21) days after the Professional Fee Claims Bar Date.

164.    On the Effective Date, the Reorganized Debtors shall fund the Professional Fee Escrow Account with Cash equal to the aggregate Professional Fee Reserve Amount for all Retained Professionals.  The Professional Fee Escrow Account shall be maintained in trust for the Retained Professionals. Such funds in the Professional Fee Escrow Account shall not constitute property of the Debtors' Estates or property of the Reorganized Debtors. The amount of Professional Fee Claims owing to the Retained Professionals on and after the Effective Date shall be paid in Cash to such Retained Professionals from funds held in the Professional Fee Escrow Account, without interest or other earnings therefrom, as soon as reasonably practicable after such Claims are Allowed by an order of the Bankruptcy Court.  When all Allowed Professional Fee Claims have been paid in full, amounts remaining in the Professional Fee Escrow Account, if any, shall revert to the Reorganized Debtors for the benefit of the Asbestos Personal Injury Trust.

165.    To receive payment for unbilled fees and expenses incurred through and including the Effective Date, the Retained Professionals shall estimate their aggregate fees, costs and

expenses accrued and incurred prior to and as of the Confirmation Date, along with an estimate of all fees, costs and expenses to be incurred through and including the Effective Date, and shall deliver such estimates to the Debtors no later than seven (7) days after the Confirmation Date; provided, however, that such estimates shall not be considered an admission or limitation with respect to the fees and expenses of such Retained Professional. If a Retained Professional does not provide such estimates, the Reorganized Debtors may estimate the unbilled fees and expenses of such Retained Professional. The total amount so estimated as of the Confirmation Date shall comprise the Professional Fee Reserve Amount.

### 3. Rejection Damages Claims.

166. Pursuant to Section V.C of the Plan, to the extent any Executory Contract is rejected by the Debtors or the Reorganized Debtors pursuant to the Plan and results in damages to the non-Debtor party or parties to such Executory Contract, a claim for such damages shall be forever barred and shall not be enforceable against any of the Debtors or the Reorganized Debtors, any of their respective Affiliates, or any of their respective properties or interests in property, and the non-Debtor counterparty or parties to such Executory Contract shall be barred from receiving any Distribution under the Plan on account of such Claim, unless a Proof of Claim with respect to such damages is filed with the Bankruptcy Court and served upon counsel for the Debtors on or before the date that is thirty (30) days after the Effective Date (the "Rejection Damages Claims Bar Date").

167. Together with the notice referenced in paragraph 191 of this Order, the Plan constitutes due and proper notice to Entities that may assert a Claim for damages from the rejection of any and all Executory Contracts, to the extent any Executory Contract is rejected in the Plan, of the bar date for filing a Proof of Claim in connection therewith.

**AA.    Exemption from Securities Laws.**

168.    To the maximum extent provided by section 1145 of the Bankruptcy Code and applicable non-bankruptcy law, the offering, issuance, and distribution of the Reorganized Maremont Stock pursuant to the Plan shall be exempt from, among other things, the registration and prospectus delivery requirements under section 5 of the Securities Act, and any other applicable state and federal law requiring registration and/or delivery of a prospectus prior to the offering, issuance, distribution or sale of securities, subject to the provisions of section 11145(b)(1) of the Bankruptcy Code relating to the definition of an underwriter in section 2(a)(11) of the Securities Act.  The Reorganized Maremont Stock shall be freely transferable under the Securities Act by the recipients thereof, subject to compliance with any rules and regulations of the U.S. Securities and Exchange Commission, if any, applicable at the time of any future transfer of such Reorganized Maremont Stock and applicable regulatory approval, if any.

**BB.    Exemption from Certain Taxes.**

169.    Pursuant to section 1146(a) of the Bankruptcy Code, any issuance, transfer, or exchange of notes or equity securities under the Plan, the creation of any mortgage, deed of trust, pledge, or other security interest, the making or assignment of any lease or sublease, or the making or delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with the Plan shall be exempt from all state, city, or other municipal transfer taxes, mortgage recording taxes, and any other stamp, transfer, or similar taxes, as provided in section 1146(a) of the Bankruptcy Code.

**CC.    Distributions Under the Plan.**

170.    The provisions of Article VI of the Plan, including, without limitation, the provisions governing distributions, are fair and reasonable and are approved in their entirety.  The

timing of distributions required under the Plan or this Order shall be made in accordance with and as set forth in the Plan or this Order, as applicable.

**DD.   Distribution Record Date.**

171.   The Distribution Record Date for the purposes of determining an entitlement to receive Distributions under the Plan on account of Allowed Claims, other than Asbestos Personal Injury Claims, shall be the same as the Confirmation Date, which is defined as the date on which the order of the Bankruptcy Court confirming the plan under section 1129 of the Bankruptcy Code is affirmed by the District Court.

172.   As set forth in Section VI.B of the Plan, except as otherwise provided in a Final Order, the transferees of Claims that are transferred pursuant to Bankruptcy Rule 3001 of the Bankruptcy Rules on or prior to the Distribution Record Date shall be treated as the Holders of such Claims for all purposes, notwithstanding that any period provided by Bankruptcy Rule 3001 for objecting to such transfer has not expired by the Distribution Record Date.

**EE.   Issuance of New Instruments.**

173.   All instruments to be issued under the Plan (including, without limitation, the Reorganized Maremont Stock) shall upon issuance be duly authorized and validly issued, fully paid, and non-assessable, and any conditions precedent to issuance shall be deemed satisfied.

**FF.   Discharges, Injunctions, and Releases.**

**1.   Discharge of Claims Against the Debtors and Reorganized Debtors.**

174.   As set forth in Section VIII.A of the Plan, except as specifically provided in the Plan or in this Order, pursuant to sections 524 and 1141(d)(1)(A) of the Bankruptcy Code, confirmation of the Plan shall discharge the Debtors and Reorganized Debtors on the Effective Date from any and all Claims and Demands of any nature whatsoever, including, without limitation, all Claims and liabilities that arose before the Confirmation Date and all debts of the

kind specified in sections 502(g), 502(h) and 502(i) of the Bankruptcy Code whether or not: (1) a Proof of Claim based on such Claim was filed under section 501 of the Bankruptcy Code, or such Claim was listed on any of the Debtors' Schedules; (2) such Claim is or was allowed under section 502 of the Bankruptcy Code; or (3) the Holder of such Claim has voted on or accepted the Plan. Except as otherwise specifically provided for in the Plan, as of the Effective Date, the rights provided in the Plan to Holders of Claims, Demands and Interests shall be in exchange for and in complete satisfaction, settlement and discharge of all Claims (including, without limitation, Asbestos Personal Injury Claims) and Demands against, Liens on, and Interests in the Debtors, the Reorganized Debtors and all of their respective assets and properties.

      2.      **Maremont Discharge Injunction.**

      **175.      As set forth in Section VIII.B of the Plan, except as specifically provided in the Plan or this Order, all Entities who have held, hold or may hold Claims or Demands against any Debtor are permanently enjoined, on and after the Effective Date, from: (1) commencing or continuing in any manner any action or other proceeding of any kind against any Debtor, Reorganized Debtor, or their respective property with respect to such Claim or Demand; (2) enforcing, attaching, collecting, or recovering by any manner or means of any judgment, award, decree, or order against any Debtor, Reorganized Debtor, or their respective property with respect to such Claim or Demand; (3) creating, perfecting, or enforcing any Encumbrance of any kind against any Debtor, Reorganized Debtor, or their respective property with respect to such Claim or Demand; (4) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due to any Debtor or against the property or interests in property of any Debtor, with respect to such Claim or Demand; and/or (5) commencing or continuing any action, in any manner and in any place in the world, against any Debtor, Reorganized Debtor, or their respective property that does not**

comply with or is inconsistent with the provisions of the Plan or this Order. The foregoing injunction shall extend to the successors of the Debtors (including, without limitation, the Reorganized Debtors) and their respective properties and interests in property. The discharge provided in the Maremont Discharge Injunction provision shall void any judgment obtained against any Debtor at any time, to the extent that such judgment relates to a discharged Claim or Demand.

3.    Asbestos Personal Injury Channeling Injunction.

176.    <u>Terms</u>. As set forth in Section VIII.C of the Plan, pursuant to section 524(g) of the Bankruptcy Code, from and after the Effective Date, the sole recourse of any Holder of an Asbestos Personal Injury Claim on account of such Asbestos Personal Injury Claim shall be to the Asbestos Personal Injury Trust pursuant to Section VIII.C.1 of the Plan and the Asbestos Personal Injury Trust Distribution Procedures, and such Holder shall have no right whatsoever at any time to assert its Asbestos Personal Injury Claim against any Protected Party or any property or interest in property of any Protected Party. On and after the Effective Date, all present and future Holders of Asbestos Personal Injury Claims shall be permanently and forever stayed, restrained, barred and enjoined from taking any of the following actions for the purpose of, directly or indirectly or derivatively collecting, recovering, or receiving payment of, on, or with respect to any Asbestos Personal Injury Claim other than from the Asbestos Personal Injury Trust pursuant to the Asbestos Personal Injury Trust Agreement and the Asbestos Personal Injury Trust Distribution Procedures:

(a)    commencing, conducting, or continuing in any manner, directly, indirectly or derivatively, any suit, action, or other proceeding of any kind (including a judicial, arbitration, administrative, or other proceeding) in any forum in any jurisdiction around the world against

or affecting any Protected Party or any property or interests in property of any Protected Party;

(b)     enforcing, levying, attaching (including any prejudgment attachment), collecting, or otherwise recovering by any means or in any manner, whether directly or indirectly, any judgment, award, decree, or other order against any Protected Party or any property or interests in property of any Protected Party;

(c)     creating, perfecting, or otherwise enforcing in any manner, directly or indirectly, any Encumbrance against any Protected Party or any property or interests in property of any Protected Party;

(d)     setting off, seeking reimbursement of, contribution from, or subrogation against, or otherwise recouping in any manner, directly or indirectly, any amount against any liability owed to any Protected Party or any property or interests in property of any Protected Party; and

(e)     proceeding in any manner in any place with regard to any matter that is within the scope of the matters designated by the Plan to be subject to resolution by the Asbestos Personal Injury Trust, except in conformity and compliance with the Asbestos Personal Injury Trust Agreement and the Asbestos Personal Injury Trust Distribution Procedures.

177.    <u>Reservations</u>.    As set forth in Section VIII.C.2 of the Plan, this Asbestos Personal Injury Channeling Injunction shall not stay, restrain, bar, or enjoin:

(a)     the rights of Holders of Asbestos Personal Injury Claims to assert Asbestos Personal Injury Claims against the Asbestos Personal Injury Trust in accordance with the Asbestos Personal Injury Trust Distribution Procedures; and

(b)     the rights of Entities to assert any Claim, debt, obligation, or liability for payment of Asbestos Personal Injury Trust Expenses against the Asbestos Personal Injury Trust.

4.    **Releases by the Debtors and the Estates and Related Injunction.**

178.    As set forth in Section VIII.E.1 of the Plan, except as otherwise expressly provided in the Plan or this Order (including with respect to the treatment of the FFIC Agreement, the Zurich Agreement and the Everest Agreement), on the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, the Debtors, the Reorganized Debtors,

and any Entity seeking to exercise the rights of the Estates, in each case, whether individually or collectively, including, without limitation, any successor to any Debtor or any Estate representative appointed or selected pursuant to the applicable provisions of the Bankruptcy Code, shall, and shall be deemed to, completely and forever release, waive and discharge unconditionally the Non-Estate Representative Released Parties from any and all claims, obligations, suits, judgments, remedies, damages, Demands, debts, rights, Causes of Action and liabilities which any of the Debtors, their respective Estates, or Reorganized Debtors is entitled to assert, whether known or unknown, liquidated or unliquidated, fixed or contingent, foreseen or unforeseen, matured or unmatured, existing or hereafter arising, in law, equity or otherwise, whether direct, indirect, or derivative, based upon, attributable to, or arising out of, in whole or in part, any act or omission, transaction, or occurrence taking place on or prior to the Effective Date (including prior to the Petition Date) (other than the rights under the Plan, the Plan Documents, and the contracts, instruments, releases and other agreements or documents delivered or to be delivered hereunder), including, without limitation, the Non-Estate Representative Released Party Claims.

179.    As set forth in Section VIII.E.2 of the Plan, except as otherwise expressly provided in the Plan or this Order, on the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, the Debtors, the Reorganized Debtors, and any Entity seeking to exercise the rights of the Estates, in each case whether individually or collectively, including, without limitation, any successor to any Debtor or any Estate representative appointed or selected pursuant to the applicable provisions of the Bankruptcy Code, shall, and shall be deemed to, completely and forever release, waive and discharge unconditionally the Released Parties (other than the Non-Estate Representative Released Parties, which Parties are the subject of Section VIII.E.1 of the Plan) from any and all claims, obligations, suits, judgments, remedies, damages,

Demands, debts, rights, Causes of Action and liabilities which any of the Debtors, their Estates, or

Reorganized Debtors is entitled to assert, whether known or unknown, liquidated or unliquidated,

fixed or contingent, foreseen or unforeseen, matured or unmatured, existing or hereafter arising,

in law, equity or otherwise, whether direct, indirect, or derivative, based upon, attributable to,

arising out of, in whole or in part, any act or omission, transaction, or occurrence taking place on

or prior to the Effective Date (including prior to the Petition Date) (other than the rights under the

Plan, the Plan Documents, and the contracts, instruments, releases and other agreements or

documents delivered or to be delivered hereunder); provided, however, that nothing contained in

Section VIII.E.2 of the Plan is intended to operate as a release of any liability based upon gross

negligence or willful misconduct as determined by a Final Order.

180.    As set forth in Section VIII.E.3 of the Plan, except as provided in the Plan or this

Order, the Debtors, the Reorganized Debtors, and any and all Entities seeking to exercise the rights

of any Debtor's Estate, in each case, whether individually or collectively, including, without

limitation, any successor to any Debtor or any Debtor's Estate representative appointed or selected

pursuant to the applicable provisions of the Bankruptcy Code, are permanently enjoined from

taking any of the following actions on account of or based upon any and all Claims, obligations,

suits, judgments, remedies, damages, Demands, debts, rights, Causes of Action and liabilities

released pursuant to Section VIII.E of the Plan: (a) commencing or continuing any action or other

proceeding against the Released Parties or the Non-Estate Representative Released Parties or their

respective property; (b) enforcing, attaching, collecting or recovering any judgment, award, decree

or order against the Released Parties or the Non-Estate Representative Released Parties or their

respective property; (c) creating, perfecting or enforcing any Encumbrance against the Released

Parties or the Non-Estate Representative Released Parties or their respective property; (d) asserting

82

any setoff, right of subrogation, or recoupment of any kind against any obligation due the Released Parties or the Non-Estate Representative Released Parties or against their respective property; and (e) commencing or continuing any action, in any manner and in any place in the world, against the Released Parties or the Non-Estate Representative Released Parties that does not comply with or is inconsistent with the provisions of the Plan or this Order.

**5.    Release by Holders of Claims and Interests.**

181.    As set forth in Section VIII.F.1 of the Plan, as of the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, each Holder of a Claim against, or Interest in, any of the Debtors who receives a Distribution pursuant to the Plan or who votes to approve the Plan shall be deemed to forever release, waive, and discharge all claims, obligations, suits, judgments, remedies, damages, Demands, debts, rights, Causes of Action and liabilities whatsoever against the Released Parties and the Non-Estate Representative Released Parties, whether known or unknown, liquidated or unliquidated, fixed or contingent, foreseen or unforeseen, matured or unmatured, existing or hereinafter arising, in law, equity or otherwise, based in whole or in part upon any act or omission, transaction, or occurrence taking place on or prior to the Effective Date in any way relating to the Debtors, the Estate, the conduct of the Debtors' business, the Chapter 11 Cases, the Plan or the Reorganized Debtors (other than the rights under the Plan, the Plan Documents, and the contracts, instruments, releases and other agreements or documents delivered or to be delivered hereunder), including, for the avoidance of doubt, any and all Causes of Action that the Holder of an Asbestos Personal Injury Claim, the Asbestos Personal Injury Trust, or the Future Claimants Representative did or could have commenced against any officer or director of any of the Debtors (in such capacity) that is based upon or arising from any acts or omissions of such officer or director occurring prior to the Effective Date on account of such Asbestos Personal Injury Claim, to the fullest extent permitted under section

524(g) of the Bankruptcy Code and applicable law (as now in effect or subsequently extended); provided, however, that nothing contained in Section VIII.F.1 of the Plan is intended to (a) operate as a release of (i) any claims, debts, obligations, rights, suits, damages, actions, causes of action, remedies, and liabilities of the United States or any enforcement or regulatory agency thereof; (ii) any claims, debts, obligations, rights, suits, damages, actions, causes of action, remedies, and liabilities of any State or any enforcement or regulatory agency of any State, under state or federal environmental laws; or (iii) any criminal liability under the laws of the United States or any State, or (b) affect the treatment of Asbestos Personal Injury Claims pursuant to this Plan and the channeling of Asbestos Personal Injury Claims pursuant to the Asbestos Personal Injury Channeling Injunction; provided, further, that the releases set forth in Section VIII.F.1 of the Plan shall not be granted or be deemed to have been granted by any Entity who returns the Opt-Out Election Form, within thirty (30) days after entry of the Effective Date, to the address specified on the Opt-Out Election Form, specifying that such Entity elects not to grant the releases contained in Section VIII.F.1 of the Plan. Any election in the Opt-Out Election Form not to grant the releases contained in Section VIII.F.1 of the Plan shall not affect or alter the requirement that all Holders of Asbestos Personal Injury Claims must execute an Asbestos Personal Injury Claimant Release as a precondition to receiving payment on account of their Asbestos Personal Injury Claims from the Asbestos Personal Injury Trust.

**6.    Certain Waivers.**

182.    As set forth in Section VIII.G of the Plan, though the Debtors do not believe that California law is applicable to the Plan, nevertheless, in an abundance of caution, the Debtors hereby affirm that they understand and waive the effect of section 1542 of the California Civil Code to the extent that such section is applicable to any Debtor or any Debtor's Estate.

**7.    Disallowed Claims.**

183.    As set forth in Section VIII.H of the Plan, this Order, except as otherwise provided herein or in the Plan, shall constitute an order: (1) disallowing all Claims (other than Asbestos Personal Injury Claims) to the extent such Claims are not allowable under any provision of section 502 of the Bankruptcy Code, including, but not limited to, time-barred Claims, and Claims for unmatured interest, and (2) disallowing or subordinating, as the case may be, any Claims, or portions of Claims, for penalties or non-compensatory damages.  On and after the Effective Date, the Debtors and their Estates shall be fully and finally discharged from any liability or obligation on a Disallowed Claim, and any order creating a Disallowed Claim that is not a Final Order as of the Effective Date solely because of an Entity's right to move for reconsideration of such order pursuant to section 502 of the Bankruptcy Code or Bankruptcy Rule 3008 shall nevertheless become and be deemed to be a Final Order on the Effective Date.

**8.    Term of Injunctions and Automatic Stay.**

**(a)    Injunctions and/or Stays in Existence Immediately Prior to Confirmation.**

184.    All of the injunctions and/or stays in existence immediately prior to the Confirmation Date provided for in or in connection with the Chapter 11 Cases, whether pursuant to section 105, 362, or any other provision of the Bankruptcy Code, the Bankruptcy Rules or other applicable law, shall remain in full force and effect until the injunctions set forth in the Plan become effective pursuant to a Final Order, and shall continue to remain in full force and effect thereafter as and to the extent provided by the Plan, this Order, or by their own terms.  Upon effectiveness of the injunctions set forth in the Plan, the automatic stay imposed by section 362 of the Bankruptcy Code shall be terminated.  In addition, on and after the Confirmation Date, the

Reorganized Debtors may seek such further orders as it may deem necessary or appropriate to preserve the status quo during the time between the Confirmation Date and the Effective Date.

(b) **Injunctions Provided for in Plan or this Order.**

185. Each of the injunctions contained in the Plan or this Order shall become effective on the Effective Date and shall continue in effect at all times thereafter unless otherwise provided in the Plan or this Order.

**GG. Exculpation and Indemnification Provisions.**

**1. Exculpation and Section 1125(e) Protection.**

186. As provided in Section VIII.D.1 of the Plan, upon the Effective Date, none of the Exculpated Fiduciaries shall have or incur any liability to any Entity for any act or omission in connection with, related to, or arising out of the: (1) Chapter 11 Cases; (2) negotiation, formulation and preparation of the Plan and the other Plan Documents, and any of the terms and/or settlements and compromises reflected in the Plan and the other Plan Documents; (3) solicitation of votes in favor of the Plan and pursuit of confirmation of the Plan; (4) consummation of the Plan, or administration of the Plan or the property to be distributed under the Plan or the TDP; (5) releases and injunctions contained in the Plan; or (6) management or operation of any Debtor during the Chapter 11 Cases, except for any liability that results from such Entity's willful misconduct or gross negligence as determined by a Final Order.

187. As provided in Section VIII.D.2 of the Plan, each of the Section 1125(e) Protected Parties shall be deemed to have acted in "good faith" under section 1125(e) in connection with the solicitation and/or participation in the Plan. Each of the Section 1125(e) Protected Parties shall be entitled to and granted the protections and benefits of section 1125(e) of the Bankruptcy Code.

## 2.   Indemnification.

### (a)   Indemnification of Maremont Related Parties.

188.   As provided in Section VIII.I.1 of the Plan, as of the Effective Date, the Reorganized Debtors and the Asbestos Personal Injury Trust will, pursuant to the Asbestos Claims Indemnification Agreement, indemnify, release and hold harmless each Non-Debtor Affiliate and all Representatives of the Debtors and the Non-Debtor Affiliates, in each case other than any Non-Indemnified Party, in respect of any liability, obligation, fee, judgment, settlement, or expense, including, without limitation, legal fees and expenses, arising from or incurred in connection with any action based upon, attributable to, or arising out of an Asbestos Personal Injury Claim, or any violation of the Asbestos Personal Injury Channeling Injunction by any Entity.

### (b)   Indemnification and Reimbursement of Certain Representatives.

189.   As provided in Section VIII.I.1 of the Plan, for purposes of the Plan, the obligations of Maremont or any Non-Debtor Affiliate to indemnify and reimburse persons who are, or were as of the Petition Date or at any time thereafter, directors, officers, or employees of any Debtor against and for any obligations as provided in such Debtor's certificate of incorporation, by-laws, applicable state law, or other agreement, or any combination of the foregoing, shall survive confirmation of the Plan, remain unaffected thereby, and not be discharged in accordance with section 1141 of the Bankruptcy Code, irrespective of whether indemnification or reimbursement is owed in connection with an event occurring before, on, or after the Petition Date; provided, however, that, pursuant to the Asbestos Claims Indemnification Agreement, such obligations (other than any obligations owed to Non-Indemnified Parties) shall be assumed by the Asbestos Personal Injury Trust on the Effective Date and the Asbestos Personal Injury Trust shall agree to indemnify, defend, pay the defense costs for, and hold harmless the Reorganized Debtors, the Non-Debtor Affiliates, and the Debtors' current and former directors, officers and employees, and the

respective Representatives of the foregoing (other than any Non-Indemnified Parties), from and against any and all Asbestos Personal Injury Claims and any and all associated costs, expenses, actions, Causes of Action, suits, controversies, damages, demands, debts, liabilities or obligations of any nature, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, liquidated or unliquidated, matured or not matured, contingent or direct, whether arising at common law, in equity or under any statute.

**HH.    Retention of Jurisdiction.**

190.    The Bankruptcy Court and, to the extent applicable, the District Court, shall retain jurisdiction in the Chapter 11 Cases as set forth in Section XI.A of the Plan.

**II.    Notice of Entry of Confirmation Order and Occurrence of the Effective Date.**

191.    Pursuant to Bankruptcy Rules 2002 and 3020(c), the Reorganized Debtors are authorized and directed to serve, within ten (10) Business Days of the Effective Date, a combined Notice of Confirmation and Effective Date to all parties served with the Confirmation Hearing Notice, substantially in the form attached hereto as **<u>Exhibit B</u>** and incorporated herein by reference (the "<u>Notice of Effective Date</u>"), on all parties that received notice of the Confirmation Hearing, including, without limitation, the various counsel to Holders of Asbestos Personal Injury Claims.

**JJ.    Resolutions to Objections and Comments of Certain Non-Debtor Entities.**

**1.    Reservation of Rights in Favor of Governmental Units.**

192.    Nothing in this Order, the Plan, or other Plan Documents shall (1) discharge, release, nullify, preclude or enjoin: (i) any liability under Environmental Laws to a Governmental Unit on the part of any entity; (ii) any liability to a Governmental Unit under police and regulatory statutes or regulations that any entity would be subject to as the owner or operator of the property after the Effective Date; or (iii) a Governmental Unit from asserting or enforcing, outside of this court, any liability under Environmental Laws against any entity; <u>provided that</u>, for the avoidance

of doubt, any Asbestos Personal Injury Claim shall be subject to the Asbestos Personal Injury Channeling Injunction in Section VIII.C of the Plan; and provided further that, for the avoidance of doubt, nothing in this Order, the Plan, or other Plan Documents shall discharge, release, nullify, preclude or enjoin claims by the United States under the Medicare Secondary Payer Statute, 42 U.S.C. § 1395y(b), to the extent such claims may arise; (2) affect or impair a Governmental Unit's rights to assert setoff and recoupment against the Debtors and/or the Reorganized Debtors and such rights are expressly preserved; (3) modify the provisions pertaining to the allowance of a Governmental Units' claims under Section 502 of the Bankruptcy Code; (4) be construed as a compromise or settlement of any claim, liability, suit, cause of action or interest of a Governmental Unit; (5) discharge any debt described in Section 1141(d)(6) of the Bankruptcy Code; (6) authorize the transfer or assignment of any governmental (a) license, (b) permit, (c) registration, (d) authorization, (e) certificate or (f) approval, or the discontinuation of any obligation thereunder, without compliance with all applicable legal requirements and approvals under police or regulatory law; (7) be interpreted to set cure amounts or to require a Governmental Unit to novate or otherwise consent to the transfer of any federal contracts, agreements, leases, covenants, guaranties, indemnification or other interests; (8) constitute an approval or consent by a Governmental Unit without compliance with all applicable legal requirements and approvals under non-bankruptcy law; (9) divest any tribunal of any jurisdiction it may have to interpret the Plan Documents or to adjudicate any defense asserted under the Plan Documents; or (10) require a Governmental Unit to file a request for payment of an expense described in section 503(b)(1)(B) and (C) as provided in section 503(b)(1)(D) of the Bankruptcy Code.  Administrative expense claims of the United States allowed pursuant to the Plan or the Bankruptcy Code shall be paid in full in cash according to ordinary business terms and shall accrue interest and penalties as provided by non-bankruptcy

law until paid in full.  Priority Tax Claims allowed pursuant to the Plan or the Bankruptcy Code shall be paid in full in cash on the Effective Date. To the extent the Priority Tax Claims of the United States (including any penalties, interest or additions to tax entitled to priority under the Bankruptcy Code) allowed pursuant to the Plan or the Bankruptcy Code are not paid in full on the Effective Date, then such Priority Tax Claims will be paid in accordance with Section 1129(a)(9)(C) of the Bankruptcy Code and shall accrue interest commencing on the Effective Date at the rate set forth in section 511 of the Bankruptcy Code.

193.    For purposes of paragraph 192, "Environmental Laws" means all federal, state and local statutes, regulations, laws, ordinances, rules licenses, permits, and similar provisions having the force or effect of law, all judicial and administrative orders, agreements, and determinations and all common law concerning or regulating pollution or protection of the environment, or environmental impacts on human health and safety, including, without limitation: the Comprehensive Environmental Response, Compensation, and Liability Act; the Clean Water Act; the Clean Air Act; the Emergency Planning and Community Right-to-Know Act; the Federal Insecticide, Fungicide, and Rodenticide Act; the Resource Conservation and Recovery Act; the Safe Drinking Water Act; the Toxic Substances Control Act; The Asbestos Hazard Emergency Response Act; The Asbestos Information Act; the Asbestos National Emission Standard for Hazardous Air Pollutants; Ohio Administrative Code Chapter 3745-20 – Asbestos Emission Control; and any state or local equivalents.

**2.      Settling Insurers.**

194.    FFIC.  On March 15, 2019, the Debtors and FFIC entered into the FFIC Settlement Agreement as a good faith compromise and settlement of the FFIC Agreement.  The Debtors' entry into the FFIC Settlement Agreement is hereby authorized and the FFIC Settlement Agreement is hereby approved in all respects.  Pursuant to Section IV.D.1 of the Plan and the terms of the FFIC

Settlement Agreement, on the Effective Date, (a) the Debtors shall reject the FFIC Agreement, (b) FFIC shall be obligated to make the Settlement Payment (as set forth in the FFIC Settlement Agreement), (c) FFIC shall be a Settling Insurer under the Plan and (d) the Reorganized Debtors and FFIC shall be bound by, and shall have the rights and obligations set forth in, the FFIC Settlement Agreement. Subject to the terms of the FFIC Settlement Agreement, FFIC shall be deemed to waive and release any and all claims it may have against the Debtors, the Reorganized Debtors, and the Asbestos Personal Injury Trust including, but not limited to, any and all claims arising under the FFIC Agreement and/or underlying insurance policies, and shall be deemed to fully release all rights, claims and defenses available under the FFIC Agreement and/or underlying insurance policies. Subject to the terms of the FFIC Settlement Agreement, the Debtors, Reorganized Debtors, and any entity seeking to exercise the rights of the Estates, including the Asbestos Personal Injury Trust, shall be deemed to waive and release any and all claims such entities may have against FFIC including, but not limited to, any and all claims arising under the FFIC Agreement and/or underlying insurance policies, and shall be deemed to fully release any and all rights, claims, and defenses available under the FFIC Agreement and/or the underlying insurance policies. For the avoidance of doubt, FFIC, as a Settling Insurer under the Plan shall, in accordance with Section VIII.C.1 of the Plan, be a beneficiary of the Asbestos Personal Injury Channeling Injunction issued pursuant to section to 524(g) of the Bankruptcy Code and the releases and injunction set forth in Sections VIII.E.1, VIII.E.3, and VIII.F of the Plan; provided, however, nothing in this Order or the Plan shall release the rights or obligations of FFIC or the Debtors, the Reorganized Debtors, or the Asbestos Personal Injury Trust under the FFIC Settlement Agreement.

195.    <u>Zurich</u>.  Pursuant to Section IV.D.3 of the Plan, as a good faith compromise and settlement of the Zurich Agreement, the Zurich Agreement shall be rejected by the Debtors as of the Effective Date without the need for any further action by any party, and Zurich shall be a Settling Insurer under the Plan.  As of the Effective Date, Zurich shall be deemed to waive and release any and all claims it may have against the Debtors and the Asbestos Personal Injury Trust including, but not limited to, any and all claims arising under the Zurich Agreement for a refund payment or otherwise, and shall be deemed to fully release any and all rights, claims, and defenses against the Debtors, the Reorganized Debtors, and the Asbestos Personal Injury Trust available under the Zurich Agreement and/or the underlying insurance policies.  As of the Effective Date, the Debtors, the Reorganized Debtors, and any Entity seeking to exercise the rights of the Estates, including the Asbestos Personal Injury Trust, shall be deemed to waive and release any and all claims such entities may have against Zurich including, but not limited to, any and all claims arising under the Zurich Agreement for a true up payment or other payments or for insurance coverage or otherwise and shall be deemed to fully release any and all rights, claims, and defenses available under the Zurich Agreement and/or the underlying insurance policies.  For the avoidance of doubt, Zurich, as a Settling Insurer under the Plan, shall, in accordance with Section VIII.C.1 of the Plan, be a beneficiary of the Asbestos Personal Injury Channeling Injunction issued pursuant to section 524(g) of the Bankruptcy Code and the releases and injunction set forth in Sections VIII.E.1, VIII.E.3, and VIII.F of the Plan.

196.    <u>Everest and Mt. McKinley</u>.  Pursuant to Section IV.D.2 of the Plan, as a good faith compromise and settlement of the Everest Agreement, the Everest Agreement shall be rejected by the Debtors as of the Effective Date, without the need for any further action by any party, and Everest and Mt. McKinley shall be Settling Insurers under the Plan.  As of the Effective Date,

Everest and Mt. McKinley shall be deemed to waive and release any and all claims they may have against the Debtors and the Asbestos Personal Injury Trust, including, but not limited to, any and all claims arising under the Everest Agreement and/or underlying insurance policies, and shall be deemed to fully release all rights, claims and defenses available under the Everest Agreement and/or underlying insurance policies. As of the Effective Date, the Debtors, Reorganized Debtors, and any entity seeking to exercise the rights of the Estates, including the Asbestos Personal Injury Trust, shall be deemed to waive and release any and all claims such entities may have against Everest and Mt. McKinley including, but not limited to, any and all claims arising under the Everest Agreement and/or underlying insurance policies, and shall be deemed to fully release any and all rights, claims, and defenses available under the Everest Agreement and/or the underlying insurance policies. For the avoidance of doubt, Everest and Mt. McKinley, as Settling Insurers under the Plan, shall, in accordance with Section VIII.C.1 of the Plan, be a beneficiary of the Asbestos Personal Injury Channeling Injunction issued pursuant to section 524(g) of the Bankruptcy Code and the releases and injunction set forth in Sections VIII.E.1, VIII.E.3, and VIII.F of the Plan.

**KK.    Payment of Fees.**

197.    All fees payable pursuant to section 1930(a) of the Judicial Code, as determined by the Bankruptcy Court at the Confirmation Hearing, shall be paid on or prior to the Effective Date. On and after the Effective Date, each Reorganized Debtor (individually or collectively with the other Reorganized Debtors) shall pay all such fees when due and payable, and shall file with the Bankruptcy Court quarterly reports in a form reasonably acceptable to the U.S. Trustee, until that particular Reorganized Debtor's case has been closed, converted or dismissed, whichever occurs first.

**LL.    Effect of Reversal.**

198.    If any or all provisions of this Order are reversed, modified, or vacated by subsequent order, such act shall not affect the validity of acts or obligations taken or incurred under the Plan, Plan Documents, or this Order prior to provision to the Plan Proponents of notice of such reversal, modification, or vacatur.  Notwithstanding any such reversal, modification, or vacatur of this Order, any such act or obligation incurred or undertaken pursuant to, and in reliance on, this Order prior to the effective date of such reversal, modification, or vacatur shall be governed in all respects by the provisions of this Order and the Plan or any amendments or modifications thereto.

**MM.    Waiver of Filings and Section 341 Meeting.**

199.    Any requirement under section 521 of the Bankruptcy Code or Bankruptcy Rule 1007 obligating the Debtors to file any list, schedule, or statement with this Court or the Office of the U.S. Trustee (except for monthly operating reports or any other post-confirmation reporting obligation to the U.S. Trustee), including, without limitation, any requirement that the Debtors file a statement of financial affairs and schedules of assets and liabilities, is waived as to any such list, schedule, or statement not filed as of the entry of this Order.  Additionally, the requirement that the U.S. Trustee convene a meeting of creditors pursuant to section 341(a) of the Bankruptcy Code is waived.

**NN.    Waiver of Stay.**

200.    The Bankruptcy Court determines that there is no just cause for delay, and that this Order shall take effect immediately upon entry, notwithstanding anything to the contrary in Bankruptcy Rules 3020(e) or 7062(a).

**OO.    Substantial Consummation.**

201.    Substantial consummation of the Plan under section 1101(2) of the Bankruptcy Code shall be deemed to occur on the Effective Date.

**PP.    The Record.**

202.    The record of the Combined Hearing is closed.

**QQ.    Report and Recommendation to the District Court.**

203.    To the extent required under 28 U.S.C. § 157(d), the Bankruptcy Court hereby reports to the District Court and recommends that the District Court enter an order issuing and affirming the Asbestos Personal Injury Channeling Injunction set forth in the Plan and paragraphs 176–77 (Asbestos Personal Injury Channeling Injunction) of this Order and adopting the Findings of Fact and Conclusions of Law incorporated by reference herein with respect to compliance with the requirements of section 524(g) pursuant to section 524(g)(3) of the Bankruptcy Code.

Dated: May 17, 2019
Wilmington, Delaware

_____
KEVIN J. CAREY
UNITED STATES BANKRUPTCY JUDGE