## Exhibit B

**Notice of Effective Date**

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>MAREMONT CORPORATION, et al.,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 19-10118 (KJC)<br><br>(Jointly Administered)<br><br>Ref. Docket Nos. 10, 11, 136, 139, 140, 142, 155, 158, 222, 223, _____ |

## NOTICE OF (I) ENTRY OF ORDER APPROVING THE ADEQUACY OF THE DISCLOSURE STATEMENT AND CONFIRMING THE MODIFIED JOINT PREPACKAGED PLAN OF REORGANIZATION OF MAREMONT CORPORATION AND ITS DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE, (II) THE EFFECTIVE DATE, (III) RELEASES AND OPT-OUT ELECTION FORM, AND (IV) BAR DATES FOR ADMINISTRATIVE EXPENSE CLAIMS AND PROFESSIONAL FEE CLAIMS

**PLEASE TAKE NOTICE** that, on May ___, 2019, the Honorable Kevin J. Carey of the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") entered an order [Docket No. __] (the "Confirmation Order") confirming the *Modified Joint Prepackaged Plan of Reorganization of Maremont Corporation and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. __, Exhibit A] (the "Plan").[2] On _____, 2019, the United States District Court for the District of Delaware (the "District Court") entered an order (the "Affirmance Order") affirming the Confirmation Order and adopting the findings of fact and conclusions of law contained therein [Docket No. __]. The Affirmance Order was entered on the District Court docket on _____, 2019 [Case No. _____, Docket No. __].

**PLEASE TAKE FURTHER NOTICE** that the Effective Date of the Plan occurred on _____, 2019.

**PLEASE TAKE FURTHER NOTICE** that the Plan contains certain provisions regarding releases and injunctions, which are set forth in Article VIII of the Plan and described in Section VIII.F of the Disclosure Statement. The provisions include the following:

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal taxpayer identification number, are: Maremont Corporation (6138); Maremont Exhaust Products, Inc. (9284); AVM, Inc. (9285); and Former Ride Control Operating Company, Inc. (f/k/a ArvinMeritor, Inc., a Delaware corporation) (9286). The mailing address for each Debtor for purposes of these chapter 11 cases is 2135 West Maple Road, Troy, MI 48084.

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Plan.

1. **Maremont Discharge Injunction.** Except as specifically provided in the Plan or the Confirmation Order, all Entities who have held, hold or may hold Claims or Demands against any Debtor are permanently enjoined, on and after the Effective Date, from: (1) commencing or continuing in any manner any action or other proceeding of any kind against any Debtor, Reorganized Debtor, or their respective property with respect to such Claim or Demand; (2) enforcing, attaching, collecting, or recovering by any manner or means of any judgment, award, decree, or order against any Debtor, Reorganized Debtor, or their respective property with respect to such Claim or Demand; (3) creating, perfecting, or enforcing any Encumbrance of any kind against any Debtor, Reorganized Debtor, or their respective property with respect to such Claim or Demand; (4) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due to any Debtor or against the property or interests in property of any Debtor, with respect to such Claim or Demand; and/or (5) commencing or continuing any action, in any manner and in any place in the world, against any Debtor, Reorganized Debtor, or their respective property that does not comply with or is inconsistent with the provisions of the Plan or the Confirmation Order. The foregoing injunction shall extend to the successors of the Debtors (including, without limitation, the Reorganized Debtors) and their respective properties and interests in property. The discharge provided in this provision shall void any judgment obtained against any Debtor at any time, to the extent that such judgment relates to a discharged Claim or Demand.

2. **Asbestos Personal Injury Channeling Injunction.**

    *Terms.* Pursuant to section 524(g) of the Bankruptcy Code, from and after the Effective Date, the sole recourse of any Holder of an Asbestos Personal Injury Claim on account of such Asbestos Personal Injury Claim shall be to the Asbestos Personal Injury Trust pursuant to Section VIII.C.1 of the Plan and the Asbestos Personal Injury Trust Distribution Procedures, and such Holder shall have no right whatsoever at any time to assert its Asbestos Personal Injury Claim against any Protected Party or any property or interest in property of any Protected Party. On and after the Effective Date, all present and future Holders of Asbestos Personal Injury Claims shall be permanently and forever stayed, restrained, barred and enjoined from taking any of the following actions for the purpose of, directly or indirectly or derivatively collecting, recovering, or receiving payment of, on, or with respect to any Asbestos Personal Injury Claim other than from the Asbestos Personal Injury Trust pursuant to the Asbestos Personal Injury Trust Agreement and the Asbestos Personal Injury Trust Distribution Procedures:

    (a) commencing, conducting, or continuing in any manner, directly, indirectly or derivatively, any suit, action, or other proceeding of any kind (including a judicial, arbitration, administrative, or other proceeding) in any forum in any jurisdiction around the world against or affecting any Protected Party or any property or interests in property of any Protected Party;

2

(b) enforcing, levying, attaching (including any prejudgment attachment), collecting, or otherwise recovering by any means or in any manner, whether directly or indirectly, any judgment, award, decree, or other order against any Protected Party or any property or interests in property of any Protected Party;

(c) creating, perfecting, or otherwise enforcing in any manner, directly or indirectly, any Encumbrance against any Protected Party or any property or interests in property of any Protected Party;

(d) setting off, seeking reimbursement of, contribution from, or subrogation against, or otherwise recouping in any manner, directly or indirectly, any amount against any liability owed to any Protected Party or any property or interests in property of any Protected Party; and

(e) proceeding in any manner in any place with regard to any matter that is within the scope of the matters designated by the Plan to be subject to resolution by the Asbestos Personal Injury Trust, except in conformity and compliance with the Asbestos Personal Injury Trust Agreement and the Asbestos Personal Injury Trust Distribution Procedures.

Reservations. This Asbestos Personal Injury Channeling Injunction shall not stay, restrain, bar, or enjoin:

(a) the rights of Holders of Asbestos Personal Injury Claims to assert Asbestos Personal Injury Claims against the Asbestos Personal Injury Trust in accordance with the Asbestos Personal Injury Trust Distribution Procedures; and

(b) the rights of Entities to assert any Claim, debt, obligation, or liability for payment of Asbestos Personal Injury Trust Expenses against the Asbestos Personal Injury Trust.

3. Release by Holders of Claims and Interests. As of the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, each Holder of a Claim against, or Interest in, any of the Debtors who receives a Distribution pursuant to the Plan or who votes to approve the Plan shall be deemed to forever release, waive, and discharge all claims, obligations, suits, judgments, remedies, damages, Demands, debts, rights, Causes of Action and liabilities whatsoever against the Released Parties and the Non-Estate Representative Released Parties, whether known or unknown, liquidated or

3

unliquidated, fixed or contingent, foreseen or unforeseen, matured or unmatured, existing or hereinafter arising, in law, equity or otherwise, based in whole or in part upon any act or omission, transaction, or occurrence taking place on or prior to the Effective Date in any way relating to the Debtors, the Estate, the conduct of the Debtors' business, the Chapter 11 Cases, the Plan or the Reorganized Debtors (other than the rights under the Plan, the Plan Documents, and the contracts, instruments, releases and other agreements or documents delivered or to be delivered hereunder), including, for the avoidance of doubt, any and all Causes of Action that the Holder of an Asbestos Personal Injury Claim, the Asbestos Personal Injury Trust, or the Future Claimants Representative did or could have commenced against any officer or director of any of the Debtors (in such capacity) that is based upon or arising from any acts or omissions of such officer or director occurring prior to the Effective Date on account of such Asbestos Personal Injury Claim, to the fullest extent permitted under section 524(g) of the Bankruptcy Code and applicable law (as now in effect or subsequently extended); **provided, however,** that nothing contained in Section VIII.F.1 of the Plan is intended to (a) operate as a release of (i) any claims, debts, obligations, rights, suits, damages, actions, causes of action, remedies, and liabilities of the United States or any enforcement or regulatory agency thereof; (ii) any claims, debts, obligations, rights, suits, damages, actions, causes of action, remedies, and liabilities of any State or any enforcement or regulatory agency of any State, under state or federal environmental laws; or (iii) any criminal liability under the laws of the United States or any State, or (b) affect the treatment of Asbestos Personal Injury Claims pursuant to the Plan and the channeling of Asbestos Personal Injury Claims pursuant to the Asbestos Personal Injury Channeling Injunction; **provided, further,** that the releases set forth in Section VIII.F.1 of the Plan shall not be granted or be deemed to have been granted by any Entity who returns the Opt-Out Election Form, within thirty (30) days after entry of the Effective Date, to the address specified on the Opt-Out Election Form, specifying that such Entity elects not to grant the releases contained in Section VIII.F.1 of the Plan. Any election in the Opt-Out Election Form not to grant the releases contained in this Section VIII.F.1. shall not affect or alter the requirement that all Holders of Asbestos Personal Injury Claims must execute an Asbestos Personal Injury Claimant Release as a precondition to receiving payment on account of their Asbestos Personal Injury Claims from the Asbestos Personal Injury Trust.

**PLEASE TAKE FURTHER NOTICE** that Section VIII.F.1 of the Plan shall not apply to any Holder of a Claim or Interest that returns an Opt-Out Election Form, attached hereto as **Exhibit 1**, on or before _____, 2019 to the address indicated thereon, indicating that such Holder elects <u>not</u> to grant the releases contained in Section VIII.F.1 of the Plan.

**PLEASE TAKE FURTHER NOTICE** that pursuant to the Plan and the Confirmation Order, the Asbestos Personal Injury Trust shall assume full and exclusive liability and responsibility for all Asbestos Personal Injury Claims (as defined in the Plan). Holders of Asbestos Personal Injury Claims shall be entitled to assert such claims solely against the Asbestos Personal Injury Trust, and shall not be entitled assert their Asbestos Personal Injury Claims against any other Entity. Holders of Asbestos Personal Injury Claims shall be required to grant a release of certain claims as a precondition to receiving payment on account of their Asbestos Personal Injury Claims from the Asbestos Personal Injury Trust, which release is described in **Section IV.E.9** of the Plan and a copy of which is appended to the Plan as **Exhibit B**.

**PLEASE TAKE FURTHER NOTICE** that in accordance with the Confirmation Order and Section II.A of the Plan, Administrative Expense Claims that are not Professional Fee Claims, which include all claims constituting a cost or expense of administration of the Chapter 11 Cases incurred on or prior to the Effective Date allowable under section 327, 328, 330, or 503(b) of the Bankruptcy Code and entitled to priority under section 507(a)(2) or 507(b) of the Bankruptcy Code (including, without limitation, any compensation requested for making a substantial contribution in the Chapter 11 Cases), shall file and serve on counsel to Reorganized Maremont and such other Entities who are designated by the Bankruptcy Rules, the Confirmation Order, or any other applicable order of the Bankruptcy Court, a request for payment of such Administrative Expense Claim **no later than** _____**, 2019, the Administrative Expense Claims Bar Date**.

**PLEASE TAKE FURTHER NOTICE** that in accordance with the Confirmation Order and Section II.B of the Plan, all Retained Professionals and member representatives of the Asbestos Claimants Committee requesting compensation or reimbursement of expenses pursuant to sections 328, 330, 331, 503(b), and/or section 1103 of the Bankruptcy Code for services rendered or costs and expenses incurred on or before the Effective Date shall file and serve applications for final allowance of Professional Fee Claims on Reorganized Maremont and such other Entities who are designated by the Bankruptcy Rules, the Confirmation Order, or any other applicable order of the Bankruptcy Court **no later than** _____**, 2019** (the "Professional Fee Claims Bar Date"). Objections to any Professional Fee Claim must be filed and served on Reorganized Maremont and the requesting party within twenty-one (21) days after the Professional Fee Claims Bar Date. Upon approval by the Bankruptcy Court of compensation and expenses set forth in any application therefor submitted by a Retained Professional, the Reorganized Debtors shall pay such compensation and expenses from the Professional Fee Escrow Account.

**PLEASE TAKE FURTHER NOTICE** that, on the Effective Date, all Executory Contracts were rejected by the applicable Reorganized Debtor except (1) any Executory Contracts listed on the Assumed Executory Contract and Unexpired Lease List and (2) any Executory Contracts specifically addressed pursuant to an order of the Bankruptcy Court that became a Final Order on or before the Effective Date. To the extent any Executory Contract is rejected by the Debtors pursuant to the Plan and results in damages to a non-Debtor counterparty, a claim for such damages shall be forever barred and shall not be enforceable against any of the Debtors or the Reorganized Debtors, any of their respective Affiliates, or any of their respective properties or interests in property, and the non-Debtor counterparty shall be barred from receiving any Distribution under the Plan on account of such Claim, unless a Proof of Claim with respect to such damages is filed with the Bankruptcy Court and served upon counsel for the Debtors **on or before** _____**, 2019, the Rejection Damages Claims Bar Date**.

**PLEASE TAKE FURTHER NOTICE** that the automatic stay under section 362 of the Bankruptcy Code, as applicable to the Debtors, expired on _____, 2019.

**PLEASE TAKE FURTHER NOTICE** that, as of the Effective Date and subject to the terms of the Confirmation Order, all provisions of the Plan, including all agreements, instruments and other documents filed in connection with the Plan and executed by the Debtors or the Reorganized Debtors in connection with the Plan, are binding on the Debtors, the Reorganized Debtors, all Holders of Claims against or Interests in the Debtors and such Holders' respective successors and assigns, and all other parties that are affected in any manner by the Plan.

5

**PLEASE TAKE FURTHER NOTICE** that copies of the Confirmation Order, the Affirmance Order, the Plan, or the Disclosure Statement may be obtained by contacting the Reorganized Debtors' claims and noticing agent, Donlin, Recano & Company, Inc. (the "Claims and Noticing Agent") by telephone at (212) 771-1128 or by email at maremontinfo@donlinrecano.com. Documents are also available for inspection: (i) between the hours of 8:00 a.m. and 4:00 p.m. (prevailing Eastern Time), Monday through Friday, excluding federal holidays, at the Clerk of the Court, 824 North Market Street, 3rd Floor, Wilmington, Delaware 19801; (ii) at the Court's website at http://www.deb.uscourts.gov (a PACER account is required); or (iii) free of charge, at the Reorganized Debtors' restructuring website maintained by the Claims and Noticing Agent at www.donlinrecano.com/maremontch11.

Dated: _____, 2019  
Wilmington, Delaware

SIDLEY AUSTIN LLP  
James F. Conlan  
Andrew F. O'Neill  
Allison Ross Stromberg  
Blair M. Warner  
One South Dearborn Street  
Chicago, Illinois 60603  
Telephone: (312) 853-7000  
Facsimile: (312) 853-7036  

-and-

SIDLEY AUSTIN LLP  
Alex R. Rovira  
787 Seventh Avenue  
New York, New York 10019  
Telephone: (212) 839-5300  
Facsimile: (212) 839-5599  

-and-

COLE SCHOTZ P.C.

---

Norman L. Pernick (No. 2290)  
J. Kate Stickles (No. 2917)  
500 Delaware Avenue, Suite 1410  
Wilmington, Delaware 19801  
Telephone: (302) 652-3131  
Facsimile: (302) 652-3117  

ATTORNEYS FOR THE DEBTORS AND DEBTORS IN POSSESSION

## Exhibit 1

**Opt-Out Election Form**

# OPT-OUT ELECTION FORM
## SECTION VIII.F.1 – RELEASES BY HOLDERS OF CLAIMS AND INTERESTS[1]

**MAREMONT CORPORATION,** *et al.*

**United States Bankruptcy Court for the District of Delaware**
**Chapter 11 Case No. 19-10118 (KJC)**

Please select only <u>one</u> of the following options:

☐   I elect not to grant the releases contained in Section VIII.F.1 of the *Modified Joint Prepackaged Chapter 11 Plan of Reorganization of Maremont Corporation and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* dated May __, 2019.

☐   I elect to grant the releases contained in Section VIII.F.1 of the *Modified Joint Prepackaged Chapter 11 Plan of Reorganization of Maremont Corporation and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* dated May __, 2019 (no reply necessary).[2]

_____     _____
Signature                                                       Date

_____
Name

_____
Address

If you elect to opt out of the release provisions of Section VIII.F.1 of the *Modified Joint Prepackaged Chapter 11 Plan of Reorganization of Maremont Corporation and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code*, please complete this form and return it ***by Email or First-Class Mail so as to actually be received by [30 days after the Effective Date]*** at the following address:

MaremontOptOut@donlinrecano.com
with a reference to "Maremont Opt-Out" in the subject line

-or-

Maremont Opt-Out Election Form
c/o Donlin, Recano and Company, Inc., Attn: Voting Department
6201 15th Avenue
Brooklyn, New York 11219

---

[1] **Please see the reverse of this election form for the full text of the provision.**

[2] **This is the default option. If you elect not to return this form or you return the form without making any election, you will be deemed to grant the releases contained in Section VIII.F.1 of the *Modified Joint Prepackaged Chapter 11 Plan of Reorganization of Maremont Corporation and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* dated May 14, 2019.**

**MAREMONT CORPORATION,** *et al.*

In the United States Bankruptcy Court for the District of Delaware, Case No. 19-10118 (KJC)

**MODIFIED JOINT PREPACKAGED CHAPTER 11 PLAN OF REORGANIZATION OF MAREMONT CORPORATION AND ITS DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE**

*Section VIII.F.1 – Release by Holders of Claims and Interests*

As of the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, each Holder of a Claim against, or Interest in, any of the Debtors who receives a Distribution pursuant to the Plan or who votes to approve the Plan shall be deemed to forever release, waive, and discharge all claims, obligations, suits, judgments, remedies, damages, Demands, debts, rights, Causes of Action and liabilities whatsoever against the Released Parties and the Non-Estate Representative Released Parties, whether known or unknown, liquidated or unliquidated, fixed or contingent, foreseen or unforeseen, matured or unmatured, existing or hereinafter arising, in law, equity or otherwise, based in whole or in part upon any act or omission, transaction, or occurrence taking place on or prior to the Effective Date in any way relating to the Debtors, the Estate, the conduct of the Debtors' business, the Chapter 11 Cases, this Plan or the Reorganized Debtors (other than the rights under this Plan, the Plan Documents, and the contracts, instruments, releases and other agreements or documents delivered or to be delivered hereunder), including, for the avoidance of doubt, any and all Causes of Action that the Holder of an Asbestos Personal Injury Claim, the Asbestos Personal Injury Trust, or the Future Claimants Representative did or could have commenced against any officer or director of any of the Debtors (in such capacity) that is based upon or arising from any acts or omissions of such officer or director occurring prior to the Effective Date on account of such Asbestos Personal Injury Claim, to the fullest extent permitted under section 524(g) of the Bankruptcy Code and applicable law (as now in effect or subsequently extended); <u>provided</u>, <u>however</u>, that nothing contained in Section VIII.F.1 of the Plan is intended to (a) operate as a release of (i) any claims, debts, obligations, rights, suits, damages, actions, causes of action, remedies, and liabilities of the United States or any enforcement or regulatory agency thereof; (ii) any claims, debts, obligations, rights, suits, damages, actions, causes of action, remedies, and liabilities of any State or any enforcement or regulatory agency of any State, under state or federal environmental laws; or (iii) any criminal liability under the laws of the United States or any State, or (b) affect the treatment of Asbestos Personal Injury Claims pursuant to this Plan and the channeling of Asbestos Personal Injury Claims pursuant to the Asbestos Personal Injury Channeling Injunction; <u>provided</u>, <u>further</u>, that the releases set forth in Section VIII.F.1 of the Plan shall not be granted or be deemed to have been granted by any Entity who returns the Opt-Out Election Form, within thirty (30) days after entry of the Effective Date, to the address specified on the Opt-Out Election Form, specifying that such Entity elects not to grant the releases contained in Section VIII.F.1 of the Plan. Any election in the Opt-Out Election Form not to grant the releases contained in Section VIII.F.1. shall not affect or alter the requirement that all Holders of Asbestos Personal Injury Claims must execute an Asbestos Personal Injury Claimant Release as a precondition to receiving payment on account of their Asbestos Personal Injury Claims from the Asbestos Personal Injury Trust.